IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KNOX TRAILERS, INC. ) | |
| ) | |
| and ) | |
| ) | |
| POST TRAILER REPAIRS, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:20-cv-137 |
| ) | |
| JEFF CLARK, individually; ) | **JURY TRIAL DEMANDED** |
| AMY CLARK, individually; ) | |
| PAUL HENEGAR, individually; ) | |
| ROY BAILEY, individually; ) | |
| BILLY MAPLES, d/b/a TITAN TRAILER ) | |
| REPAIRS & SALES, LLC; ) | |
| BILLY MAPLES, individually.; and ) | |
| AMANDA MAPLES, individually; ) | |
| ) | |
| and ) | |
| ) | |
| TITAN TRAILER REPAIRS & SALES, LLC. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ENTRY OF PROTECTIVE ORDER

Plaintiffs, Knox Trailers, Inc., d/b/a Knox Trailers ("Knox Trailers") and Post Trailer Repairs, Inc. ("Post Trailer") (collectively "Plaintiffs"), pursuant to Local Rule 7.1, submit the following Memorandum of Law in Support of Plaintiffs' Motion for Entry of Protective Order.

### INTRODUCTION

Defendants stole Plaintiffs' trade secrets and other highly confidential information, including customer lists, customer contact information, customer sales history, and Plaintiffs' profits and revenue information for each customer, in order to setup a competing business—Defendant Titan Trailer Repairs and Sales—for which many of the individual Defendants now

1

work.  Defendants have now requested this information and other of Plaintiffs' confidential information in discovery.  The disclosure of such information , especially to a competitor and its employees, has and will cause significant harm to Plaintiffs.  To that end, Plaintiffs filed the instant motion for a protective order to ensure adequate protection of their confidential information.

Plaintiffs' proposed protective order is attached to the instant Motion as Exhibit A.  It is narrowly tailored to the needs of this case.  It  includes two levels of confidentiality—"Confidential" and "Highly Confidential – Attorneys' Eyes Only"—and specific restrictions on the use of information produced under both designations.  Plaintiffs have negotiated in good faith with Defendants on the contours of Plaintiffs' proposed protective order; however, the Parties fundamentally disagree over certain provisions.  Attached as Exhibit B is a document created by Plaintiffs which Plaintiffs believe captures Defendants' proposed protective order based on the back-and-forth exchanges between the Parties.  Exhibit C is a comparison of the parties' competing proposed orders.  As can be readily observed in Exhibit C, the parties disagree on three key provisions: (1) access to "Confidential" information; (2) the inclusion of a "Highly Confidential Attorneys Eyes Only" designation; and (3) the approval of outside experts with access to designated information.

## FACTUAL BACKGROUND

**1. Defendants seek trade secret, confidential, and proprietary information.**

Plaintiffs allege that certain Defendants misappropriated Plaintiffs' trade secrets—*e.g.,* Plaintiffs customer information which "contain[s] specific customer contacts, contact information, pricing information, information about expected customer needs, prior orders/service requests, buying preferences and history, customer contracts, among other information." [Doc. 49-1, ¶ 125; *see also* Doc. 1-2, ¶ 39].  Plaintiffs further allege that they took reasonable measures to protect these trade secrets and that Plaintiffs derived independent economic value from these trade secrets

not being generally known. [Doc. 49-1, ¶¶ 127, 174, 185, 196, 207; *see also* Doc. 1-2, ¶¶ 83-84]. As such, the disclosure of this information, especially to a competitor and its employees, *e.g.*, the Defendants, would, destroy the competitive value of the information and undoubtedly harm Plaintiffs. [*Id.*].

Nonetheless, Defendants Amy and Jeff Clark, Paul Henegar, and Roy Bailey have served discovery requests on Plaintiffs that require Plaintiffs to produce trade secret and other confidential information. For example, these Defendants have requested documents showing Plaintiffs' equipment, service, and parts sales for 2018-2020—documents that will necessarily contain trade secret customer information. The disclosure of such information to a competitors' employees will harm Plaintiffs. Additionally, these same Defendants have also requested Plaintiffs' tax returns, which contain confidential aspects of customers' business, including Plaintiffs' revenue, losses, profits, and other confidential financial information.

Defendants Titan Trailer, Billy Maples, and Amanda Maples have yet to serve *any* discovery, but based on communications between the parties it is anticipated that this will be forthcoming after decision on the Plaintiffs' pending Motion to Amend [Doc. 49]. (Exhibit E). This leaves open the possibility that Defendants will ask for especially sensitive trade secret, confidential, or proprietary information that Plaintiffs cannot yet anticipate. Thus, in the interest of efficiency and to avoid piecemeal protective orders and motion practice, it makes sense to ensure that the instant motion address the possibility of such future discovery.

2. **Plaintiffs' proposed protective order is narrowly tailored to the needs of the case.**

To protect this information, Plaintiffs proposed a stipulative protective order. As discussed further below, the Parties were able to narrow their disagreements over the proposed protective order to: (1) limits on the disclosure of "CONFIDENTIAL" materials, (2) the inclusion of a

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" provision, and (3) the inclusion of an expert/consultant objection period.

Generally, Plaintiffs propose limiting disclosure of materials designated as "CONFIDENTIAL" to those who are entitled to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material; if an individual, the receiving party; and if a corporate entity, up to two corporate representatives. (Exhibit A, ¶ 7). Defendants propose that "CONFIDENTIAL" materials be disclosed to all individual parties; in the case of corporate parties, the corporate parties' officers, directors, or employees, whom counsel deems necessary to participate in the litigation; employees of any party who are noticed for deposition or designated as trial witnesses; and any other person whom counsel believes in good faith to be a fact or expert witness to the extent necessary to prepare the witness to testify. (Exhibit B, ¶ 7).

Additionally, Plaintiffs proposed an additional layer of protection for "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material. (Exhibit A, ¶ 2(b)). Such material is limited to information that "is particularly sensitive proprietary financial, sales, customer, vendor, licensing, trade secret or strategic business information, the disclosure of which, especially to a competitor and/or a competitor's employees and/or associates, could cause competitive harm to the Producing Party." (*Id.*). Disclosure of such information would be limited to counsel of record, approved outside experts and consultants, the court, professional litigation support vendors, and limited individuals who testify at trial or deposition. (Exhibit A, ¶ 7). Defendants disagree that any "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" provision is necessary at all. (*See generally* Exhibit B).

Finally, Plaintiffs propose a 10-day objection period for the proposed disclosure of any material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY" under the proposed protective order ("Protected Material"). (Exhibit A, ¶ 10(b)). Specifically, Plaintiffs propose that any party seeking to disclose Protected Material to an outside expert or consultant (not a Professional Vendor, as defined in the proposed protective order) shall notify the other party, who will have 10 days to object for good cause. (*Id.*). Following the objection, the parties shall meet and confer in good faith within five days of the objection. (*Id.*). If the parties cannot agree, the objecting party shall have five days to seek relief from court. (*Id.*). Again, Defendants sought to strike this objection period in its entirety. (*See generally* Exhibit B).

   3. **Plaintiffs attempted to resolve this dispute without the need for judicial intervention**

Prior to filing this Motion, Plaintiffs, in good faith, sought a stipulated protective order from Defendants. Attached as Exhibit D is the parties' correspondence on this point. After initial disagreement about the inclusion of an attorneys' eyes only provision, counsel for the Parties participated in a telephone conference on October 7, 2020. (Exhibit D). The Parties did not reach agreement about the inclusion of the attorneys' eyes only provision, but Defendants agreed to review Plaintiffs' proposed order and make suggested revisions. (Exhibit D). Defendants made a number of edits to Plaintiffs' proposed protective order, to which Plaintiffs acquiesced. However, the parties remained in disagreement as to certain key provisions.

To resolve these issues, Plaintiffs proposed a limited briefing schedule to this Court—the Parties would simultaneously submit a single brief on the disputed issues without response or reply. (Exhibit D). Defendants, lamentably, refused to work with Plaintiffs, suggesting that this Court would prefer to deal with the protective order at a scheduling conference and without briefs. (*See* Exhibit D). Believing the Court would appreciate limited briefing that is limited solely to the issues over which the Parties disagree, undersigned counsel declined and filed the instant Motion for Entry of Protective Order.

# ARGUMENT

This Court may enter a protective order "for good cause . . . to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (internal quotations and citations omitted). A protective order may include a requirement "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P.26(c)(1)(G). Such limitations may include an attorneys' eyes only provision, which protects "especially sensitive information" or "information [that] is to be provided to a competitor." *Key Components, Inc. v. Edge Electronics, Inc.*, 2008 WL 4937560, at *3 (E.D. Tenn. Nov. 17, 2008) (internal quotations and citations omitted).

Here, the Parties agree on the necessity of a protective order; the sole issue is which version shall be entered. Plaintiffs believe that their proposed restrictions on the use and disclosure of "CONFIDENTIAL" properly balances the harm to Plaintiffs from disclosure with Defendants' right to obtain information. Likewise, the "HIGHLY CONFIDENTIAL – ATTORNEYS EYES' ONLY" provision is necessary to protect that "especially sensitive information" that will "be provided to a competitor." Finally, requiring approval of disclosure of Protected Materials to outside experts and consultants through an expeditious and narrowly defined objection period is necessary to protect from harm. As such, Plaintiffs request that this Court enter their proposed protective order.

1. **Plaintiffs' proposed restrictions on the use and disclosure of "CONFIDENTIAL" materials are reasonable.**

Materials designated "CONFIDENTIAL" should be limited to the individual parties and up to two corporate representatives of a receiving party that is a corporate entity. There is no need

to disclose "CONFIDENTIAL" materials to every possible corporate employee and potential witness. These limitations are necessary to protect the Parties from harm and do not unduly limit the Parties from obtaining discovery of relevant materials.

The Parties agree that "CONFIDENTIAL" material shall be limited to material that "contains sensitive confidential and non-public business information, the disclosure of which may unfairly cause harm to the Producing Party or provide improper advantage to others." (Exhibit C, ¶ 2(a)). In order to make the "CONFIDENTIAL" designation effective, Plaintiffs believe that it must be limited to disclosure to the following:

- If an individual, a receiving party;

- If a corporate entity, up to two corporate representatives of the receiving party;

- Counsel of record, including attorneys, paralegals, technology specialists, and clerical employees of the respective law firms;

- Outside experts and consultants and indemnitors, including support staff and clerical employees;

- The Court, technical advisory (if appointed), mediator, court personnel, jury, court reporters, and/or videographers;

- Professional litigation support vendors, including copy, graphics, translation, database, trial support and/or trial consulting services; and

- Individuals testifying at deposition or trial if they are (i) a current officer, director, or employee of the producing party or original source of the Protected Material, (ii) a designated Rule 30(b)(6) witness of the producing party, or (iii) an author, recipient, or direct participant in the specific matter addressed in the Protected Material.

(Exhibit A, ¶ 7).

Momentarily setting aside Defendants' concerns regarding disclosure to outside experts and consultants (*see supra* Sec. 3), Defendants proposed disclosure provision would allow nearly unlimited access to "CONFIDENTIAL" materials, including everyone associated with a corporate entity party and any potential witness else the receiving party believes, in its own judgement, it is necessary to show that information to:

> Only the following individuals shall have access to materials designated "CONFIDENTIAL," . . . the corporate parties' officers, directors, or employees whom their counsel deems necessary to participate in the conduct of this litigation; employees of any party who are noticed for deposition or designated as trial witnesses; and other persons whom counsel for a party in good faith believes may be fact or expert witnesses to the extent deemed necessary by counsel to prepare the witness to testify[.]

(*Id.* at ¶ 7(b)). Furthermore, Defendants propose to allow the officer, director, or employee of any Party, not just the producing party, to review material designated "CONFIDENTIAL" if testifying at deposition or trial in this action. (*Id.* at ¶ 7(f)).

In short, Defendants' proposal falls well short of providing adequate protection for confidential information because it does not have any limitation on the disclosure of "CONFIDENTIAL" information within a corporate entity and allows unlimited disclosure to potential witnesses if, in the receiving party's sole discretion, such disclosure is necessary to prepare the potential witness to testify.

As to disclosure within a corporate entity, limitations on the number of individuals who may obtain confidential information is routine. *See Key Components, Inc.*, 2008 WL 4937560 (parties directed to meet and confer "as to the number and identity of necessary individuals whom shall be allowed access"). Without a limitation on the number of corporate representatives that may be provided "CONFIDENTIAL" materials, a receiving party will have essentially unfettered rights to provide "sensitive confidential and non-public business information to any number of individuals. Specifically, Titan Trailers has at least two members, yet it appears to have dozens of

employees. There is no reason that each and every one of these employees should have access to Plaintiffs' confidential information.

For example, Plaintiffs have already produced their tax returns, and there is a high probability that they will have to produce bank records and other similarly sensitive documents. Such documents are routinely classified as confidential under protective orders. *F.S. Sperry Co., Inc. v. Schopmann*, 2018 WL 737643, at *3 (E.D. Tenn. Sept. 12, 2018) ("Defendants may mark such [tax returns] as 'confidential' pursuant to the protections of the Protective Order."); *Wedgewood Ltd. P'ship I v. Township of Liberty*, 2007 WL 1796089, at *3 (S.D. Ohio June 21, 2007) ("Bank records, too, may be sealed where necessary to protect the privacy interests of parties."). Without Plaintiffs proposed limitation on the number of corporate representatives who may obtain "CONFIDENTIAL" information, each and every one of Titan Trailer's employees, no matter how unrelated to this lawsuit each may be, would have access to Plaintiffs' sensitive information.

Defendants' further proposal that the Defendants should be allowed to share Plaintiffs' confidential information with any potential witness that Defendants in their sole discretion deem necessary raises similar issues. Defendants' proposal has effectively no limitation, giving the receiving party the unilateral ability to share "CONFIDENTIAL" materials, while providing no meaningful ability for the producing party to challenge (or for that matter even revive notice) of such a disclosure. Under Defendants' proposal, the only limitation is that the receiving party's counsel determine that a potential (not actual) witness *may* need to see "CONFIDENTIAL" materials.

That Plaintiffs (and potentially Defendants) would be harmed by this unnecessarily broad provision is demonstrated by the fact that "CONFIDENTIAL" materials could be shared with any

number of individuals, including additional competitors and Plaintiffs' and Defendants' customers, all of whom could be witness in this matter. For example, Defendants' proposal would allow for Defendants' to share Plaintiffs' profit information for one of its customers with another customer, which would harm Plaintiff in bidding and contracting on specific jobs.

Moreover, even though outside experts are entitled to receive "CONFIDENTIAL" materials after executive a confidentiality agreement (and a preapproval process if accepted by this Court, *see supra* Sec. 3) pursuant to Paragraph 7(c), Defendants' proposed inclusion would make Paragraph 7(c) superfluous, as counsel could unilaterally determine that an expert needed to see the "CONFIDENTIAL" material in preparation for deposition or trial testimony. Under Defendants' proposed *carte blanche* standard, counsel could "in good faith" determine that it wants to use a competitor of Plaintiffs as an expert witness, and Defendants could then share Plaintiffs' confidential information with this competitor. Eventually, the competitor-expert may not even testify, as Defendants' proposed language requires that counsel need only "believe[]" that a witness is likely to testify before disclosing the "CONFIDENTIAL" information. Such a standard presents the risk of serious harm to Plaintiffs (and Defendants should they produce "CONFIDENTIAL" information) when a tighter limitation would not unduly prejudice Defendants.

Conversely, Plaintiffs proposed list of specific individuals entitled to receive "CONFIDENTIAL" information is sufficient to allow the Parties to prepare for trial, while still ensuring protection for confidential information. The provisions regarding the use and disclosure of "CONFIDENTIAL" information is specifically tailored to the needs of the case, is binding on both parties, and does not unduly prejudice Defendants.

## 2. An "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" provision is necessary to protect the interests of Plaintiffs but will not unduly prejudice Defendants.

Disclosure of trade secrets and other "especially sensitive information[,]" particularly where it will be "provided to a competitor[,]" warrants an attorneys' eyes only provision. *Key Components, Inc.*, 2008 WL 4937560. Here, Plaintiffs can demonstrate specific harm should certain "especially sensitive information" be produced to its competitor, Defendant Titan Trailer. Accordingly, an "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" provision is necessary.

While Plaintiffs cannot predict the exact contours of all materials that should be attorneys' eyes only, it appears that this designation will primarily be applied to documents containing customer information, which "contain[s] specific customer contacts, contact information, pricing information, information about expected customer needs, prior orders/service requests, buying preferences and history, customer contracts, among other information." [Doc. 49-1, ¶ 125; *see also* Doc. 1-2, ¶ 39]. To date, Defendants have been unwilling to admit that they took this information from Plaintiffs. If Defendants are to be believed, then, discovery of such information would provide the very information that helps makes Plaintiffs profitable with its sole competitor in the area.

The customer information is not simply a list of customers, as Defendants have argued; rather, the information is a complex series of interlocking data that allows Plaintiffs to, among other things, model its revenue and profit, review and project potential customer needs, and determine the precise profit and overhead percentages needed to keep their customers' business while still making a profit. With this information, Defendants would obtain a ready-made list of customers, with highly detailed contact information, prior sales history and pricing, expected sales needs, pricing information that would allow Defendants to undercut Plaintiffs, and specific pricing

formulas that would allow Defendants to estimate projects in a profitable manner while providing customers with acceptable prices. This type of customer information constitutes a protectible trade secret. *See ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 955, 962 (M.D. Tenn. 2011). For the same reason that the materials constitute a trade secret—*i.e.,* that Plaintiffs derive value from the materials because they are not widely known—is the same reason that Plaintiffs will suffer harm should they be disclosed without an attorneys' eyes only designation.

Plaintiffs' proposal to produce such information under an attorneys' eyes only provision balances Defendants' need for discovery while protecting Plaintiffs' trade secrets and other confidential and proprietary information. "One of the most commonly used safeguards [when producing customer lists] is disclosure only to attorneys." *Autotech Technologies Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435 (N.D. Ill. 2006) (citing a number of case in which customer information was produced attorneys' eyes only); *see also Deere & Co. v. FIMCO, Inc.*, 2016 WL 11268963, at *3 (W.D. Ky. April 26, 2016) ("FIMCO's need to keep its valuable and confidential business information confidential may be balanced against Deere's need for information to develop its case by FIMCO's making any customer information it produces as "Attorneys' Eyes Only" to avail itself of the protections available pursuant to the parties' Confidentiality Agreement"); *Norris v. Glassdoor, Inc.*, 2018 WL 259765, at *2 (S.D. Ohio Jan. 2, 2018) (attorneys' eyes only provision included "customer lists or agreements, negotiations, or correspondence regarding customer agreements, royalties, royalty rates, royalty reports, pricing, revenue, profit and loss information or any similar customer information"). Plaintiffs have demonstrated specific harm should Defendants have access to all of Plaintiffs' trade secrets, and an attorneys' eyes only provision is the best way to protect Plaintiffs' "greatest assets." *Directory Concepts, Inc. v. Fox*, 2008 WL 5263386, at *7 (N.D. Ind. Dec. 16, 2008).

3. **An objection period for the proposed disclosure of Protected Materials to outside experts and consultants is necessary.**

To avoid issues of using other competitors as experts or consultants, who would be able to improperly use Protected Materials designated under the protective order, Plaintiffs proposed the following objection period for proposed experts and consultants:

    (a)    Prior to disclosing Protected Material to any outside experts or consultants that are not Professional Vendors identified above, the party seeking to disclose such information shall provide to any party to this action that produced Protected Material written notice that includes:

    (i)    the name and business address of the person;

    (ii)    the present employer and title of the person;

    (iii)    an up-to-date curriculum vitae (including a listing of employers for the preceding four (4) years and a listing of cases in which the proposed consultant or expert has offered deposition or trial testimony in the preceding four (4) years);

    (iv)    a list of current and past consulting relationships undertaken within the preceding four (4) years; and

    (v)    a signed copy of the person's "Agreement to Be Bound By Protective Order," attached as Exhibit A to this Protective Order.

    (b)    Within ten (10) business days of receiving this information, the party who produced Protected Material may object in writing to its disclosure to the proposed expert or consultant for good cause. In the absence of any objection at the end of the ten (10) day period, the expert or consultant shall be deemed approved under this Protective Order. If an objection is made, the parties shall meet and confer within five (5) business days after the objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved, the party objecting to the disclosure will have five (5) business days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is sought, Protected Materials shall not be disclosed to the expert or consultant until the objection is resolved by the Court.

    (c)    Experts or consultants authorized to receive Protected Material under this section shall not be a current officer, director, consultant or employee of a party or of a competitor of a party, nor anticipated at the time of retention to become an officer, director, consultant, or employee of a party or a competitor of a party.

    (d)    Experts or consultants authorized to receive Protected Material under this section shall not be involved in competitive decision-making on behalf of a party or a

13

Case 3:20-cv-00137-TRM-DCP   Document 60   Filed 11/11/20   Page 13 of 15   PageID #: 601

competitor of a party.

(Exhibit A, ¶ 10).

This objection period prevents a party from using a competitor, who could gain improper access to Protected Material, and provides an efficient method of resolution should an issue arise. (*Id.*); *see also Barry Fiala, Inc. v. Stored Value Systems, Inc.*, 2005 WL 8157420, at \*2 (W.D. Tenn. 2005) (protective order contained objection period for disclosure of protected materials to experts and consultants). Defendants will likely paint this as an unnecessary restriction on the use of consultants and experts, but Plaintiffs have carefully tailored the provision to ensure that the burden is on the objecting party: the objecting party must object within 10 days and must, if no resolution is reached, seek relief from the court within five days of the meet and confer. Plaintiffs' proposed expert/consultant objection period should be adopted in the protective order.

## CONCLUSION

Plaintiffs' proposed protective order is not an all-encompassing order but a narrowly-tailored order designated to protect those documents that are sensitive in nature. "Such protective orders are routinely agreed to by the parties and approved by the courts in commercial litigation, especially in cases between direct competitors." *Blanchard*, 2004 WL 737485, at \*6 (internal citations and quotations omitted). These types of "protective orders are essential to the functioning of civil discovery." *Id.* As such, Plaintiffs respectfully request that this Court enter Plaintiffs' proposed protective order.

Respectfully submitted this the 11th day of November, 2020.

/s/ Jimmy G. Carter, Jr.
**Breeding Olinzock Carter Crippen P.C.**
Shelley S. Breeding, BPR# 024330
Matthew Olinzock, BPR# 037948
Jimmy G. Carter, Jr., BPR # 032026
Adam R. Duggan, BPR# 035121
800 S. Gay Street Suite 1200
Knoxville, Tennessee 37929
Phone (865) 670-8535

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

/s/ Jimmy G. Carter, Jr.
Jimmy G. Carter, Jr., BPR # 032026