UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KNOX TRAILERS, INC., and POST TRAILER REPAIRS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:20-CV-137-TRM-DCP |
| JEFF CLARK, et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Defendant Brownlee's Expedited Motion to Compel ("Motion to Compel") [Doc. 192] and Defendant Brownlee's Motion to Expedite Briefing [Doc. 197]. The Motions are ripe for adjudication. Accordingly, for the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** the Expedited Motion to Compel [**Doc. 192**] and **DENIES** the Motion to Expedite Briefing [**Doc. 197**].

As an initial matter, Defendant Brownlee requested expedited briefing on his Motion to Compel, stating that Plaintiffs left most of his discovery requests, served on October 27, 2021, unanswered. Defendant Brownlee states that with depositions in this case currently scheduled to begin next week and the close of discovery only two months away, there is a risk he will be significantly prejudiced in mounting his defense. The Court finds that expedited briefing was not necessary. Defendant Brownlee has been a party to this lawsuit since April 2021. Defendant Brownlee's decision to serve his discovery requests close to the discovery deadline does not

constitute grounds for expediting his discovery motions.[1]  Accordingly, the Court finds the Motion to Expedite Briefing [**Doc. 192**] not well taken, and it is **DENIED**.

The Court will now turn to the Motion to Compel.

## I. ANALYSIS

Defendant Brownlee moves, pursuant to Federal Rule of Civil Procedure 37, for an order compelling Plaintiffs to fully respond to Interrogatories and Requests for Production (collectively, "Discovery Requests").  Specifically, Defendant Brownlee requests as follows: (1) Plaintiffs respond to his twenty-three (23) Requests for Production of Documents ("RFPs"); (2) require Plaintiffs to state whether they are withholding documents pursuant to any objection and identify such documents; (3) compel Plaintiffs to provide complete, narrative responses to Defendant Brownlee's Interrogatory Nos. 1, 3, 5, 7, 8, and 9; (4) to the extent not already included in the previously-mentioned Interrogatories, require Plaintiffs to identify with particularity their trade secrets; (5) limit Plaintiffs evidence on the merits at any trial, hearing, or any response to a dispositive motion regarding its trade secrets; and (6) award any further relief as is just, necessary, and appropriate.

The Court will address these issues separately and begin with Defendant Brownlee's alleged deficiencies with respect to Plaintiffs' responses to the Interrogatories and then turn to the alleged issues relating to Plaintiffs' responses to the RFPs.

### 1. Interrogatory Nos. 1 and 3.

Defendant Brownlee argues that Plaintiffs have not identified their trade secrets with any particularity.  Defendant Brownlee states that many courts require a trade secret plaintiff to identify

---

[1] The Court also notes that many of Defendant Brownlee's discovery requests likely overlap with the other Defendants' discovery requests.  For instance, Interrogatory No. 1 requests information about the alleged misappropriated trade secrets used by any Defendant.  *See* [Doc. 210-1 at 2].

2

its alleged trade secret with particularity before any discovery may commence. Defendant Brownlee submits that in light of the particularity requirement and purpose, courts have been quick to find vague assertions and broad lists of alleged trade secret information insufficient, such as simply listing categories of information or listing concepts. Defendant Brownlee states that the reasonable particularity requirement is critical to his ability to mount a defense because as explained in the pending Motion for Partial Judgment on the Pleadings, Tennessee law does not recognize any protections for non-trade secret confidential information absent contractual protections.

Defendant Brownlee states that Plaintiffs supplemented their responses to Interrogatory Nos. 1 and 3, but the responses remain deficient. For instance, in response to Interrogatory No. 1, Plaintiffs referenced their expert report of Robert Elliott of Flexware Systems, Inc., and Defendant Brownlee maintains that the report is not about defining trade secrets, and Plaintiffs failed to define their trade secrets by their express reference to "categories of information." In addition, Defendant Brownlee states that Plaintiffs responded to Interrogatory No. 3, stating that they "will produce" documents. Defendant Brownlee argues that the fact that Plaintiffs have to search and gather documents defining their trade secrets almost two years after the Complaint was filed means they have no trade secrets.

Plaintiffs respond [Doc. 21] that Defendant Brownlee's main argument (*i.e.,* that Plaintiffs have not sufficiently identified the trade secrets at issue) is belied by the fact that this Court has already held that Plaintiffs were likely to succeed on the merits of showing that the trade secrets are entitled to protection. Plaintiffs argue that the trade secrets are the customized Southware Databases stolen by Defendants, which include nearly all Plaintiffs' business information. Plaintiffs argue that the standard is whether the alleged trade secret has been described with

adequate specificity to inform defendants what is alleged to have been misappropriated. Plaintiffs argue that similar descriptions of trade secrets have been held to meet the reasonable particularity standard and that Defendant Brownlee's cited cases are inapposite. Plaintiffs state that they have identified the following as their trade secrets: (i) databases copied by Billy Maples (that Defendants produced in this litigation), (ii) customizations to the copied databases, and (iii) specific and identifiable business information compiled and organized in the copied databases, including Plaintiffs' detailed customer, vendor, and inventory information stored in the databases. [Doc. 210 at 4]. Plaintiffs conclude that they have properly responded to Interrogatory Nos. 1 and 3.

In his Reply [Doc. 213], Defendant Brownlee maintains that Plaintiffs have not established with particularity that they have protectible trade secrets in response to his discovery requests. Defendant Brownlee claims that Plaintiffs' list of trade secrets is a "jumbled mess caused by the misuse of a defined term: 'Databases.'" [Doc. 213 at 3]. In addition, Defendant Brownlee asserts that many of the descriptors Plaintiffs rely on cannot be used to satisfy the requirement of describing the trade secrets with particularity because Plaintiffs have made certain disclosures in the record in this case, and therefore, their alleged trade secrets are no longer protected. For instance, Defendant Brownlee argues that Plaintiffs permitted two significant disclosures of their purported trade secrets to be released to the public by filing declarations in support of their motion for preliminary injunction and have allowed the full, unredacted transcript from the preliminary injunction hearing to be filed in the record.

In the present matter, Defendant Brownlee primarily argues that Plaintiffs have not identified the trade secrets with particularity and that the Court must order them to do so.

4

Case 3:20-cv-00137-TRM-DCP   Document 228   Filed 01/18/22   Page 4 of 17   PageID #: 4994

Defendant Brownlee states that should Plaintiffs fail to do so, their trade secret claim must be dismissed. In *Yoe v. Crescent Sock Company*, the court explained as follows:

> Parties alleging misappropriation of a trade secret are normally required first to identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed to compel discovery of its adversary's trade secrets. Such discovery responses are intended to give defendants fair notice of the essential details of the trade secret claim so that they can conduct appropriate discovery and file appropriate motions concerning the merits of the claim.
>
> The "reasonable particularity standard" has been described as requiring that the trade secret be identified clearly, unambiguously, and with specificity. The standard further requires that the alleged trade secrete be described with adequate specificity to inform the defendants what it is alleged to have misappropriated. Another court defined reasonable particularity to mean that the adversary party is put on notice of the nature of the claims and that the party can discern the relevancy of any requested discovery on its trade secrets. Parties alleging misappropriation of a trade secret must create a list rather than a document in the style of a brief. In the instances where Plaintiff is claiming trade secret protection with regard to a unique combination of protected and unprotected material, Plaintiff has no duty to identify which components of the protected material are secret.

No. 1:15-CV-3-SKL, 2017 WL 11479991, at *3 (E.D. Tenn. May 25, 2017) (all internal citations and quotations removed).

Specifically, Interrogatory No. 1 requests Plaintiffs to set forth with particularity all trade secrets that any Defendant used, including information about the dates the trade secret was created, which Plaintiff asserts ownership, who developed the trade secret, and the documents related to such topics. Plaintiffs responded as follows

> **NOVEMBER 29, 2021, RESPONSE**: Defendants misappropriated Plaintiffs' customized Southware databases, including all information saved therein, including without limitation all categories of information identified in Rick Hensley's and Rob Elliot's declarations submitted in connection with Plaintiffs' Motion for Preliminary Injunction and as further explained by Mr. Hensley

and Mr. Elliot in their testimony during their testimony at the Preliminary Injunction hearing. These customized Southware databases include Plaintiffs' customizations to Southware, specific customer contacts, contact information, pricing information, information about expected customer needs, prior orders/service requests, buying preferences and history, customer contract, among other proprietary business information, that individually, and as integrated in Southware, constitutes a trade secret. Additionally, please see the May 5, 2021, hearing transcript, in which Rick Hensley, Billy Maples and Robert Elliott partially identified the trade secrets that were taken or misappropriated, and by whom, including the entirety of Plaintiffs' Southware databases. Such trade secrets were developed by Plaintiffs over the course of years. All Defendants that work for Titan Trailer and used Titan Trailer's Southware database, that was created by copying Plaintiffs' Southware databases, necessarily used Plaintiffs' trade secrets.

**DECEMBER 7, 2021, RESPONSE:** Plaintiffs incorporate their previous response. Additionally, please see the expert report of Robert Elliott of Flexware Systems, Inc., which identifies the items stolen and used by Defendants. The trade secrets consist of the categories of information already identified (*see, e.g.* Dkt. 94, ¶ 183), their compilation in Southware, and Plaintiffs' customized Southware implementation described in Mr. Elliott's report.

Interrogatory No. 3 and Plaintiffs' response thereto state as follows:

Have you made any changes to any trade secrets or ceased using any trade secrets identified in response to Interrogatory 1? If not, please state so with respect to each trade secret identified. As part of your response:

a. Describe all changes you made to each trade secret with enough detail to differentiate between the trade secret as it existed before and after each change;

b. State the date of each change; and

c. Identify all documents constituting, memorializing, or related to each change.

**NOVEMBER 29, 2021, RESPONSE:** Plaintiffs object to Interrogatory No. 3 as overbroad, not relevant, and not proportional to the needs of the case. Changes that Plaintiffs have made to their trade secrets, if any, have no bearing on whether Defendants

6

misappropriated those trade secrets and the scope of those trade secrets when the Defendants misappropriated the trade secrets. Moreover, this interrogatory is vague and ambiguous, as it is unclear what "changes" Mr. Brownlee seeks—does "change" mean changes to pricing information or changes to new software? Subject to these objections, Plaintiffs state that they have continued development of their trade secrets, which include the compiled information described in Interrogatory No. 1 over the entirety of Plaintiffs' business. Plaintiffs further state that, as described by Mr. Hensley in his declaration, Plaintiffs eventually compiled this business information in a customized version of Southware, which Plaintiffs continued to customize and iterate while using Southware. Plaintiffs further state that they have recently begun migrating some of the information inputted into Southware to a new software platform, Fullbay.

**DECEMBER 7, 2021, RESPONSE**: Plaintiffs incorporate their previous response and objections. Subject to these objections, Plaintiffs will produce documents in response to this Interrogatory pursuant to Rule 33(d).

**December 21, 2021, RESPONSE:** Plaintiffs incorporate their previous responses and objections. Subject to these objections, pursuant to Rule 33(d), please see documents produced and labelled Knox/Post005897 to Knox/Post006827.

[Doc. 210-1 at 2-5].

As an initial matter, this case is in a unique procedural posture because the parties have litigated a preliminary injunction with respect to Plaintiffs' trade secret claim, which the Chief District Judge granted. *See* [Doc. 123]. Specifically, Plaintiffs sought a preliminary injunction "against Defendants Billy Maples and Titan Trailers Repairs & Sales, LLC ("Titan Trailers") from using the Database, or any document or other tangible thing derived from information in the Database." [Doc. 123 at 1] (other quotations omitted). The Court explained as follows:

> Since 2003, Plaintiffs have used Southware, a resource-planning software, to manage information related to their business operations. Plaintiffs' Southware system is customized to suit their particular business needs. Plaintiffs store various types of information in their Southware databases ("the Databases"), including customer information, vendor information, parts-pricing information, service-

7

Case 3:20-cv-00137-TRM-DCP   Document 228   Filed 01/18/22   Page 7 of 17   PageID #: 4997

> pricing information, order history, vendor history, customer communications, and customized reports.

[*Id.* at 1-2] (internal quotations omitted). The Chief District Judge noted that the "parties' main dispute concerning the likelihood of success of Plaintiffs' Tennessee trade-secrets claim is whether the Databases qualify as 'trade secrets.'" [Doc. 123 at 10]. After analyzing the factors relevant to the above inquiry, the Court found that the Databases are likely protectable trade secrets.

Defendant Brownlee now claims that Plaintiffs have not set forth their trade secrets with particularity. The undersigned disagrees. Plaintiffs' alleged trade secret is the Databases and the information contained therein. The Court finds that Plaintiffs have described the trade secret with particularity providing Defendant Brownlee with sufficient notice of the claims against him and what discovery is relevant in this case. The Court, however, **ORDERS** Plaintiffs to supplement their responses to Interrogatories No. 1 and 3, **within fourteen (14) days** of entry of this Memorandum and Order, to provide specific identifiers (*i.e.,* docket numbers and page numbers) when referencing declarations or transcripts.

Defendant Brownlee argues that this case is most analogous to *A&P Tech., Inc. v. Lariviere*, wherein the court found that plaintiff's list of trade secrets was not sufficiently identified. No. 1:17-CV-534, 2017 WL 6606961, at *10 (S.D. Ohio Dec. 27, 2017). In *Lariviere*, plaintiff sued a former employee and its competitor when the employee took a job with the competitor. *Id.* at *1-2. The plaintiff alleged that during the employee's relationship with plaintiff, he had learned plaintiff's confidential information. *Id.* at *1. The plaintiff filed a motion for a preliminary injunction requesting, in part, that its former employee be enjoined from working with its competitor. *Id.* at *2. The court denied plaintiff's request for a preliminary injunction finding each factor weighed against plaintiff's request. *Id.* at *7.

8

With respect to whether plaintiff had shown likelihood of success, the court noted that plaintiff was proceeding under the "inevitable disclosure doctrine," which states "a threat of harm warranting injunctive relief can be shown by facts establishing that an employee with detailed and comprehensive knowledge of an employer's trade secrets and confidential information has begun employment with a competitor of the former employer in a position that is substantially similar to the position held during the former employment." *Id*. at *4 (quoting *Procter & Gamble Co. v. Stoneham*, 747 N.E.2d 268 (Ohio Ct. App. 2000). The court explained that in applying this doctrine, other courts have recognized that employees cannot compartmentalize the knowledge that they gain, but such does not mean that "every former employee with specialized technical knowledge can be enjoined from working for a competitor." *Id.* at *4-5. The court found that plaintiff had not shown success on the merits given that there was no evidence that there was a legitimate threat of disclosure. *Id.* at *5.

In addition, the court also addressed defendants' motion to order plaintiff to sufficiently identify its alleged misappropriated trade secrets. *Id*. at *10. The court found the following list of plaintiff's trade secrets was not sufficiently identified:

> [P]roprietary technology, engineering, research and development procedures and materials, braiding machinery, source code, processes, industry tools, and marketing materials," "processing technology, design technology, pricing models, industry research, and customer lists[,]" and the applications for A&P's unique process for placing fibers in a reinforcement form that is optimized for carrying the loads that a part will see in service in the aerospace, military, marine, infrastructure, energy, transportation, prosthetic and orthotic, and recreation industries.

*Id.* at * 10. The court held that the list was insufficient for two reasons. *Id*. First, the court explained that the "list is not a list of actual trade secrets but rather a list of categories of business information that for the most part are in no way unique to [plaintiff]." *Id*. The court further

explained that when a plaintiff pursues a threatened misappropriation theory, including under the inevitable disclosure doctrine, it cannot rely on "generalized trade secrets and a competitor's employment of the party's former employee who has knowledge of trade secrets." *Id.* (quoting *Degussa Admixtures, Inc. v. Burnett*, 277 F. Appx. 530, 535 (6th Cir. 2008)). Second, the court found that the list was insufficient because it was made part of the public record and was no longer eligible for trade-secret protection. *Id.*

The facts in the instant matter are clearly distinguishable from the facts presented in *Lariviere*. Here, Plaintiffs are not pursuing the inevitable disclosure doctrine and have not listed as trade secrets information within the knowledge of a certain individual. Instead, Plaintiffs have identified the Databases and the information contained therein, which was produced by Defendants in this case, as their trade secrets. In addition, the Chief District Judge has already found that Plaintiffs are likely to succeed on their trade secret claim. The Court finds Defendant Brownlee's reliance on *Lariviere* misplaced.

Finally, the Court finds that Defendant Brownlee's remaining arguments are better suited for the dispositive motion stage. For instance, Defendant Brownlee argues that none of the information allegedly misappropriated by Defendants was subject to contractual protections and that Plaintiffs have no legal protection for their confidential information. In addition, Defendant Brownlee argues that Plaintiffs have waived any trade secret protection by filing public documents in this case.[2] The Court finds Defendant Brownlee may raise these issues in a dispositive motion. Accordingly, the Court finds Defendant Brownlee's arguments are not well taken.

---

[2] Defendant Brownlee relies on *Lariviere* for his argument that disclosed information is no longer eligible for trade secret protection. [Doc. 213 at 5]. The Court's Memorandum Order granting the preliminary injunction states as follows: "The fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of individual elements." [Doc. 123 at 12] (other citations omitted).

## 2. Interrogatory Nos. 5, 7, 8 and 9

Defendant Brownlee argues that Plaintiffs' response to each Interrogatory is deficient. The Court will address these issues separately.

### (i) Interrogatory No. 5

With respect to Interrogatory No. 5, Defendant Brownlee states that Plaintiffs failed to address subparts a through d. Specifically, Interrogatory No. 5 requests that Plaintiffs identify each customer they lost as a result of Defendants' actions and the subparts request the specific date the business began with each customer, the date the business discontinued with the customer, the alleged wrongful action, and the specific loss attributable to each customer.

Plaintiffs respond that they rightfully objected to much of the information requested as irrelevant. Plaintiffs state that they have identified the customers that the parties had in common by referencing specific documents identified by both parties listing those customers. In addition, Plaintiffs state that they relied on their expert damages report. Plaintiffs argue that Defendant Brownlee is attempting to pigeonhole Plaintiffs' damages to only those customers they lost as a direct result of the theft, but the damages are much more, including loss of goodwill, customer relations, and fair competition.

The Court has reviewed Plaintiffs' response to Interrogatory No. 5 and finds that Plaintiffs have not responded to subparts a-d. While Plaintiffs argue that some of the information requested is not proportional to the needs of the case, the Court disagrees. The Amended Complaint specifically alleges, "After forming Titan Trailers, but while still employed by Plaintiffs, Mr. Maples siphoned customers away from Knox Trailers to Titan Trailer." [Doc. 67. at ¶ 97]. In addition, Plaintiffs allege that their loss of revenue from certain identified customers is over two

---

Again, however, Defendant Brownlee may address this issue at the dispositive motion stage and not through a discovery motion.

million dollars. [*Id*. at ¶ 105].  Given these allegations, the Court finds the requested information in the subparts relevant to the issues in this case.  If Plaintiffs do not intend to claim damages on a "per customer" basis, they shall so state.  *Creative Touch Interiors, Inc. v. Nicholson*, No. 614CV2043ORL40TBS, 2015 WL 5952986, at *3 (M.D. Fla. Oct. 13, 2015) (explaining that the measure of damages for lost business is the net profit and compelling plaintiff to provide information regarding which defendant caused the loss, when the sale was lost, how such loss was communicated and by whom, facts of which plaintiff is aware which might attribute the loss of the sale to the conduct of one or both defendants, the dollar amount of the loss, and how such dollar amount was calculated).  Accordingly, Plaintiffs **SHALL** supplement their response to Interrogatory No. 5 **within fourteen (14) days** of entry of this Memorandum and Order.

**(ii)   Interrogatory No. 7**

Defendant Brownlee states that Interrogatory No. 7 requests information regarding the customizations Plaintiffs made in Southware.  Defendant Brownlee complains that Plaintiffs' response cites briefing, expert reports, and the preliminary injunction hearing transcript that encompasses 539 pages of materials.  Defendant Brownlee also notes that Plaintiffs objected to their own term of "customization."

Plaintiffs respond that, as opined by their expert, Southware requires customizations to function.  Plaintiffs state that these customizations depend on one another to function, making it impossible and meaningless to isolate the cost or functionality of a single customization instead of the system as a whole.  Plaintiffs argue that, in other words, it is the collection of customizations that is the trade secret and not the individual customization.  Plaintiffs state that they do not have detailed records of every customization or their use.  Plaintiffs state that they are not Southware experts, so they do not have personal knowledge of what is customized, but that their expert opined

that setting up a system similar to Plaintiffs' customized implementation would cost approximately $25,000 to $30,000 or possibly more. Plaintiffs state that they have amended their discovery response to Interrogatory No. 7 to specifically identify the documents that Plaintiffs possess relating to the customizations of Southware.

The Court has reviewed Plaintiffs' response and finds that it needs to be supplemented to the extent that Plaintiffs generally reference "Plaintiffs' injunction and sanctions briefing, Plaintiffs' expert's declarations in support, and 2021 preliminary injunction hearing transcript." [Doc. 210-1 at 9]. Plaintiffs **SHALL** identify the briefing, declaration, and transcript they reference in their response by page number or other specific identifier **within fourteen (14) days** of this Memorandum and Order. Otherwise, the Court finds Plaintiffs' response to Interrogatory No. 7 does not need further supplementation. In his Reply, Defendant Brownlee argues that Plaintiffs have acknowledged that they do not have personal knowledge regarding customizations, and therefore, the dismissal of this portion of the trade secret is appropriate. It appears from the Court's review that Defendant Brownlee simply argues that the response is not legally sufficient to state a claim for trade secret protection. This issue, however, can be addressed through dispositive motions. Accordingly, Defendant Brownlee's argument on this issue is not well taken.

**(iii)    Interrogatory No. 8**

In Interrogatory No. 8, Defendant Brownlee requests the reasons Plaintiffs chose to license Fullbay software. Defendant Brownlee argues that Plaintiffs objected and did not provide a complete response. Plaintiffs respond that they have now provided specific citations to the documents that they rely on. Plaintiffs state that any additional information sought is not required by the Interrogatory or is irrelevant.

The Court has reviewed Plaintiffs' response and finds that Plaintiffs **SHALL** supplement their response to subsections (a), (c), and (d) within **fourteen (14) days** of the instant Memorandum and Order. The Court finds the remaining sections have been sufficiently responded to and can be further explored during depositions.

**(iv)    Interrogatory No. 9**

Finally, Defendant Brownlee argues that Plaintiffs have not sufficiently responded to Interrogatory 9, which requests information regarding Fullbay software. Plaintiffs submit that their response to Interrogatory No. 9 was supplemented and that with respect to customizations, they simply do not have the necessary expertise to answer the detailed questions about the functionality of Southware or Fullbay out of the box.

In Plaintiffs' response to Interrogatory No. 9, they incorporate their objections to Interrogatories Nos. 7 and 8; however, Plaintiffs do not sufficiently explain why the information requested is not proportional to the needs of the case. In response to the Motion, as summarized above, Plaintiffs state that they do not have the necessary expertise to answer Interrogatory No. 9, but they do not provide those details in response to Interrogatory No. 9. Given Plaintiffs' boilerplate objection, the Court **ORDERS** Plaintiffs to supplement their response to Interrogatory No. 9 **within fourteen (14) days** of entry of the instant Memorandum and Order to answer more fully or set forth their objection with more specificity. After having received Plaintiffs' supplemental response, if the parties cannot resolve any remaining issues after a good-faith meet and confer, they may contact Chambers to set an in-person hearing.

**3.    Requests for Production of Documents**

Defendant Brownlee argues that Plaintiffs supplemented their responses to the RFPs, but in doing so, they employed two evasive strategies: committing to a proportional search for –not

producing—responsive documents and packing their responses with boilerplate objections without stating whether they withheld documents. Defendant Brownlee states that in response to twelve (12) RFPs, Plaintiffs state that they "will conduct a reasonable search that is proportional to the needs of the case and produce any responsive documents in its possession, custody, or control," which is not proper." [Doc. 193 at 15] (other citation omitted). Defendant Brownlee argues that the future-tense of this statement indicates that Plaintiffs did not bother to conduct any searches for responsive documents. In addition, Defendant Brownlee states that many of Plaintiffs' responses include objections, and Plaintiffs fail to explain whether they are withholding documents based on their objections.

Plaintiffs respond that they have supplemented their responses to the RFPs and that to the extent that they have relevant documents, they have been produced. Defendant Brownlee replies that Plaintiffs abuse their own document discovery obligations by injecting their own ex parte determinations of how many documents to search for and which documents located they should produce.

Federal Rule of Civil Procedure 34 provides as follows:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.
>
> **(C)** *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.

Fed. R. Civ. P. 34.  Finally, Rule 34(b)(2)(E) states that a party "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Fed. R. Civ. P. 34(b)(2)(E)(i).

The Court will not discuss each RFP, but the undersigned notes that the general problem stems from the broad requests.  For instance, RFP No. 3 states, "Produce all documents constituting company policies in effect from January 1, 2015."  [Doc. 210-2 at 1].  Not all company policies, however, are relevant to the issues raised in the instant litigation.  Further, RFP No. 13 requests production of all texts messages between or among several individuals for a two-year period.  [*Id*. at 6].  Surely, if these individuals texted about the weather, Defendant Brownlee would not want to waste his time reviewing such messages, especially given that the discovery deadline is quickly approaching.  Thus, in responding, Plaintiffs have objected to many of the RFPs as overbroad, not relevant, and not proportional to the needs.  Plaintiffs do not state whether they are withholding any of the documents based on their objections.

The Court finds the best way to address these deficiencies is for the parties to participate in a *meaningful* meet and confer, in-person or by remote means given the pandemic, to address all RFPs.  The parties' discussions should include appropriate limitations to the subject matter and temporal scope of each RFP.  Based on these discussions, Defendant Brownlee **SHALL** revise his RFPs to include appropriate limits on subject matter and temporal scope.  In responding, if Plaintiffs still have objections, they **SHALL** state whether they are withholding documents subject to their objections in accordance with Rule 34.  The parties **SHALL** conduct their meet and confer within **fourteen (14) days** of the instant Memorandum and Order.  After the parties complete this process, if the parties have remaining issues, they **SHALL** contact Chambers to set an in-person hearing.

16

## II. CONCLUSION

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Brownlee's Expedited Motion to Compel [**Doc. 192**] and **DENIES** Defendant Brownlee's Motion to Expedite Briefing [**Doc. 197**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge