# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| KNOX TRAILERS, INC. and POST TRAILER REPAIRS, INC., | ) | Case No. 3:20-cv-137 |
| | ) | |
| *Plaintiffs*, | ) | Judge Travis R. McDonough |
| | ) | |
| v. | ) | Magistrate Judge Debra C. Poplin |
| | ) | |
| BILLY MAPLES, individually and d/b/a TITAN TRAILERS REPAIR & SALES, LLC, AMANDA MAPLES, JEFF CLARK, AMY CLARK, ROY BAILEY, PAUL HENNEGAR, TITAN TRAILER REPAIR & SALES, LLC, HEATH BROWNLEE individually and d/b/a TITAN TRAILER REPAIR & SALES, LLC, STEPHEN POWELL, | ) | |
| | ) | |
| *Defendants*. | ) | |

---

## MEMORANDUM OPINION

---

Before the Court is Heath Brownlee, Amanda Maples, Billy Maples, and Titan Trailer Repairs & Sales LLC's motion for judgment on the pleadings (Doc. 163). Jeff Clark, Amy Clark, Paul Henegar, and Roy Bailey have joined in the motion (Doc. 175). For the reasons below, the motion is **GRANTED IN PART**.

## I.    BACKGROUND

In 2018, Steve Fultz became the sole owner of both Knox Trailers, Inc. ("Knox Trailers") and Post Trailer Repair, Inc. ("Post Trailer"). (Doc. 94, at 5.) Soon thereafter, the business' lack of profitability troubled Fultz. (*Id.*) As a result, he sought the services of a consulting firm, Paradigm H.C. Partners, Inc. ("Paradigm"), to help make the companies

profitable. (*Id*. at 6.) Following an investigation, Paradigm and Fultz discovered substantial alleged employee misconduct. (*Id*.)

Knox Trailers and Post Trailer implicate numerous employees in a scheme to defraud them and compete with them. Billy Maples was the General Manager of Knox Trailers from 2007 until March 2020, as well as the General Manager of Post Trailer from October 2013 until October 2019. (*Id*. at 4.) During his tenure, he had access to both companies' payroll and financial information. (*Id*.) Amy Clark worked at Knox Trailers as an administrative assistant, human-resources coordinator, and payroll coordinator from November 2012 until March 2020. (*Id*. at 3.) Jeff Clark worked for Knox Trailers in an outside-sales capacity from February 2014 until March 2020. (*Id*.) Paul Henegar also worked in outside sales at Knox Trailers from April 2009 until March 2020. (*Id*.) Roy Bailey worked in parts and ordering at Knox Trailers from April 2009 to March 2020. (*Id*. at 4.) Amanda Maples worked for Post Trailer in an administrative capacity. (*Id*.) She was responsible for accounts receivable, accounts payable, and employee relations. (*Id*.) She also periodically helped with payroll at Knox Trailer as needed. (*Id*.) Mrs. Maples had access to both Knox Trailers and Titan Trailers' financial information. (*Id*.) Finally, Steven Powell worked for Knox Trailers as technical support until November 2019. (*Id*. at 5.) He was responsible for maintaining and updating the Southware software system. (*Id*.)

### A.     Financial Misconduct

#### 1.     *Mr. Maples Receives Unauthorized Bonuses*

Plaintiffs allege a variety of misconduct on the part of employees, including financial misconduct. In 2018 and 2019, Mr. Maples began instructing Mrs. Clark to issue him bonuses. (*Id*. at 6.) Plaintiffs allege that these bonuses were not approved by either company. (*Id*.) Mrs.

Clark, following Mr. Maples's requests, issued him checks totaling $28,750.00. (*Id*.) Mrs. Clark also issued more than $5,000.00 in checks for work conducted on the Maples's home. (*Id*. at 7.) These expenditures, too, were not approved by either company. (*Id*. at 7.) Additionally, Mr. Maples had Mrs. Clark reimburse him for an upgrade for a truck that Knox Trailers purchased on his behalf. (*Id*.) Mr. Maples had previously asked Knox Trailers to pay for the upgrade, but the company denied the request. (*Id*.)

### 2. *Mr. Maples, Mrs. Maples, Mr. Henegar, and Mr. Bailey Misuse Company Credit Cards*

Plaintiffs allege Mr. Maples's financial misconduct went beyond issuing checks—Mr. Maples also used company credit cards for personal expenses totaling roughly $2,000.00 per month for several years, without Plaintiffs' prior approval. (*Id*.) Plaintiffs allege that Mr. Maples was not alone, as Mrs. Maples also used her company credit card for personal expenses, spending over $100 per month for a period of several years. (*Id*. at 8.) Mr. Henegar ($200 per month) and Mr. Bailey ($250 per month) also misused their company credit cards by charging unauthorized personal expenses, including meals and fuel. (*Id*.) Mrs. Clark oversaw collecting receipts and documentation for company expenses but failed to record her coworkers' unauthorized credit-card expenditures. (*Id*. at 9.)

### 3. *Mr. Maples, Mrs. Maples, Mr. Clark, and Mrs. Clark Obtain Unauthorized Health-Insurance Benefits*

Knox Trailers and Post Trailer paid fifty percent of their employees' health-insurance premiums for a basic plan. (*Id*.) Employees were responsible for paying the remaining fifty percent of premiums, as well as any increases above the basic plan or additional coverages for family members. (*Id*.) Nevertheless, the Mapleses and the Clarks used company resources to further subsidize their health-insurance premiums, and they used company resources to pay for

better coverage. (*Id.*) In 2019, Plaintiffs allege that these benefits totaled $24,000 to the Mapleses alone; the Clarks also received benefits totaling approximately $13,000 in a single year. (*Id.* at 10.) Additionally, Mr. Maples authorized Post Trailer to subsidize 100% of an employee's health-insurance premiums, contrary to company policy and at a cost to Post Trailer of roughly $8,000 per year. (*Id.* at 10.)

### 4. *Mr. Maples and Mr. Henegar Operate a Side-Business*

Mr. Maples and Mr. Henegar also took unauthorized side payments from Knox Trailers and Post Trailer customers without company permission. (*Id.* at 11.) According to Plaintiffs, Mr. Maples and Mr. Henegar performed services directly for customers, using Plaintiffs' inventory, yet did not remit the payments they received to Plaintiffs. (*Id.*) Instead, they kept these cash payments for themselves. (*Id.*) Plaintiffs estimate that Mr. Maples and Mr. Henegar made approximately $60,000 through misuse of their inventory. (*Id.* at 12.)

## B. Titan Trailers

### 1. *Mr. Maples and Mr. Brownlee Start Titan Trailers with Mrs. Clark's Assistance*

In December 2019, Mr. Maples and Mr. Brownlee began exchanging e-mails discussing the creation of a new business to compete with Knox Trailers and Post Trailer. (*Id.* at 12.) These emails contained Knox Trailers' financial statement from November 2019, which Mr. Maples and Mr. Brownlee subsequently used to create the financial plan for their new business. (*Id.* at 12–13.) In January 2020, Mr. Maples and Mr. Brownlee incorporated HBFP LLC, and Mr. Maples sent Mr. Brownlee another Knox Trailers financial statement. (*Id.* at 15, 18.) On February 24, 2020, HBFP LLC changed its name to Titan Trailer Repair and Sales, LLC ("Titan Trailer"). (*Id.* at 19.) By February 24, Titan Trailer had already acquired a building, a domain name, and an e-mail address for Mr. Maples. (*Id.*)

4

In February 2020, Mrs. Clark helped Mr. Maples conduct a substantial amount of preparatory work for Titan Trailer. (*Id*. at 20.) She helped Mr. Maples acquire business insurance, employee health insurance, and open a business bank account. (*Id*. at 21.) Mrs. Clark sent an email to herself "attaching a number of Plaintiffs' documents, including its employee handbook, its job descriptions, and employee policies." (*Id*.) She also sent an email to Mr. Maples containing voided Knox Trailers checks, as well as Knox Trailers invoices. (*Id*.) In May 2020, Mr. Maples and Mrs. Maples both resigned from Knox Trailers and Post Trailer.

> **2.** ***Mr. Maples, Mr. Henegar, Mr. Clark, Mrs. Clark, Mr. Bailey, and Mr. Powell Siphon Plaintiffs' Customers, Employees, and Proprietary Information***

Plaintiffs allege that Mr. Maples and other employees attempted to siphon their customers to drive them out of business. (*Id*. at 22–26.) For example, Mr. Maples and Mr. Henegar went to lunch with representatives from Great Dane, a Knox Trailers customer, to solicit it. (*Id*. at 94–95.) Mr. Maples also went to Great Dane's annual conference as Knox Trailers's representative, but instead of acting on behalf of Knox Trailers, he continued to solicit Great Dane's business for himself. (*Id*. at 23.) Mr. Maples and Mr. Henegar solicited numerous customers beyond Great Dane, resulting in at least $2,000,000.00 in losses to Plaintiffs. (*Id*. at 25.) Mr. Clark, Mrs. Clark, Mr. Maples, Mr. Bailey, Mrs. Maples, and Mr. Henegar, in furtherance of this solicitation, took "proprietary business information located on their cell phones, computers, and physical documents" when they resigned. (*Id*.) Mr. Maples also downloaded "financial and customer information from Knox Trailers's and Post Trailer's full-service enterprise resource management software, Southware, which contained detailed information on Knox Trailers's and Post Trailer's entire business." (*Id*.)

According to Plaintiffs, Mr. Maples did not stop at soliciting customers. He also sought to recruit Plaintiffs' employees, even while he was still in Plaintiffs' employ. (*Id*. at 26.) Nine of Plaintiffs' employees ultimately followed Mr. Maples to Titan Trailers. (*Id*.)

Finally, Plaintiffs allege that Mr. Maples, with the help of Mr. Powell, took proprietary and trade-secret information from the Southware database and began using it at Titan Trailers. (*Id*. at 27.) In Southware, Post Trailer and Knox Trailers stored several types of information, including: (1) customer information, such as names, phone numbers, and addresses; (2) vendor information, including names, phone numbers, and addresses; (3) parts-pricing information regarding actual cost, consumer cost, and profit margin; (4) service-pricing information, including the approximate number of hours needed to complete a service and the profit margin; (5) order history for customers; (6) vendor history; (7) customer communications; and (8) customized reports, which analyze global profits and losses, profits and losses per customer, customers' orders and sales histories, and part purchase history. (*Id*. at 27–28.)

Employee access to Southware was very limited. (*Id*. at 28.) Mr. Maples was responsible for maintaining the information in Southware, and he used his access to download Plaintiffs' information to a USB drive. (*Id*. at 28.) Mr. Maples was able to download the Southware database with the aid of Mr. Powell, who gave Mr. Maples Plaintiffs' Southware storage locations on the servers. (*Id*. at 30.) Mr. Powell subsequently ordered a server system for Titan Trailers capable of running Southware, and, at Mr. Maples's and Mr. Henegar's direction, uploaded Plaintiffs' database onto the Titan Trailer server. (*Id*.)

C.    **The Instant Suit**

On March 19, 2020, Plaintiffs filed the instant suit in the Chancery Court for Knox County, Tennessee. (Doc. 1-1.) On March 31, 2020, Defendants removed to this Court. (Doc.

1.)  In Plaintiffs' amended complaint, they assert claims of:  (1) breach of fiduciary duty, (2) intentional interference with business relationships, (3) unfair competition, (4) misappropriation of trade secrets under the Defense of Trade Secrets Act ("DTSA"), 18 U.S.C. § 1833 *et seq*., (5) violations of the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Ann. Code § 47-25-1701 *et seq.*, (6) conversion, (7) constructive trust, and (8) civil conspiracy.  (Doc. 94.)  Heath Brownlee, Amanda Maples, Billy Maples, and Titan Trailer moved for judgment on the pleadings (Doc. 163).  Jeff Clark, Amy Clark, Paul Henegar, and Roy Bailey have joined the motion (Doc. 175).  The motion is now ripe for adjudication.

## II.    STANDARD OF LAW

According to Federal Rule of Civil Procedure 8, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(c).  A Rule 12(c) motion for judgment on the pleadings is analyzed using the same standards that apply to Rule 12(b)(6) motions for failure to state a claim.  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  Thus, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman*, 484 F.3d at 859.  This assumption of

veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    ANALYSIS

### A.    The Tennessee Uniform Trade Secrets Act

Tennessee's version of the Uniform Trade Secrets Act ("TUTSA") defines, governs, and punishes the misappropriation of trade secrets. *See* Tenn. Code Ann. §§ 47-25-1701 *et seq*. TUTSA provides that, "[e]xcept as provided in subsection (b), this part displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Tenn. Code Ann. § 47-25-1708(a). Subsection (b), however, exempts "other civil remedies that are not based upon misappropriation of a trade secret." *Id.* § 47-25-1708(b). TUTSA's preemption provision has "generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status." *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F.

8

Supp. 2d 649, 655 (E.D. Tenn. 2004); *see also PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007) (favorably citing *Hauck*).

"[C]ourts unanimously agree that in order for non-[T]UTSA claims to survive they must rely on something more than allegations of misappropriation of trade secrets, but they appear to disagree as to what exactly that "something more" must be." *Hauck*, 375 F. Supp. 2d at 656. However, district courts in this circuit have adopted the "same-proof" test: "if proof of a non-[T]UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets, it is preempted irrespective of whatever surplus elements of proof were necessary to establish it." *Id*. at 658. As a result, Plaintiffs' Tennessee state-law claims may only go forward to the extent that Plaintiffs state a claim for relief in the absence of the misappropriation allegations. *See Smithfield Ham & Prods. Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 349 (E.D. Va. 1995) (construing an identical provision in the Virginia Uniform Trade Secrets Act).

**B.      Plaintiffs' Claims for Breach of Fiduciary Duty**

*1.      Knox Trailers's Breach-of-Fiduciary-Duty Claim*

All parties agree that counts one and two are not preempted to the extent that they rely on allegations that Defendants:  (1) obtained unauthorized health insurance, (2) inappropriately charged expenses to company credit cards, (3) diverted revenue into a side business, (4) took inventory and unauthorized bonuses, and (5) misused funds for their personal benefit.  (Doc. 179, at 7.)  Plaintiffs concede that, to the extent they base their breach-of-fiduciary-duty claims on misuse of proprietary information, their claims are preempted.  However, Defendants also seek dismissal of counts one and two to the extent that they are based on Defendants' formation of a competing business, recruitment of Plaintiffs' employees, and solicitation of customers for Titan Trailer.  (Doc. 164, at 7.)

Knox Trailers asserts a breach-of-fiduciary-duty claim against Mr. Clark, Mrs. Clark, Mr. Henegar, and Mr. Maples. (Doc. 94, at 31–32.) To establish breach of fiduciary duty, a plaintiff must show: (1) a fiduciary relationship,[1] (2) a breach of the attendant fiduciary duty, and (3) injury to plaintiff or benefit to the defendant resulting from the breach. *In re Potter*, No. W2016-01809-COA-R3-CV, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017) (citation omitted). "An employee must act solely for the benefit of the employer in matters within the scope of his employment, [and] . . . not engage in conduct that is adverse to the employer's interests." *J.T. Shannon Lumber Co., Inc. v. Barrett*, No. 2:07-cv-2847, 2010 WL 3069818, at *10 (W.D. Tenn. Aug. 4, 2010) (quoting *Efird v. Clinic of Plastic and Reconstructive Surgery, P.A.*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003)).

Defendants contend that TUTSA preempts Knox Trailers's breach-of-fiduciary-duty claim. "A breach of fiduciary duty claim may be preempted under the "same proof" test, if that claim "is based on a misappropriation of protected information."" *RN Enter., LLC v. Clement*, 380 F. Supp. 3d 711, 720 (M.D. Tenn. 2019) (citing *PGT Trucking Inc. v. Jones*, No. 15-1032, 2015 WL 4094265, at *4 (W.D. Tenn. July 7, 2015)). "To the extent a plaintiff alleges that a defendant has otherwise engaged in conduct adverse to its interests, however, [a breach-of-fiduciary-duty claim] is not preempted." *Jones*, 2015 WL 4094265, at *4. For TUTSA to

---

[1] Defendants do not dispute that they owed Plaintiffs a fiduciary duty of loyalty. Indeed, in Tennessee, "employees owe a fiduciary duty of loyalty to their employers." *Comm'rs of Powell-Clinch Utility Dist. v. Utility Mgmt. Rev. Bd.*, 427 S.W.3d 375, 389 (Tenn. Ct. App. 2013) (citing *Efird v. Clinic of Plastic and Reconstructive Surgery*, 147 S.W.3d 208, 219 (Tenn. Ct. App. 2003)). However, some federal courts in Tennessee have found that "a breach of fiduciary duty claim can be brought only against a business entities's officers and directors, as opposed to mere employees." *Wachter, Inc. v. Cabling Innovations, LLC*, 387 F. Supp. 3d 830, 844 (M.D. Tenn. 2019). To the extent that this claim is impermissible against the employee defendants, the Court will construe it as a claim for breach of loyalty, as Plaintiffs allege that Defendants owed them fiduciary duties of loyalty. *See ProductiveMD v. 4UMD, LLC*, 821 F. Supp. 955, 964 (M.D. Tenn. 2011) (construing a breach-of-fiduciary-duty claim as a breach-of-duty-of-loyalty claim in similar circumstances).

preempt Knox Trailers's claim, Defendants must show that establishing a breach-of-fiduciary-duty claim based on stealing customers, forming a competing business, and soliciting Knox Trailers's employees also establishes a TUTSA claim.

Accordingly, the first question is whether any of these activities involve a trade secret. TUTSA defines trade secret as:

> information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:
>
> > (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4). TUTSA's definition of trade secret "is sufficiently broad to include information which at common law would have been considered confidential information." *Hamilton-Ryker Grp., LLC v. Keymon*, No. W2008-0936-COA-R3-CV, 2010 WL 323057, at *14 (Tenn. Ct. App. Jan. 28, 2010). At common law, "trade secret" encompassed most information "used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." *Wright Med. Tech., Inc. v. Grisoni*, 135 S.W.3d 561, 588 (Tenn. Ct. App. 2001). In determining whether information constitutes a trade secret, courts consider:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of money or effort expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id*. at 589 (citing *Venture Express, Inc. v. Zilly*, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998)). "To constitute a trade secret, it must be difficult for anyone outside the confidential relationship to acquire the information through proper means." *Id*. (citing *Hickory Specialties, Inc. v. B & L Labs., Inc.*, 592 S.W.2d 583, 587 (Tenn. Ct. App. 1979)).

Knox Trailers's breach-of-fiduciary-duty claim is not preempted by TUTSA, as it does not rest on the same proof as the trade-secrets claims. *See Clement*, 380 F. Supp. 3d at 720–21. First, employees' identities and contact information are not trade secrets subject to TUTSA protection. *See Clement*, 380 F. Supp. at 721 (holding that a breach-of-fiduciary-duty claim premised on poaching employees was not preempted by TUTSA) (citing *Ram Tool & Supply Co. v. HD Supply Constr. Supply Ltd.*, No. M2013-02264-COA-R3-CV, 2016 WL 4008718, at *5 (Tenn. Ct. App. July 21, 2016)); *see also PartyLite*, 246 F. App'x at 973 (names of sales consultants not trade secrets under TUTSA); *B & L*, 162 S.W.3d at 208 (citing *Knott's v. Azbell*, No. 01A-01-9510-CH-0459, 1996 WL 697943, at *4 (Tenn. Ct. App. Dec. 6, 1996) (employees are not "entitled to solicit customers for such rival business before the end of [their] employment nor can [they] properly do other similar acts in direct competition with the employer's business")).

Knox Trailers's employees knew each other, and Knox Trailers would have little to gain by keeping employees' identities secret. Furthermore, employee information was not stored in Southware along with the rest of the allegedly confidential information, and Knox Trailers does not allege that it took additional measures to keep employee information confidential. Accordingly, Knox Trailers's breach-of-fiduciary-duty claim is not preempted to the extent it relies upon allegations that Mr. Maples, Mr. Clark, Mrs. Clark, and Mr. Henegar sought to convince employees to resign and work at Titan Trailer.

Knox Trailers also alleges other misconduct unrelated to its trade-secrets claims. For example, Knox Trailers alleges that Mr. Maples usurped a building-lease opportunity from it and took other actions that were inconsistent with Knox Trailers's interests. (*See* Doc. 94, at 12–22.) These actions could support a breach-of-fiduciary-duty claim in the absence of any trade-secrets allegations, yet they could not support a trade-secrets claim. *See B & L Corp.*, 162 S.W.3d at 207–08 (holding that certain preparations for launch of competing business did not constitute a breach of fiduciary duty—like "leasing of office space, equipment, and furniture"—but nonetheless finding a breach of fiduciary duty because defendants had solicited plaintiff's employees while they were still in plaintiff's employ); *ProductiveMD*, 821 F. Supp. 2d at 964 (finding breach-of-fiduciary-duty sufficiently pled where defendant went "beyond mere preparation to compete. . . . [Defendant] solicited an employee while still employed by [plaintiff]"). As a result, Knox Trailers's breach-of-fiduciary-duty claim is not preempted to the extent it relies upon this separate misconduct.

The more complicated question is whether TUTSA preempts the breach-of-fiduciary-duty claim for customer-siphoning or for the creation of Titan Trailers. In support of its trade-secrets claim, Knox Trailers alleges that Mr. Maples, along with other Defendants, took proprietary information from Southware, *including customer information*, to form Titan Trailers. (Doc. 94, at 27 (Defendants "used and continue to use Plaintiffs' proprietary and trade secret information that Plaintiffs stored in Southware to unfairly compete with Plaintiffs, divert Plaintiffs' goodwill and customers . . . .").) Generally, in Tennessee, "an employee's 'remembered information' and relationships with customers are not trade secrets." *ProductiveMD*, 821 F. Supp. 2d at 961 (citation omitted); *see also I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-981, 2019 WL 6050283, at *7 (M.D. Tenn. Nov.

15, 2019) ("Customer lists do not automatically constitute trade secrets . . . ."). Consequently, whether TUTSA preempts this claim is dependent upon whether the customer information is entitled to legal protection. *See Hamilton-Ryker*, 2010 WL 323057, at *13 ("confidential business information such as customer lists, knowledge of the buying habits and needs of particular clients, [is] protectable only to the extent that it satisfie[s] the definition of a trade secret" (citation omitted)).

The Tennessee Court of Appeals has held that when customer lists are obtainable from other sources—including the employee's personal relationship with the client—they do not constitute confidential information in the ordinary meaning of that term. *See Heyer-Jordan & Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 822 (Tenn. Ct. App. 1990). However, it has also held that, even if individual pieces of information can be independently obtained, the aggregation of this information may still be considered a trade secret. *See Hamilton-Ryker*, 2010 WL 323057, at *16 ("Considering the aggregate of the information . . . we must conclude that it meets the definition of trade secret."). "[E]ven if the information could have been developed by independent means, it may be protectible if the former employee does not develop it by independent means but in fact obtains his knowledge . . . from his former employer and then uses this knowledge to compete with the former employer." *Id*. at *15.

In its amended complaint, Knox Trailers identifies customer information and customer communications as trade secrets. (Doc. 94, at 27.) Knox Trailers alleges that it derives independent economic value from this information and that it took reasonable measures to keep this information secret. (*Id*. at 28.) Because this information was aggregated in, and downloaded from, the Southware database that contained the rest of the trade-secret information, Knox Trailers has adequately pled that customer information was a trade secret. As a result,

TUTSA preempts its breach-of-fiduciary-duty claim based on the theft of customer information and Defendants' use of this information to solicit customers. *See Hauck*, 375 F. Supp. 2d at 658 (non-TUTSA claim is preempted if it "necessarily rises or falls based on whether the defendant is found to have misappropriated a trade secret").

The Court must also determine to what extent Titan Trailer's creation can support a breach-of-fiduciary-duty claim. Knox Trailers alleges that, during the formation of Titan Trailer, "Mrs. Clark sent an email to herself attaching a number of Plaintiffs' documents, including its employee handbook, its job descriptions, and employee policies." (Doc. 94, at 21.) It further states that "Mr. Maples, with the help of Mr. Powell, copied Plaintiffs' entire Southware files to a USB drive for the purpose of using the files for the benefit of Titan Trailers." (*Id*. at 28.) Consequently, Defendants' creation of Titan Trailer is, to some extent, premised upon the theft of Plaintiffs' proprietary information. However, Defendants also engaged in non-trade-secret misconduct in forming Titan Trailer. For example, Defendants used company time to work on Titan Trailer business. (*Id*. at 12–22.) And Defendants solicited Plaintiffs' employees to work for Titan Trailer while still employed by Plaintiffs. (*Id*. at 26.) Consequently, the creation of Titan Trailer may independently support a breach-of-fiduciary-duty claim. Plaintiffs may not, however, offer evidence of Titan Trailer's theft and use of proprietary information to support such a claim.

Accordingly, Defendants' motion will be granted as to Knox Trailers's breach-of-fiduciary-duty claim to the extent that it relies upon allegations that Defendants misused confidential customer information to solicit Knox Trailers's customers and to form Titan Trailer. Knox Trailers's breach-of-fiduciary-duty claim is not preempted, however, to the extent it rests on Defendants (1) obtaining unauthorized health insurance, (2) inappropriately charging

expenses to the company credit cards, (3) diverting revenue into a side business, (4) taking inventory and unauthorized bonuses, and (5) misusing funds for their personal benefit, (6) poaching Plaintiff's employees, and (7) taking positions inconsistent with Knox Trailers's interests. (Doc. 179, at 7.)

### 2.    *Post Trailer's Breach-of-Fiduciary-Duty Claim*

In count two, Post Trailer asserts a nearly identical breach-of-fiduciary-duty claim against Mrs. Clark, Mr. Maples, and Mrs. Maples. (Doc. 94, at 33–34.) Defendants argue that count two must also be dismissed in part, as it relies on allegations of misappropriation of trade secrets. (Doc. 164, at 8.) However, Plaintiffs also allege that Defendants: (1) misused company credit cards, (2) recruited Post Trailer employees, (3) obtained unauthorized health insurance, and (4) operated a side business. (Doc. 94, at 33.) The analysis articulated with respect to count one therefore also applies to count two. To the extent Post Trailer bases its allegations on the theft of proprietary information from Southware, including customer information, and Titan Trailer's use thereof, its claim is preempted. However, TUTSA does not preempt the claim to the extent it rests on other misconduct.

### C.    **Intentional Interference with Business Relationships[2]**

Defendants argue that TUTSA entirely preempts Plaintiffs' intentional-interference-with-business-relationships claim because it is based upon the same facts that support its trade-secrets claim. To state a claim for intentional-interference-with-business-relationships claim, Knox Trailers must allege:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the

---

[2] Only Knox Trailers asserts this claim. (Doc. 94, at 34.)

breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and (5) damages resulting from tortious interference.

*Vincit Enters., Inc. v. Zimmerman*, No. 1:06-CV-57, 2006 WL 1319515, at *4 (E.D. Tenn. May 12, 2006) (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)).

Knox Trailers concedes that its intentional-interference claim is preempted to the extent it rests on Defendants' misappropriation of the material in Southware.[3] (Doc. 179, at 9.) However, it contends that, even excluding the Southware allegations, it has alleged sufficient facts to support an intentional-interference claim. In its second amended complaint, Knox Trailers alleges that Defendants "intentionally [tried] to put Knox Trailers out of business" by using Knox Trailers's resources to compete with it and establishing Titan Trailers while employed by Knox Trailers. (Doc. 94, at 11–21, 35.) However, Knox Trailers's claims must be entirely preempted because an intentional-interference claim requires that the defendant have "improper motive or improper means." *See Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 176 (Tenn. Ct. App. 2007). Defendants' "improper means" was the creation of Titan Trailers, and the creation of Titan Trailers, and its competition with Plaintiffs, is inseparable from Knox Trailers's trade-secrets allegations. (*See* Section III.A.i, *supra*.) Accordingly, Knox Trailers's intentional-interference claim rises and falls with its trade-secrets claims, and, as such, is preempted by TUTSA.

### D.      Unfair Competition[4]

---

[3] The Court has already determined that Knox Trailers adequately pled that the customer information stored in Southware is a trade secret. (*See* Section III.A.i, *supra*.) Consequently, use of the customer information to solicit customers cannot support the present intentional-interference claim.

[4] Only Knox Trailers asserts this claim. (Doc. 95, at 35.)

Defendants argue that TUTSA preempts Plaintiffs' unfair-competition claim. (Doc. 164, at 8–9.) Plaintiffs, however, contend that their unfair-competition claim is not preempted to the extent that it rests on allegations that Defendants: (1) used Plaintiffs' resources to compete with Plaintiffs while still employed by Plaintiffs; (2) formed Titan Trailer to compete with Plaintiffs while employed by Plaintiffs; (3) solicited Plaintiffs' customers and vendors; (4) solicited Knox Trailers's employees; and (5) deleted certain Knox Trailers information to try and deprive it of the information's use. (Doc. 179, at 11.)

To succeed on an unfair-competition claim, the plaintiff "must show that (1) the defendant engaged in conduct that amounts to a recognized tort and (2) that tort deprives the plaintiff of customers or other prospects." *Clement*, 380 F. Supp. 3d at 721 (M.D. Tenn. 2019) (citation omitted). "Although all unfair competition does not stem from a breach of a fiduciary relationship, the breach of a fiduciary relationship by an employee, using confidential information obtained while employed to the detriment of his employer, may constitute unfair competition." *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 681 (Tenn. Ct. App. 1995). However, "[c]ourts applying Tennessee law have found such unfair competition claims to be preempted under TUTSA when the claim is based on the defendant's misappropriation of trade secrets." *Melville Capital LLC v. Tenn. Comm. Bank*, No. 3:11-cv-0888, 2011 WL 6888476, at *9 (M.D. Tenn. Dec. 29, 2011).

As stated above, the formation of Titan Trailer and the solicitation of customers and vendors are inextricable from Plaintiffs' trade-secrets allegations and, accordingly, may not support an underlying tort to give rise to an unfair-competition claim. However, Plaintiffs' other allegations concerning the solicitation of employees, the diversion of resources (such as inventory and money, but not trade secrets), and the deletion of information from the database,

may independently support the underlying tort of breach of fiduciary duty (*see* Section III.A, *supra*) and is not the same proof upon which Plaintiffs will rely to establish their trade-secrets claim.  As a result, TUTSA does not entirely preempt Plaintiffs' unfair-competition claim.

### E.      Claims under the Defense of Trade Secrets Act

Plaintiffs assert similar DTSA claims in counts five and six.  Defendants assert that Plaintiffs' claims for attorney's fees and exemplary damages[5] under DTSA fail because Plaintiffs did not provide Defendants with notice of whistleblower protections as required under § 1833(b). Section 1833(b)(3) mandates that employers "provide notice of the [whistleblower] immunity set forth in this subsection in any contract or agreement with an employee that governs the use of a trade secret or other confidential information."  18 U.S.C. § 1833(b)(3)(A).  Failure to do so precludes an award of exemplary damages and attorney's fees.  *Id*. § 1833(b)(3)(C).

"Such immunity is an affirmative defense, and entitlement to the immunity must be established by the defendant."  *Ramirez Capital Servs., LLC v. McMahan*, No. 4:21-cv-241-ALM, 2021 WL 5907791, at *4 (E.D. Tex. Dec. 14, 2021); *see also FirstEnergy Corp. v. Pircio*, 524 F. Supp. 3d 732, 738 (N.D. Ohio 2021) (granting defendant immunity when it was clear from the face of the complaint that defendant "only disclosed the trade secrets at issue to his attorney and did so to report suspected violations of federal laws).  Furthermore, DTSA only immunizes defendants for their *disclosure* of trade secrets to the government, not for their *use* of such trade secrets against the owner.  *See Pircio*, 524 F. Supp. 3d at 740 (citing *Sorenson v. Polukoff*, No. 2:18-cv-67 TS-PMW, 2020 WL 1692815, at *6 (D. Utah Apr. 7, 2020), *rev'd on other grounds*, 784 F. App'x 572, 578 (10th Cir. 2019)).  Courts "only address affirmative

---

[5] The complaint specifically requests "punitive damages."  Because DTSA provides for exemplary, rather than punitive, damages, the Court construes Plaintiffs' request as one for exemplary damages.  (Doc. 94, at 38–39.)

defenses on Rule 12(b)(6) motions where the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief." *Lockhart v. Holiday Inn Exp. Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013).

Plaintiffs' complaint is devoid of allegations suggesting that DTSA immunizes Defendants. First, Plaintiffs and Defendants agree that there was no contract regarding the use of confidential information, and, consequently, no contract in which such a disclosure could be included. Furthermore, Plaintiffs do not allege that Defendants disclosed trade secrets to the government. Rather, they allege that Defendants misappropriated their trade secrets and used the trade secrets to compete with them—an activity that falls outside the bounds of § 1833(b). *See McMahan*, 2021 WL 5907791, at *4. As a result, the Court declines to dismiss Plaintiffs' DTSA claims at this juncture. If Defendants wish to raise this affirmative defense, they may do so at the summary-judgment stage.

### F. Conversion

Defendants also assert that Plaintiffs' conversion claims must be dismissed because Tennessee law does not permit conversion actions for intangible property. (Doc. 164, at 13.) In Tennessee, conversion requires (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 398 (Tenn. Ct. App. 1997). Defendants are correct that Tennessee law does not recognize a cause of action for the conversion of intellectual or intangible property. *See Wachter*, 387 F. Supp. at 848 (citing *Corp. Catering, Inc. v. Corp. Catering, Etc.*, No. M1997-230-COA-R3-CV, 2001 WL 266041, at *5 (Tenn. Ct. App. Mar. 20, 2001) and *B&L Corp.*, 917 S.W.2d at 679–80). Consequently, to the extent Plaintiffs' claims rest on the conversion of their trade secrets, they must be dismissed.

Plaintiffs' claims are not entirely unactionable, though. Money is generally considered to be an intangible. *See PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012). However, "there is an exception where the money is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply to a certain purpose." *Id*. "Identifiable funds are deemed a chattel for purposes of conversion," and "conversion of checks is actionable because checks designate specific amounts of money for use for specific purposes." *Id*. A plaintiff must identify these specific funds in his or her complaint. *Humana, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 133 F. Supp. 3d 1068, 1074 (M.D. Tenn. 2015) (dismissing conversion claim when plaintiff had not identified specific funds in the complaint); *Bluff City*, 387 S.W.3d at 554–55.

### 1.     *Knox Trailers's Conversion Claim*

Knox Trailers alleges in count nine that Mr. Clark, Mrs. Clark, Mr. Henegar, Mr. Bailey, Mr. Maples, and Titan Trailer "misappropriated . . . electronically stored information, other information, and inventory." (Doc. 94, at 43.) As there is no conversion of intangibles, Knox Trailers cannot maintain a conversion claim for its information. However, inventory is tangible, and, as a result, Knox Trailers has properly asserted its conversion claim as to the inventory. *State ex rel. Flowers v. Tenn. Coordinated Care Network*, No. M2003-01658-COA-R3-CV, 2005 WL 427990, at *7 (Tenn. Ct. App. Feb. 23, 2005) (citing Restatement (Second) of Torts § 223(a) (1965)).

Knox Trailers also asserts a conversion claim based on financial misconduct. Knox Trailers alleges that: (1) "Mr. Maples appropriated company funds for his own use and benefit when he took unauthorized bonuses and payments from Knox Trailers[,]" (Doc. 94, at 43); (2) "Mr. Maples, Mr. Henegar, and Mr. Bailey appropriated company funds for their own use and

benefit when they charged personal, non-work-related, expenses to Knox Trailers' credit card[,]" (*id*. at 44); (3) "Mr. Maples and Mr. Henegar appropriated company funds for their own use and benefit when they engaged in a scheme to divert revenue away from Knox Trailers through direct payments from customers[,]" (*id*.); and (4) "Mr. Maples, Mr. Clark, and Mrs. Clark appropriated company funds when they engaged in a scheme to obtain unauthorized health insurance benefits for their own use and benefit" (*id*.).   Knox Trailers has pled specific sums that the Defendants converted.[6]   Accordingly, it can maintain its conversion claim as to the health-insurance premiums, unauthorized bonuses, unauthorized credit-card use, and diverted revenue. *See May v. Scott*, 888 F. Supp. 2d 828, 838–840 (W.D. Tenn. 2005) (awarding damages for conversion claim predicated on misuse of company credit cards, issuance of checks from company accounts, and wire transfers from company accounts).

### 2.   *Post Trailer's Conversion Claim*

In count ten, Post Trailer asserts that Mr. Maples, Mrs. Maples, Mrs. Clark, and Titan Trailer converted:  (1) documents, electronic information, financial records, and other items; (2) inventory (Mr. Maples); (3) company funds; and (4) unauthorized health benefits.  (Doc. 94, at 46–46.)  TUTSA preempts Post Trailer's conversion claim insofar as it is based on trade-secrets. Consequently, Post Trailer cannot maintain a conversion claim and a TUTSA claim for the taking and misappropriation of its documents, electronic information, and financial records. However, as stated above, inventory is a tangible chattel and may be the basis of a conversion

---

[6] Mr. Maples is alleged to have taken:  $10,000, $6,250, and $12,500 in personal bonuses, $4,647 and $600 for work on his home, and $5000 for an unauthorized truck upgrade.  (Doc. 94, at 6.) Further, Mr. Maples charged $2000 of personal expenses per month on his company credit card; Mr. Henegar charged $200 in personal expenses per month; Mr. Bailey charged $250 per month; and Mrs. Maples charged $100 per month.  (*Id*. at 7–9.)  Additionally, Mr. and Mrs. Maples obtained $24,000 in unauthorized health benefits.  (*Id*. at 10.)  Mr. and Mrs. Clark obtained $13,000 in unauthorized health benefits.  (*Id*.)

claim. *See White v. Empire Exp., Inc.*, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012) (holding that a truck was tangible property and had been converted). Likewise, Post Trailer has identified specific sums of money that Defendants converted in company funds and in health insurance benefits. *See May*, 888 F. Supp. 2d at 838–840. As a result, the misuse of company funds may also form the basis for a conversion claim.

### G. Plaintiffs' Constructive-Trust Claims

In counts eleven and twelve, Knox Trailers and Post Trailer respectively assert nearly identical claims for constructive trust. (Doc. 94, at 47–48.) Defendants argue that these claims must be dismissed because "constructive trusts are not a cause of action," and, further, because "the purpose of a constructive trust is to trace the funds transferred by a debtor party to a third party who then holds those funds in trust." (Doc. 164, at 17–18.)

In Tennessee, a constructive trust

arises contrary to intention and in invitum [against an unwilling party], against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of a wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

*LaFollette Med. Ctr. v. City of LaFollette*, 115 S.W.3d 500, 505 (Tenn. Ct. App. 2003) (citing *C. Bus Lines v. Hamilton Nat'l Bank*, 239 S.W.2d 583, 585 (1951)). Contrary to Defendants' representations, Tennessee courts impose constructive trusts in four types of cases:

(1) where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by fraud, duress or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.

*Myers v. Myers*, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994). While constructive trusts are "equitable devices" used by courts to "prevent unjust enrichment," it is unclear whether Tennessee courts categorize them as a cause of action or merely a remedy. *Compare Story v. Lanier*, 166 S.W.3d 167, 184 (Tenn. Ct. App. 2004) *and Boynton v. Headwaters, Inc.*, 564 F. App'x 803, 807 (6th Cir. 2014) (noting that the district court considered "plaintiffs' reference to a "constructive trust" to be a separate claim" and finding no abuse of discretion when the district court subsequently imposed a constructive trust), *with In re Lawrence*, 219 B.R. 786, 802 (E.D. Tenn. 1998) ("a constructive trust . . . is an equitable remedy devised by courts").

The Court need not decide whether constructive trust is a claim or a remedy, however, because Plaintiffs have failed to allege that Defendants received legal title, as opposed to mere possession, of their property. *See Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977) ("Constructive or resulting trusts are judge-created trusts or doctrines which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another."); *see also In re Lawrence*, 219 B.R. at 803 (a constructive trust may be imposed when an individual "has acquired or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy" (quoting *Rutherford Cnty. v. City of Murfreesboro*, 304 S.W.2d 635, 639 (Tenn. 1957)). As a result, Plantiffs' constructive-trust claims will be dismissed.

### H. Civil Conspiracy

In count thirteen, Knox Trailers asserts a civil-conspiracy claim. Post Trailer asserts an almost-identical claim in count fourteen. Defendants argue that "Counts Thirteen and Fourteen must be dismissed to the extent they allege a conspiracy based on the solicitation of customers and employees, intentional interference with business relations, or misappropriation of funds and

proprietary/trade secret information." (Doc. 164, at 16.) Defendants have not attacked the sufficiency of Plaintiffs' pleadings, but rather contend that the conspiracy claim must be dismissed, at least in part, because the underlying tort claims must be dismissed.

"The elements of a cause of action for civil conspiracy under Tennessee common law are: (1) a common design between two or more persons; (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) injury to person or property resulting in attendant damage." *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 642 (M.D. Tenn. 2006) (citing *Braswell v. Carothers*, 863 S.W.2d 722, 727 (Tenn. Ct. App. 1993)). A claim for civil conspiracy must have an underlying predicate tort committed in the course of the conspiracy. *Id*. (citing *Morgan v. Brush Wellman, Inc.*, 165 F. Supp. 2d 704, 721 (E.D. Tenn. 2001)).

Defendants' argument fails in part because the underlying tort claims have not been completely dismissed. Indeed, the breach-of-fiduciary-duty and conversion claims, as well as the unfair-competition claim, have only been dismissed in part. Because underlying tort claims remain, dismissal of Plaintiffs' civil-conspiracy claims would be inappropriate. However, to the extent that the civil-conspiracy claims rely on Defendants' misappropriation of trade secrets, they are preempted by TUTSA.

## I. Defendants Brownlee and Powell

Defendants further argue that Mr. Brownlee should be dismissed entirely from the case. (Doc. 164, at 22.) Plaintiffs only assert claims of intentional interference of business relations, unfair competition, and civil conspiracy against Mr. Brownlee. (*See* Doc. 94.) Because the Court will dismiss Count Three in its entirety, Mr. Brownlee has not committed a tort that could

support a claim for unfair competition or civil conspiracy. As a result, Mr. Brownlee will be dismissed.

Finally, Defendants contend that Mr. Powell must be dismissed from counts thirteen and fourteen because Plaintiffs only assert trade-secrets claims against him. (Doc. 164, at 21.) The Court agrees. Any civil-conspiracy claim against Mr. Powell is preempted by TUTSA, as there is no underlying tort claim. As a result, Plaintiffs may not assert their civil-conspiracy claims against Mr. Powell.

## IV. CONCLUSION

Defendants' motion for judgment on the pleadings (Doc. 163) is **GRANTED IN PART**. Counts one, two, four, nine, ten, thirteen, and fourteen are **DISMISSED IN PART**, to the extent that they rest on Defendants' trade-secret misconduct, including the solicitation of customers and the formation of Titan Trailer and to the extent they are brought against Mr. Powell. Counts three, eleven, and twelve are **DISMISSED IN FULL**. All claims against Defendant Heath Brownlee are **DISMISSED**.

**SO ORDERED.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**