UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| KNOX TRAILERS, INC., and POST TRAILER REPAIRS, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-137-TRM-DCP |
| | ) | |
| JEFF CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is a Motion for Sanctions Under Rule 37 and the Court's Inherent Powers Against Defendants Billy Maples and Titan Trailer ("Motion for Sanctions") [Doc. 125], filed by Plaintiffs Knox Trailers, Inc. ("Knox Trailers") and Post Trailer Repairs, Inc.'s ("Post Trailer") (collectively, "Plaintiffs"). Defendants Billy Maples ("Maples") and Titan Trailer Repair & Sales, Inc. ("Titan Trailer") (collectively, "Defendants")[1] filed a response opposing the Motion for Sanctions [Doc. 139]. Frantz, McConnell & Seymour, LLP ("FM&S") and John Lawhorn ("Lawhorn") also filed a response in opposition to Plaintiffs' Motion for Sanctions [Doc. 140], noting that while Plaintiffs moved for sanctions only against Defendants in their motion, Plaintiffs included statements at the end of their supporting memorandum requesting that the Court find "defense counsel" jointly and severally liable for any attorney's fees and costs assessed against Defendants. Plaintiffs filed their respective replies [Docs. 143 and 144]. The Motion for Sanctions

---

[1] The Court will refer to Defendants Billy Maples and Titan Trailer collectively as "Defendants," but the Court notes that there are other Defendants in this case that are not subject to this Motion.

is ripe for adjudication.  Accordingly, for the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Sanctions [**Doc. 125**].

I.  **BACKGROUND**

Plaintiffs request a default judgment in their favor on their trade secrets claims against Defendants and their breach of fiduciary duty claim against Maples, or in the alternative, other sanctions in the form of certain established facts due to Defendants' withholding of evidence and attempts at deception.  In addition, Plaintiffs request an award of their reasonable attorney's fees caused by Defendants' misconduct.

The issues in the instant matter primarily relate to a USB device ("USB") that contains Plaintiffs' Southware databases ("Databases").  The Databases include Plaintiffs' business information, such as customer information, vendor information, parts-pricing information, service-pricing information, order history, vendor history, customer communications, and other customized reports.  [Doc. 85 at 6-7].  Prior to leaving his employment with Plaintiffs, Maples downloaded the Databases to the USB and formed Titan Trailer, a competing company.

This case was filed on March 19, 2020, in the Chancery Court for Knox County, Tennessee, and removed to this forum on March 31, 2020. [Doc. 1].  Plaintiffs propounded discovery to Defendants targeted at what property Maples took prior to leaving his employment with Plaintiffs and the timeframe of when Maples began forming Titan Trailer.[2]  Specifically, with respect to Plaintiffs' property, Interrogatory No. 11 requests that Maples "state any and all of Plaintiffs' property, including, but not limited to business records, customer lists, office supplies, contact information, business cards, software, computer files, and cell phones, that you took with you upon

_____

[2] While this section outlines what occurred during discovery, the Court has also reviewed Appendix C, [Doc. 126 at 44-53], which details Defendants' misleading statements in their pleadings.

2

leaving Plaintiffs' employment." [Doc. 125-1 at 7-8]. On July 16, 2020, Maples responded to Interrogatory No. 11 that he had "none of Plaintiff's [sic] property in his possession." [*Id*. at 8]. Similarly, in response to Interrogatory No. 22, which requests the identity of any Defendant who kept Plaintiffs' customer information, Maples responded that "he has none of Plaintiffs' records or property in his possession" and had no knowledge concerning whether any of his co-Defendants had such customer information." [*Id.* at 11-12]. Titan Trailer made similar disclaimers. [Doc. 125-2 at 12]. With respect to the timing of when Maples founded Titan Trailer, Maples stated in response to Interrogatory No. 13 that he "first conceived of and commenced planning to open Titan during the second week of February 2020." [*Id.* at 8].

In late November 2020 or early December 2020, Lawhorn disclosed to Plaintiffs' counsel, Jimmy Carter ("Carter"), the existence of the USB that Maples provided to Lawhorn. [Doc. 84-11 at ¶ 2] ("Declaration of Jimmy Carter"). Lawhorn told Carter that he had not examined the contents of the USB, but according to Maples, Maples had copied a few files to the USB before leaving the employ of Plaintiffs, but Maples and Titan Trailer had not used the files. [*Id.* at ¶ 3]. In addition, Lawhorn stated that from his understanding, the USB also contained Maples's personal files, such as pictures. [*Id.*]. The parties agreed to retain an expert to make a forensic copy of the USB.

On February 4, 2021, Maples supplemented his discovery responses by producing text messages between him and Defendant Stephen Powell ("Powell"). Generally, the text messages revealed that Maples had downloaded Plaintiffs' Databases onto the USB prior to Maples leaving his employment with Plaintiffs and that Defendant Powell had agreed to use the USB to set up Titan Trailer's computer system. [Doc. 123 at 3-4; Doc. 126 at 8]. On February 8, 2021, Lawhorn provided the USB to a neutral expert to make a forensic copy. [Doc. 84-11 at ¶ 11]. After

Plaintiffs' expert reviewed the forensic copy, he opined that Maples, or someone using his credentials, accessed the Databases on March 22, 2020, after Maples's resignation from Plaintiffs' employ and that Defendants were using the customized Southware implementation, along with Plaintiffs' customer, vendor, inventory, and pricing information. [Doc. 117 at ¶¶ 29, 32-33].

The present issues before the Court came to light during a preliminary injunction hearing before the Chief District Judge. Specifically, on April 27, 2021, the Chief District Judge held a preliminary injunction hearing on Plaintiffs' request to enjoin Defendants "from using the Database, or any document or other tangible thing derived from information in the Database." [Doc. 123 at 1]. During the preliminary injunction hearing, Maples acknowledged that his response to Interrogatory No. 11 was not truthful. [Doc. 115 at 96-97]. Similarly, Maples acknowledged that his response to Interrogatory No. 22 was not truthful. [*Id.* at 102-03]. Further, when asked when he planned to open Titan Trailer, Maples testified, "I planned on possibly doing something else. I didn't know exactly what I was going to do in December, but yes. I was planning to do sometime else, yes, sir." [*Id.* at 74]. Maples later testified that he sent Plaintiffs' profit and loss statement to Heath Brownlee on December 4, 2019, to determine if they could open a profitable trailer repair business. [*Id.* at 75-76]. Maples testified that in December 2019, he was planning a business to compete with Knox Trailers. [*Id.* at 77].

In addition, Maples admitted that several of the statements in Defendants' Amended Answers [Docs. 86, 87] were misleading. [Doc. 115 at 105-110]. Prior to the Chief District Judge adjourning the preliminary injunction hearing, he noted that it appeared Defendants needed to amend their discovery responses and that "this ha[d] not been pleasant for [him] to watch honestly." [*Id.* at 121].

4

Following the preliminary injunction hearing, on May 4, 2021, Maples supplemented several of his discovery responses. For instance, Maples identified Defendant Powell as having knowledge of Plaintiffs' Southware system and how some data from Plaintiffs' Southware system was used by Titan Trailer. [Doc. at 125-6 at 3-4].[3] In addition, Maples amended his response to Interrogatory No. 11 to state as follows: "Shortly before leaving Plaintiffs' employment Mr. Maples downloaded Plaintiffs' Southware operating systems onto a USB memory device and delivered it to Defendant Steve Powell." [Doc. 125-6 at 3-4; Doc. 139-4 at 1].

On May 21, 2021, the Chief District Judge granted Plaintiffs' request for a preliminary injunction. [Doc. 123]. In the Memorandum and Order, the Chief District Judge noted that Defendants were untruthful in their discovery responses and in their interactions with the Court and provided several examples of Defendants' misconduct. [*Id.* at 17]. For example, the Court explained that on February 20, 2020, while employed with Plaintiffs, Maples downloaded the Databases onto the USB with the help of Defendant Powell, who had previously worked for Plaintiffs to help manage the Databases. [*Id.* at 3]. On the same day, Defendant Powell and Maples exchanged text messages about Maples downloading the Databases onto Maples's desktop and creating a zip file for the Databases. [*Id.* at 3-4]. Despite the text messages showing otherwise, Maples testified during the preliminary injunction hearing, that he was not aware of what he had downloaded and thought he was just cloning the Southware system—not the information contained therein. [*Id*. at 4]

The Chief District Judge further noted that in response to the motion for preliminary injunction, Maples represented that he gave the information to Defendant Powell "for safekeeping" after Maples had "determined that it was not advisable that he personally access the information

---

[3] According to Plaintiffs' brief, on February 4, 2021, Maples produced the text messages between him and Defendant Powell showing the same. [Doc. 126 at 8].

5

or retain it in his possession." [Id. at 4]. In addition, Maples represented to the Court that he "never thereafter accessed the data personally or attempted to install or download any of the information from the KTI/Post operating system from the USB drive onto his own or Titan's computers or other storage devices." [Id.]. Maples's representations to the Court were misleading as established at the hearing.

Further, Plaintiffs introduced a text message from Maples to Defendant Powell dated March 2, 2020, which stated as follows, "Let's get that server ordered today. What ya think? That way I can get you that flash drive to you [sic] to start setting up Southware." [Id. at 4]. Maples also testified during the hearing that he gave the USB to Defendant Powell so that Maples's new company, Titan Trailer, "could have a SouthWare system to work off of." [Id.]. In addition, following his resignation with Plaintiffs, Maples texted Defendant Powell on March 11, 2020, regarding setting up Southware. [Id.]. Maples directed Defendant Powell to set up Southware with Plaintiffs' customers, vendors, and inventory, but to avoid capturing Plaintiffs' pricing, history, sales, or orders. [Id. at 4-5].

In addition, at the preliminary injunction hearing, Maples testified that Defendants were not using any pricing history that was downloaded on the Databases but only using their knowledge of such pricing. [Id. at 6]. Plaintiffs' expert testified that "from a sample comparing parts pricing between Knox Trailers and Titan Trailer, there was consistently a 1.43 price multiplier at Titan Trailer for items with 1.45 multiplier at Knox Trailers." [Id.] (quoting [Doc. 115 at 181]). The expert testified that "the likelihood that the pricing information had been important was much greater than the 'theoretical alternative . . . that Titan Trailer typed in more than 1,000 stock items and entered in the 1.43 price multiplier every single time without error.'" [Id.] (quoting [Doc. 115 at 181]).

In the Memorandum Opinion, the Chief District Judge stated as follows:

> Further, the Court notes that it is deeply troubled by Defendants'
> failure to disclose the extent of the information that was taken from
> Plaintiffs to start Titan Trailer and by Maples's blatant lack of
> candor in his discovery responses. Unquestionably, the injury to
> Plaintiffs—and the litigation costs for all parties—has been
> magnified by the delay attributable to Defendants' mendacious
> behavior in responding to discovery requests. The Court
> **ADMONISHES** the parties, and Defendants in particular, that
> untruthful discovery responses and interactions with the Court will
> be looked on with great disfavor. Such conduct is sanctionable *at
> best*. Defendants are **DIRECTED** to take a thorough look at the
> discovery responses they have submitted and promptly make any
> necessary amendments.

[*Id.* at 17].

Plaintiffs filed the instant Motion on June 14, 2021. On June 25, 2021, Attorney Edward
Shipe, current counsel for Defendants, requested to be substituted as counsel of record and
requested that Lawhorn and FM&S be permitted to withdraw [Doc. 127]. On the same day,
Defendants requested a stay of the deadlines so that its new counsel could become more familiar
with the case [Doc. 125]. On August 12, 2021, the Chief District Judge declined to stay the
deadlines and stated as follows:

> The Court agrees with Plaintiffs that the correction of false or
> materially incomplete discovery responses should not take the
> amount of time that Defendants are requesting. Even with the
> substitution of new counsel, there is no reason why the errors, the
> large part of which are specifically identified in the transcript of the
> preliminary-injunction hearing, should not have been corrected by
> this point. Further, the Court sees no reason to stay the case or extend
> all deadlines when Defendants really seem to be asking for more
> time to supplement their discovery (which the Court deems is not
> necessary) and to have additional time to respond to the motion for
> sanctions (which the Court will allow without granting a stay or
> general continuance). Accordingly, the motion for stay or
> continuance (Doc. 128) is **DENIED**. Defendants are **ORDERED** to
> supplement their incorrect or incomplete discovery responses
> **immediately** but absolutely no later than **August 20, 20[21]**.
> Counsel for Defendants are **DIRECTED** to review the Court's

7

previous opinion (Doc. 123), the motion for sanctions (Docs. 125, 126), and the transcript from the preliminary injunction hearing (Doc. 115) to identify which discovery responses need to be supplemented. If Defendants fail to comply with this order, they may be subject to additional sanctions from the Court.

[Doc. 136 at 2].   Defendants timely supplemented their discovery responses in accordance with the instructions above.

## II.   POSITIONS OF THE PARTIES

Plaintiffs filed their Motion for Sanctions pursuant to Federal Rule of Civil Procedure 37 seeking a default judgment on their trade secrets claims against Defendants and their breach of fiduciary duty claim against Maples, or alternatively, declaring the following facts as having been established in Plaintiffs' favor:

1. To the extent Plaintiffs can show that their Southware databases are trade secrets,

   (a) Mr. Maples and Titan Trailer misappropriated such trade secrets by improperly acquiring and using them, and that they be precluded from supporting a defense to or opposing Plaintiffs' claim of misappropriation. [Doc. 123 at 15].

   (b) Mr. Maples and Titan Trailer gained at least a three-month head-start in competing with Plaintiffs, and that they be precluded from supporting a defense to or opposing Plaintiffs' claim of misappropriation. [Doc. 123 at 14].

   (c) Mr. Maples and Titan Trailer misappropriated such trade secrets willfully and maliciously and that they be precluded from supporting a defense to or opposing Plaintiffs' claim regarding the willfulness and maliciousness. [Doc. 123 at 15].

2. To the extent Plaintiffs can show Mr. Maples owed a fiduciary duty to Plaintiffs, Mr. Maples first breached his fiduciary duty no later than December 2019, when he first began making definite plans to open his competing business, Titan Trailer, and that Mr. Maples be precluded from supporting a defense to or opposing Plaintiffs' claims of such breach. *See, e.g.*, [Doc. 115 at 74-77, 97-101; Exs. 8-10].

8

[Doc. 125 at 28]. In addition, Plaintiffs move this Court to award them their reasonable attorney's fees caused by Defendants' gross misconduct. [*Id.*]. In support of their Motion for Sanctions, Plaintiffs complain as follows:

> A. Mr. Maples and Titan Trailer wrongly denied taking any of Plaintiffs' Trade Secrets in their original answers and discovery responses.
>
> B. Defendants waited to disclose the existence of the USB drive containing Plaintiffs' trade secrets until after Defendants' motions to dismiss Plaintiffs' trade secrets claims were denied.
>
> C. Mr. Maples and Titan Trailer continued to deny possessing or using Plaintiffs' trade secrets even in their answers to the Amended Complaint and supplementary discovery responses.
>
> D. A forensic examination revealed the mendacity of Mr. Maples's and Titan Trailer's earlier responses regarding Plaintiffs' trade secrets.
>
> E. Mr. Maples and Titan Trailer continued to repeat their lies in opposing Plaintiffs' Preliminary Injunction Motion.
>
> F. At the injunction hearing, Mr. Maples's and Titan Trailer's earlier lies were belied by Mr. Maples's testimony.
>
> G. Mr. Maples and Titan Trailer filed additional misleading answers and discovery Reponses after the hearing.
>
> H. Despite this Court's Order, Mr. Maples and Titan Trailer have not otherwise supplemented their discovery responses.

[Doc. 126 at 4-6, 9-16]. Plaintiffs state that after having been admonished by the Court, Defendants continued with a campaign of incompletely and improperly responding to discovery requests. Thus, Plaintiffs maintain that sanctions are warranted.

In response, Defendants accuse Plaintiffs of seeking to use Defendants' disclosure of the USB that occurred in November 2020, rather than July when Defendants first responded to Plaintiffs' discovery, "to springboard far-reaching sanctions on a litany of other perceived issues

9

following the Court's May 21, 2021 admonishment." [Doc. 139 at 3].[4] Defendants maintain that they timely addressed the issues identified by the Court by filing supplements to their written discovery responses that should suffice to put these issues to bed. Defendants attached a copy of Maples's Supplemental Response to Plaintiffs' Interrogatories and Requests for Production [Doc. 139-1] dated August 6, 2021, and a copy of Titan Trailer's Supplemental Responses to Plaintiffs' Interrogatories [Doc. 139-2] dated August 20, 2021. Defendants argue that despite the supplementation, Plaintiffs continue to use the USB disclosure issue as a basis to convert "allowable and normal disputes in a lawsuit" into alleged acts of malfeasance for which Plaintiffs seek sanctions that are too far-reaching and unrelated to any prejudice Plaintiffs may have suffered.

FM&S and Lawhorn, Defendants' former counsel, respond [Doc. 140] that while Plaintiffs' motion does not directly move for or request attorney's fees or sanctions against them, Plaintiffs' contemporaneously filed supporting memorandum asserts that counsel for Maples and Titan Trailer should also be responsible for any attorney's fees awarded, citing the vexatious litigation statute, 28 U.S.C. § 1927. FM&S and Lawhorn argue that Plaintiffs failed to request any sanctions against them in a properly filed motion as required by Rule 7(b), and thus, sanctions should be denied on that basis alone. They further argue, however, that the record does not support sanctions against Lawhorn or FM&S.

Plaintiffs reply [Doc. 143] to Defendants' opposition reiterating that Defendants repeatedly lied about stealing Plaintiffs' trade secrets in their discovery responses and pleadings and used the trade secrets to compete with Plaintiffs. Plaintiffs assert that had Defendants been forthright, Defendants would have been enjoined from their use of Plaintiffs' trade secrets for the better part

---

[4] As mentioned above, the Chief District Judge stated at the hearing that the testimony had "not been pleasant for [him] to watch honestly[,]" [Doc. 115 at 121], and the Court ordered Defendants to stop using Plaintiffs' trade secrets and provide truthful discovery responses [Doc. 123].

of a year. Plaintiffs point to a number of filings that they maintain were caused, or unnecessarily complicated, by Defendants' actions, *see* [Doc. 143 at 6-7]. Plaintiffs argue that Defendants breached their duty to timely supplement their responses and that Defendants' argument concerning attorney Lawhorn's informal supplementation by orally disclosing the existence of the USB drive is disingenuous. Plaintiffs assert that Rule 26(e) imposes an affirmative duty on Defendants to supplement their answers when they are incomplete or incorrect, and Defendants failed to do so, leaving sanctions as the only way to rectify Plaintiffs' harm. Finally, Plaintiffs maintain that attorney's fees are appropriate as Defendants' conduct resulted in unnecessary motions and increased Plaintiffs' injuries and costs.

In their reply to FM&S and Lawhorn's opposition to the instant motion [Doc. 144], Plaintiffs argue that FM&S possessed the USB drive at issue and waited months before providing it to Plaintiffs, but all the while, signing discovery responses and pleadings about the USB that were, at best, misleading. Plaintiffs further state that FM&S admits to failing to timely supplement the discovery responses, and while withholding information concerning the USB, signed pleadings seeking to dismiss Plaintiffs' trade secret claims.

## III.    ANALYSIS

Accordingly, after considering the filings in this matter and the history of this case, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Sanctions [**Doc. 125**].[5]

"The Federal Rules of Civil Procedure set forth the discovery obligations of parties and their attorneys, and authorize federal courts to impose sanctions on those participants who fail to

---

[5] The Court has considered conducting an evidentiary hearing in this matter but finds one unnecessary, given that the present issues came to light during the preliminary injunction hearing, wherein Maples testified.

meet these obligations." *Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 500 (N.D. Ohio 2013). The Chief District Judge has already determined that Defendants did not comply with their discovery obligations. *See* [Doc. 123 at 121] (noting that Defendants needed to supplement their discovery responses and explaining that Defendants' testimony "had not been pleasant . . . to watch"). Thus, the questions before the Court are (1) whether sanctions are appropriate, (2) if so, what sanctions should be assessed and against whom.

Plaintiffs rely on various Federal Rules of Civil Procedure, the Court's inherent authority, and 29 U.S.C. § 1927 for the imposition of sanctions. Plaintiffs also request specific sanctions, including a (1) default judgment, or (2) establishing facts, and (3) attorney's fees against Defendants and their former counsel, Lawhorn and FM&S. The Court will address these requested sanctions separately.

### 1. Default Judgment

The Sixth Circuit has directed courts to consider four factors when determining whether dismissal is an appropriate sanction for failure to comply with the discovery obligations or other court order as follows:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Mager v. Wisconsin Cent. Ltd.,* 924 F.3d 831, 837 (6th Cir. 2019) (quoting *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)) (other quotations omitted). The Court has strongly considered recommending a default judgment based on Defendants' lack of candor in their pleadings, discovery responses, briefs, and interactions with the Court during the preliminary injunction

hearing. The Court, however, has weighed the above factors and finds that they slightly weigh in Defendants' favor.

With respect to the first factor, "To show that a party's failure to comply was motivated by bad faith, willfulness, or fault, the conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" *Mager*, 942 F.3d at 837 (quoting *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013)). The Court finds this factor weighs in Plaintiffs' favor. Defendants' original responses to the discovery requests relating to what Maples took when he left Plaintiffs' employment are simply not true as acknowledged by the Chief District Judge. The Court also finds Defendants' response on this issue equally troubling. Defendants claim that there is nothing false about Maples's response to Interrogatory No. 11, and they attempt to argue that, instead, it was a confusion about terminology. [Doc. 139-4 at 3]. There is no confusion about terminology. Maples acknowledged at the preliminary injunction hearing that his response to Interrogatory No. 11 was not correct because he downloaded the Databases to a USB, which contained Plaintiffs' customers, vendors, and inventory. Interrogatory No. 11 specifically requests whether Maples took Plaintiffs' property, including customer lists, and Maples originally denied that he had any of Plaintiffs' property. Accordingly, the Court finds the first factor weighs in Plaintiffs' favor.

With respect to the second factor, the Court finds that Plaintiffs have been prejudiced by Defendants' actions as the Chief District Judge already noted. *See* [Doc. 123 at 17] ("Unquestionably, the injury to Plaintiffs—and the litigation costs for all parties—has been magnified by the delay attributable to Defendants' mendacious behavior in responding to discovery requests."). The Court finds that Plaintiffs have been prejudiced by Defendants' conduct.

With respect to factors three and four, the Court finds that these factors weigh in Defendants' favor. "Generally, the absence of prior warnings that dismissal could result from a party's continued misconduct weighs against dismissal." *Laukus,* 292 F.R.D. at 512. Here, the Court had not previously warned Defendants that a failure to cooperate could lead to a default judgment.[6] In addition, less drastic sanctions have not been imposed, and the Court is encouraged that less drastic sanctions (as explained below) will correct these deficiencies and deter future discovery abuses of similar magnitude. *Peltz v. Moretti*, 292 F. App'x 475, 480 (6th Cir. 2008) ("This court has stated that 'the sanction of dismissal is appropriate only if ... *no alternative sanction* would protect the integrity of the pretrial process.'") (quoting *Mulbah v. Detroit Bd. of Educ.,* 261 F.3d 586, 594 (6th Cir.2001) (other quotations omitted).

Given that two factors weigh in Plaintiffs' favor and the other two factors weigh in Defendants' favor, the Court has considered what occurred after the preliminary injunction hearing. Specifically, the Court ordered Defendants to supplement their discovery responses by August 20, 2021. During that time, Defendants retained new counsel and did provide supplemental discovery responses. Accordingly, based on the factors above, Defendants' actions after the preliminary injunction hearing, and the preference for adjudicating cases on the merits, the Court declines to recommend a default judgment. *Dassault Systems, SA v. Childress,* 663 F.3d 832, 841 (6th Cir. 2011) ("Because of our general preference for judgments on the merits . . . a glaring abuse of discretion is not required for reversal of a court's refusal to relieve a party of the harsh sanction of default.") (internal citations omitted).

---

[6] Arguably, a court should not have to direct a party to respond to discovery requests truthfully. *See Laukus*, 292 F.R.D. at 512 (explaining that it is not "necessary to warn a party that the offering of knowingly false deposition testimony or evasive discovery responses, or the concealment of highly relevant discovery, might compromise one's ability to continue to litigate in federal court" but nevertheless finding that "the lack of a prior warning militates against dismissal").

14

Moving forward, the Court expects Defendants to comply with their discovery obligations. The Court **ADMONISHES** Defendants that future discovery abuses of similar magnitude or lack of candor to the Court will lead to additional sanctions, including a default judgment being entered pursuant to Fed. R. Civ. P. 37(b)(2). Defendants **SHALL** consider this admonishment as their **FINAL WARNING** and any continued defenses of Defendants' "mendacious behavior" will not be tolerated. [Doc. 123 at 17].

B.    **Establishing Facts**

As mentioned above, Plaintiffs request that the following facts be established:

1.    To the extent Plaintiffs can show that their Southware databases are trade secrets,

      (a) Mr. Maples and Titan Trailer misappropriated such trade secrets by improperly acquiring and using them, and that they be precluded from supporting a defense to or opposing Plaintiffs' claim of misappropriation. [Doc. 123 at 15].

      (b) Mr. Maples and Titan Trailer gained at least a three-month head-start in competing with Plaintiffs, and that they be precluded from supporting a defense to or opposing Plaintiffs' claim of misappropriation. [Doc. 123 at 14].

      (c) Mr. Maples and Titan Trailer misappropriated such trade secrets willfully and maliciously and that they be precluded from supporting a defense to or opposing Plaintiffs' claim regarding the willfulness and maliciousness. [Doc. 123 at 15].

2.    To the extent Plaintiffs can show Mr. Maples owed a fiduciary duty to Plaintiffs, Mr. Maples first breached his fiduciary duty no later than December 2019, when he first began making definite plans to open his competing business, Titan Trailer, and that Mr. Maples be precluded from supporting a defense to or opposing Plaintiffs' claims of such breach. *See, e.g.,* [Doc. 115 at 74-77, 97-101; Exs. 8-10.]

15

Plaintiffs rely on Rule 37(b)(2)(A)(i)-(ii), which provides that the Court may sanction as follows:

> (i)     Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

In addition, Plaintiffs state that the Court may designate certain facts as established via its inherent authority, citing *Mazeloom v. G. Heileman Brewing Co., Inc.*, 849 F.2d 609 (Table), 1988 WL 62421, at *3 (6th Cir. 1988). In response, Defendants claim that Plaintiffs cannot rely on Rule 37(b) as a basis for sanction because it only applies to a party's failure to abide by a court order relating to discovery. Defendants state that they complied with the Chief District Judge's Memorandum and Order [Doc. 123] and supplemented their discovery responses. Defendants further argue that the Court may only resort to its inherent authority when the Federal Rules of Civil Procedure do not apply. Defendants state that Plaintiffs could have filed a motion to compel under Rule 37(a) but chose not to do so. Defendants add that any motion to compel would now be moot because they supplemented their discovery responses.

The Court notes that Defendants devote much time in their brief discussing the steps that Plaintiffs should have taken in order to remedy Defendants' discovery deficiencies. Defendants' arguments trivialize what occurred in this case: Defendants were not honest in their discovery responses and their representations to the Court. Thus, Defendants' arguments that Plaintiffs failed to take steps to compel Defendants to supplement with honest answers is meritless at best.

The Court finds sanctions appropriate under Rule 37(c)(1), which Plaintiffs also cite in their brief. Rule 37(c)(1) provides the following:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> **(B)** may inform the jury of the party's failure; and
>
> **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). Rule 26(e) provides that a party who has responded to an interrogatory or request to produce must supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). The Court finds that Defendants did not supplement in a timely manner as they knew at the time of providing their responses that they were not correct.[7] Accordingly, the Court finds sanctions are appropriate.[8]

Given Defendants' conduct in this case, the Court finds the most appropriate sanction is to establish that, to the extent Plaintiffs can show that their Databases are trade secrets, that Maples

---

[7] The Court also finds sanctions are appropriate under Rule 26(g)(3), which provides that the court, on its own, must impose sanctions.

[8] The Court has specifically reviewed Appendix A in determining what sanctions are appropriate. In Appendix A, Plaintiffs have listed the alleged deceptions in the discovery responses. The Court notes, however, that not all Defendants' discovery responses are deceptive. For instance, Plaintiffs complain about Maples's response to Interrogatory No. 7, which requests, "Please describe in detail, your role with Titan Trailer and state the amount of time that you have had that role." [Doc. 139-4 at 2]. Maples responded, "The general Manager of Titan. He assumed that position on March 5, 2020. Mr. Maples also holds member interests in the corporate entity doing business as Titan Trailer Repair & Sales. He first signed a member operating agreement on February 26, 2020." [*Id.*]. Plaintiffs state that Maples's response inaccurately recounts Maples's role, including his efforts in founding Titan Trailer. Interrogatory No. 7, however, does not ask about Maples's efforts in founding Titan Trailer.

and Titan Trailer misappropriated such trade secrets by improperly acquiring and using them.  The Court further precludes Defendants from supporting a defense or opposing Plaintiffs' claim of misappropriation.  In ordering that these facts be established, the Court notes that the majority of Plaintiffs' complaints relate to Defendants' lack of candor regarding the extent of the information Maples took when he left.  As discussed above, Defendants were not honest in their original discovery responses relating to this topic.  Thus, in order to compensate Plaintiffs for the loss of time and resources in trying to discover relevant information on this topic, the Court finds an appropriate sanction is to deem this fact as established for trial purposes. *See also* [Doc. 123 at 15] ("Plaintiffs have presented direct evidence that Defendants misappropriated the information in the Databases.").

The Court declines to find 1(b) and (c) as established facts.  In support of their argument in finding that Defendants had a three-month head start, Plaintiffs rely on the opinion of their expert who testified at the preliminary injunction hearing.  The Court finds that the jury should hear and weigh this evidence.  This issue before the undersigned is not whether Plaintiffs are able to establish certain facts at this juncture, but instead, whether Defendants should be sanctioned in the form of established facts.  Given that the fact contained in 1(b) is within the purview of an expert, and not any of the Defendants' discovery responses, the Court will not enter this fact as established.

In a similar vein, the Court finds that the jury should hear and weigh the evidence regarding Maples's intent.  Maples acknowledged that he downloaded the Databases to the USB in March 2020; however, there is also evidence in the record that, at the time Maples downloaded the Databases to the USB, he was not aware of the extent of information that he downloaded.  Accordingly, the Court declines to enter 1(c) as an established fact.

The Court will not deem Plaintiffs' second fact (*i.e.,* that Maples began making definite plans no later than December 2019) as established. Specifically, Interrogatory No. 13 requests, "Please state how long you had been planning to begin the business Titan Trailers." [Doc. 125-1 at 8]. Maples responded that he "first conceived of and commenced planning to open Titan during the second week of February 2020." [*Id.*]. At the preliminary injunction hearing, Maples certainly admitted to facts showing that such plans began in December 2019. For instance, when asked if in December 2019 Maples was planning a business to compete with Knox Trailers, Maples responded, "Yes, sir." [Doc. 115 at 77]. Later, however, Maples testified that he was not serious about opening a business until February 2020. Maples explained, "We didn't plan on starting the business until February. That was all just us going back and forth between friends looking to maybe start a company together, possibly. We didn't for sure we were doing to do that until February." [*Id.* at 98-99]. When asked about Titan Trailer's Articles of Organization ("Articles"), Maples admitted that they were filed with Tennessee's Secretary of State in January 2020 but that Heath Brownlee named the company "HBFP" in the Articles, which stands for "Heath's Big F****** Party." [*Id.* at 98]. In Titan Trailer's original response to Interrogatory No. 13, it acknowledges that Maples and Heath Brownlee had discussions in late 2019 or early January 2020, about the possibility of opening a trailer repair business. [Doc. 126 at 37-38]. In light of the above evidence and Maples's supplemental response, the Court finds that the jury should weigh this testimony and determine when Maples began forming Titan Trailer. Accordingly, the Court finds Plaintiffs' request to deem certain facts established well taken in part.

## C. Attorney's Fees

Plaintiffs request that Defendants pay their reasonable attorney's fees pursuant to Rule 37 and the Court's inherent authority. In addition, Plaintiffs request that Lawhorn and FM&S be jointly and severally liable for any attorney's fees awarded. The Court will first address an award

of attorney's fees against Defendants and then turn to Plaintiffs' request for attorney's fees against Lawhorn and FM&S.

### 1. Maples and Title Trailer

For the same reasons as above, and based on the same authority (*i.e.,* Rule 37), the Court finds an award of attorney's fees appropriate. Specifically, the Court finds an award of attorney's fees to be appropriate under Rule 37(c)(1). Rule 37(c)(1) provides that the Court may order a party to pay reasonable expenses, including attorney's fees, caused by a failure to supplement discovery responses in accordance with Rule 26(e). Again, Defendants were not truthful in their original discovery responses. Chief Judge McDonough already admonished Defendants for the failure to disclose the extent of the information that was taken from Plaintiffs. In addition, Chief Judge McDonough noted that Plaintiffs were injured by Defendants' "mendacious behavior" in the form of delay and litigation costs and found "[s]uch conduct is sanctionable at *best."* [Doc. 123 at 17].

The Court must now address the appropriate amount to award. Plaintiffs state that they have engaged in several actions that were wholly unnecessary, such as responding to motions to dismiss, filing additional and more extensive briefs than necessary surrounding the motion to amend, twice amending the complaint, sending discovery deficiency letters, increasing injunction hearing preparation time because certain facts were not properly disclosed or admitted, and filing the present motion. Defendants assert that to the extent sanctions are awarded, such sanctions must be proportional to the prejudice Plaintiffs experienced. Defendants state that Plaintiffs have shown limited prejudice, if any.

The Court has reviewed Plaintiffs' filings and finds that the most appropriate award of attorney's fees is in relation to the motion for preliminary injunction and the instant Motion. Defendants' misleading discovery responses primary effected whether Plaintiffs were entitled to

an injunction.  The Court has considered awarding attorney's fees for the other filings, such as the pleadings and litigating the motions to dismiss, but the Court declines to award attorney's fees for these actions.  For instance, with respect to Defendants' motions to dismiss, the motions presented legal challenges to whether Plaintiffs' information is subject to protection.  Plaintiffs also argue that they spent time preparing discovery deficiency letters.  As noted above, however, *see supra* note 7, the Court does not find that all Defendants' responses to Plaintiffs' discovery requests were deficient.  The Court has also considered awarding the time Plaintiffs spent on amending the pleadings given that Defendants' answers contained the same misleading statements as in their original discovery responses.  The Court notes, however, that Plaintiffs' amendments were not solely based on the USB, but instead, were filed to add new parties and new claims of relief.

The Court finds that Defendants' actions have predominantly affected the proceedings related to the motion for preliminary injunction.  The Court hereby awards Plaintiffs their attorney's fees associated with preparing for the preliminary injunction hearing, litigating their motion and related filings (*i.e.*, [Docs. 125, 139, 140]), and attending the hearing.  The parties are **ORDERED** to meet and confer to determine the reasonableness of the amount of Plaintiffs' attorney's fees **within fourteen (14) days** of the instant Memorandum and Order.  If the parties cannot agree to the reasonableness of such fees, Plaintiffs **SHALL** bring the matter to the Court's attention and file supporting documentation for their overall amount **within twenty-one (21) days** of this Memorandum and Order.

### 2.    Attorney's Fees against Counsel

In the Memorandum, Plaintiffs seek attorney's fees against Defendants' former counsel, Lawhorn and FM&S, pursuant to 28 U.S.C. § 1927.  Plaintiffs state that Lawhorn possessed the USB containing the trade secrets at least by March or April 2020, nearly nine (9) months before

turning it over. Plaintiffs state that Lawhorn signed his name to the answers and discovery responses that stated Defendants possessed none of Plaintiffs' property. In addition, Plaintiffs state that in all their communications with Lawhorn, he never indicted that he possessed the USB until the Court granted a motion to amend. Plaintiffs state that Lawhorn either willfully withheld the USB in bad faith or remained willfully ignorant.

Lawhorn and FM&S state that Plaintiffs waived this issue because they failed to move for attorney's fees against counsel in their motion and only do so in their memorandum. In addition, Lawhorn and FM&S state that the record does not support sanctions against him or FM&S. Lawhorn and FM&S argue that sanctions against an attorney have been reserved for cases in which counsel is found to have engaged in egregious behavior. Lawhorn and FM&S also argue that a law firm cannot be held responsible under 28 U.S.C. § 1927.

Before turning to the merits, the Court must determine whether Plaintiffs waived this issue by failing to request attorney's fees against Lawhorn and FM&S in their Motion, although they requested such sanctions in their memorandum of law in support of the motion. Specifically, Rule 7(b) provides, "A request for a court order must be made by motion." At least one court declined to consider a request for relief because the party requested the relief in a memorandum of law and provided no legal authority for its request. *United States v. Real Prop. known as 2916 Forest Glen Ct., Beavercreek, Ohio*, 162 F. Supp. 2d 909, 917 (S.D. Ohio 2001) ("If Twin desires an order directing the Plaintiff to compensate it for any losses, it may request such relief through a separately filed Motion with supporting authority.").

The Court, however, will not consider the issue waived for two reasons. First, Plaintiffs thoroughly briefed their request for attorney's fees against Lawhorn and FM&S in the memorandum of law and cited authority for their request. Second, Lawhorn and FM&S have

notice of the allegations against them and the requested relief and have filed a response in opposition to Plaintiffs' request. At this point, FM&S and Lawhorn's argument raises form over substance. The Court admonishes Plaintiffs, however, that future requests shall comply with Rule 7(b), or they will be deemed waived.

Pursuant to 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Courts have explained, "Section 1927 sanctions may be imposed without a finding that the lawyer subjectively knew that his conduct was inappropriate, but the conduct must exceed 'simple inadvertence or negligence that frustrates the trial judge.'" *Hogan v. Jacobson*, 823 F.3d 872, 886 (6th Cir. 2016) *(quoting Scherer v. JP Morgan Chase & Co.,* 508 F. App'x 429, 439 (6th Cir. 2012)) (other quotations omitted). "The purpose of § 1927 is to sanction dilatory litigation practices." *Piljan v. Michigan Dep't of Soc. Servs.*, 585 F. Supp. 1579, 1583 (E.D. Mich. 1984).

With respect to FM&S, a law firm cannot be held liable for attorney's fees pursuant to 28 U.S.C. § 1927 as a matter of law. *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010) ("28 U.S.C. § 1927 does not authorize the imposition of sanctions on law firms").[9] Accordingly, the Court is bound by existing Sixth Circuit law, and the Court finds that FM&S is not liable for any attorney's fees pursuant to 28 U.S.C. § 1927.

Further, the Court has considered Lawhorn's conduct in this case and declines to sanction him under 28 U.S.C. § 1927. In the instant matter, whether Lawhorn should be subject to sanctions depends on what he knew and when he knew it as the Court has already determined that several

---

[9] Plaintiffs acknowledge that FM&S cannot be sanctioned under existing Sixth Circuit precedent but state that they are preserving the right to seek an appeal on this issue because there is a circuit split. [Doc. 144 at 2 n. 1].

of Defendants' July 2020 responses to discovery requests and the denials in their answers were misleading. During the preliminary injunction hearing, Maples testified as follows:

> Q. So on March 19 sound about right?
>
> A. I don't know when I took [Lawhorn] the card. I know we bought the licensing around the 19th or 20th. I think it took us a couple of days to try to find a vendor to use, yes, sir.
>
> Q. You took who the card? What card are you referring to?
>
> A. The flash drive I took to John [Lawhorn].
>
> Q. When did you give it to John [Lawhorn]?
>
> A. I don't know the exact date.
>
> Q. Was it in March?
>
> A. I would say it was, yes, sir.
>
> Q. So in March –let me get this right. This is important, so in March of 2020, you had given a USB key to defense counsel here?
>
> A.  I don't remember the exact date, so I can't tell you.
>
> Q. Was it in past –
>
> A. It might have been March because –it may have been April when I gave it to him. I don't know the exact date. I can't even answer that question honestly.

[Doc. 115 at 92-93]. Lawhorn filed a declaration in support of his opposition, which states, in relevant part, as follows:

> 3. During the course of the hearing of Plaintiffs' motion for preliminary injunction on March 8, 2021, Billy Maples was asked by opposing counsel when he provided a USB drive to me. As the transcript (Doc. 115) reflects, Mr. Maples initially estimated that he gave the USB drive to me in March or April

2020 before stating that he didn't know the exact date and "couldn't answer the question honestly."

4. Mr. Maples gave me the subject USB drive in late August of 2020. My understanding was and is that Mr. Maples had attempted to download some information onto the USB drive prior to leaving his former employment and that the USB drive previously had been in the possession of a third party.

5. In large part because of uncertainty regarding the extent of any data on the USB drive and uncertainty about the extent of the functionality of the USB drive, I considered whether it would be best for a neutral forensic computer specialist to preserve and make exact duplicate images of all the data on the USB drive before its contents were otherwise examined.

6. On November 19, 2020, I received a letter from Plaintiffs' counsel requesting that additional information be provided in response to Plaintiffs' original discovery requests. My memory is generally consistent with Plaintiffs' counsel Jimmy Carter's statement in his Declaration (Doc. 84-11) regarding my having contacted him in late November 2020 or early December 2020 about having the USB drive.

7. On December 7, 2020, I prepared and filed an Answer to Plaintiffs' Amended Complaint on behalf of Mr. Maples which admitted facts in this case, among other admissions and contentions, that Mr. Maples had attempted to download a copy of Plaintiffs' Southware program onto a USB drive and I had possession of that USB drive (Doc. 69). That same day I contacted Plaintiffs' counsel specifically to discuss having the USB drive forensically examined and copied.

[Doc. 140-1 at 2].

In light of the above, the Court cannot find that Lawhorn's conduct exceeded simple inadvertence or negligence. While Maples originally stated that he provided the USB to Lawhorn in March or April, he later recanted and explicitly stated that could not answer that question honestly. The evidence before the Court shows that Lawhorn received the USB in August 2020 after Defendants provided their original responses to the discovery requests. Lawhorn acknowledges, and the Court agrees, that he should have supplemented Defendants' responses to

discovery sooner than what he did.  Specifically, as soon as Lawhorn received the USB in August 2020, he should have reviewed it, produced it, and supplemented any incorrect or incomplete discovery responses.  Instead, Lawhorn waited approximately three (3) months, November 2020 or early December 2020, to advise opposing counsel of its existence.  While the Court finds Lawhorn's actions constitute negligence, the Court does not find that they warrant sanctions under 28 U.S.C. § 1927.

Plaintiffs argue that Lawhorn learned about Defendants' use of Plaintiffs' information no later than mid-March 2020, prior to responding to discovery requests.  The Court finds no evidence to support Plaintiffs' position.  As mentioned above, while Maples testified that he provided the USB to Lawhorn in March 2020 or April 2020, he later recanted.  Plaintiffs also point to a text message that Maples sent on March 11, 2020, stating that he had retained an attorney and that his attorney told him that he (Maples) would be okay because Maples never signed anything, and it is Plaintiffs' burden to prove their case.  [Doc. 84-6 at 2].  Plaintiffs also rely on text messages between Maples and Defendant Powell, wherein Maples instructed Defendant Powell to download Plaintiffs' operating system and capture customers, vendors, and inventory.  [Doc. 84-3 at 29]. Finally, Plaintiffs point to Maples's supplemental discovery response that explains in detail what he took from Plaintiffs in March 2020.  [Doc. 139-1 at 3-7].

The Court finds that the above evidence does not establish that Lawhorn knew in July 2020 the extent of what Maples took from Plaintiffs.  Accordingly, the Court finds Plaintiffs' request to hold Lawhorn and FM&S jointly and severally liable for attorney's fees not well taken.

## IV.    CONCLUSION

Accordingly, for the reasons fully explained above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for Sanctions Under Rule 37 and the Court's Inherent Powers Against Defendants Billy Maples and Titan Trailer [**Doc. 125**].

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge