# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| KNOX TRAILERS, INC., et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20-CV-00137 |
| | ) | Judge Travis R. McDonough |
| | ) | |
| JEFF CLARK, et al. | ) | |
| Defendants. | ) | |

---

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE THE EXPERT REPORT AND EXCLUDE OPINION TESTIMONY OF MICHAEL T. HARVEY

---

Plaintiffs, by and through counsel, submit this Memorandum of Law in Support of their Motion to Strike the Expert Report and Exclude Opinion Testimony of Michael T. Harvey. Specifically, Plaintiffs seek to strike Michael T. Harvey's ("Harvey") expert rebuttal report in full, and exclude his opinion testimony in full or, in the alternative, strike inadmissible portions of the report and limit his testimony consistent with the stricken portions.

## I.     INTRODUCTION

Defendants try to sneak factual, layperson testimony into their expert's report in an impermissible attempt to sway the jury. Harvey does not offer any competing estimate of damages; instead, he makes irrelevant, unreliable, and unsound arguments in criticism of Plaintiffs' expert, D. Michael Costello ("Costello"). Harvey bases over half of his report on criticism of a lost profits methodology never employed by Costello. Harvey, a certified public accountant, attempts to opine on, *inter alia*, Plaintiffs' standing to seek certain damages, Plaintiffs' alleged negligence, and the credibility of certain witnesses. Likewise, Harvey points out facts, under the guise of expert opinion, that are obvious to the factfinder and that are predicate issues not the subject of expert

testimony. Likewise, Harvey never explains the facts or data he relies on or explains his methodology. Not only does such opinion testimony fail to satisfy Rule 702, but it must be excluded as unduly prejudicial under Rule 403.

## II.     FACTS

On December 6, 2021, Plaintiffs submitted the Expert Report of D. Michael Costello regarding damages. (Exhibit A). The Costello report sets forth separate categories of damages:

(1) **Compensatory damages** of $420,000 for diversion of revenue to Mr. Maples and Mr. Henegar while both were employed by Plaintiffs (their side business), abuse of Plaintiffs' health insurance plan, unauthorized bonuses and payroll checks, and unauthorized use of Plaintiffs' credit cards. (*Id*. at p. 43; *see also* pp. 3, 7-10, 44-50).

(2) **Unjust enrichment damages** of $1,500,000 representing Defendants' ill-gotten gains in the form of their profits for Defendants' misappropriation of Plaintiffs' trade secrets—a customized Southware database including, *inter alia*, certain of Plaintiffs' customer, vendor, inventory and pricing information.  (*Id*. at p. 51; *see also* pp. 3, 11-15, 18-22).

(3) **Head start damages** of $75,000 to $100,000 representing Defendants' avoided head start expenses for their use of the alleged trade secrets. (*Id*. at p. 3; *see also* pp. 16-18).

Importantly, Costello's opinion as to the $1,5000,000 of unjust enrichment damages is not based on Plaintiffs' lost profits, but on Defendants' unjust enrichment stemming from their use of Plaintiffs' trade secrets. (*See* Exhibit A at pp. 11-22, 51).

On January 4, 2022, Defendants Billy Maples, Amanda Maples, and Titan Trailer Repair & Sales ("Titan") submitted the expert report of Harvey in rebuttal to the Costello report. (Exhibit B at p. 5). The Harvey report does not provide any independent damages analysis; instead, it merely offers four criticisms of the Costello report, including that Costello failed to: (1) "identify

applicable specific agreements;" (2) "provide sufficient support when calculating compensatory damages;" (3) "calculate an unjust enrichment that does not result in an overstated and misleading conclusion;" and (4) "use an appropriate lost profit methodology." (*Id.* at p.5.)

In the first section, Harvey opines that "Mr. Costello fails to identify any applicable specific agreements, contracts, restrictions, policies, or agreed upon procedures that the Defendants failed to properly follow" and that "Mr. Costello neglects to place any risk/responsibility on the Plaintiffs for any wrongful acts (if any) that occurred." (*Id.* at p. 6). Harvey then makes four specific objections to Costello's report, opining that Costello disregarded "substantial risk/responsibility:

- The Plaintiffs did not have any signed employment agreements or contracts with its employees

- The Plaintiffs did not have any signed non-competition and non-solicitation agreements with its employees

- The Defendants had preceding consent from the former owners for certain financial transactions

- The Plaintiffs entered into a consulting and management agreement with a company that is paid a contingency fee [later, Harvey explains that "Paradigm helped establish the assumptions of the wrongful acts (if any actually exist) and payment of their fees is contingent upon the outcome of this pending case" and Costello failed to account for the magnitude of this issue].

(*Id.* at p. 6). Harvey further opines that Plaintiffs were "negligent in not obtaining the correct forms and not having documents in place to set the stage for future operating expectations, to open up communications with its employees, or to provide for a smooth and clear ownership transition." (*Id.* at 7). Based on these allegations alone (there are no explanations, applications of methodology, or calculations), Harvey summarily concludes that "Mr. Costello grossly overstates his calculated damages (if any exist) and has not provided the court with a practical basis for arriving at a reasonable amount." (*Id.* at p. 7). Harvey does not link any of these opinions to Costello's specific calculations or explain how he can determine the credibility of Paradigm. (*See id.* at pp. 6-7).

3

In the second section, Harvey opines that Costello "fails to provide sufficient support when calculating compensatory damages." (*Id.* at p. 8). Harvey's first argument restates part of the first section—"Costello neglects to ascertain applicable specific agreements, contracts, or policies that the Defendants breached in connection with their duties." (*Id.* at p. 9). Harvey's second argument is also a restatement of part of the first section—"it is my understanding that the prior owners of KT and PTR were fully aware and approved of certain financial transactions taking place[.]" (*Id.* at p. 9). Harvey does not point to any evidence that the prior owners had knowledge or that the transactions were authorized. (*Id.*). Harvey's third argument is that Plaintiffs, who are both corporations, are not entitled to damages that predate Plaintiffs' current owner, Steve Fultz, acquiring 100% of the stock in Plaintiffs—"one would expect ***Mr. Fultz's claim*** to any alleged damages (if any exist) to be limited to the starting date of his ownership[.]" (*Id*. at p. 10) (emphasis added). Harvey's fourth argument is that the categories of improper credit card expenditures are not supported, and that Costello does not have any supporting documentation, all while Harvey fails to provide any supporting documentation. (*Id.* at 11). Finally, Harvey's fifth argument is that a business's officers, rather than its employees, must certify its records to the IRS to criticize Costello's reliance on IRS regulations to support the categories he used to identify unauthorized credit card charges. (*Id.* at p. 12). Harvey does not undertake any independent analysis of Defendants' actions or compensatory damages and does not apply any methodology. (*See id.*).

In the third section, misleadingly titled "Failure to Calculate an Unjust Enrichment that Does Not Result in a Misleading Conclusion," Harvey criticizes Costello's opinion as to Plaintiffs' trade secrets damages. (*Id.* at p. 13). Despite its title, all of Harvey's opinions in this section are devoted to criticism of Costello's (supposed) methodology in calculating Plaintiffs' lost profits:

> A financial expert most often approaches the *lost profit calculation* from one of two perspectives:

> • Calculation of incremental lost revenues and related avoided costs; or
>
> • The difference between the calculation of the net profits that the business would have attained, "but-for" the damaging event, and the financial results that the business actually attained.
>
> In this particular case, it appears Mr. Costello attempts to calculate the alleged unjust enrichment by calculating the *lost gross profit* during the period March 2020 through March 2021.

*(Id.* at pp. 13 (emphasis added), *see also* pp. 14-17).

As noted above, Costello did not offer an opinion on Plaintiffs' lost profits for Defendants' misappropriation of Plaintiffs' trade secrets. (*See* Exhibit A at pp. 11-22, 51). Rather, Costello's opinion on Plaintiffs' trade secrets damages is limited to Defendants' unjust enrichment (and head start)—which Costello computed based on Defendants' ill-gotten profits from their use of Plaintiffs' trade secrets. (*Id.* at pp. 18-19).

That Harvey's opinion in this section is limited to critiquing Costello's alleged lost profits analysis is confirmed by his arguments. Harvey opines that Costello's "calculation of alleged unjust enrichment includes an overstatement for the alleged *lost* revenue [to Plaintiffs]"—rather than revenue unjustly gained by Defendants—explaining that Costello assumes that "every customer that Titan had during this time period would have been a customer of the Plaintiffs if not for the wrongful acts . . . ." (Exhibit B at p. 14). Harvey then opines that Costello "understates the cost of goods sold," taking issue with the fact Costello used Titan's actual costs rather than Plaintiffs' higher costs in calculating Plaintiffs' lost profits. (Exhibit B at p. 15). Harvey next argues that Costello's use of Titan's expenses, rather than Plaintiffs', to compute Titan's profits was an incorrect method to compute Plaintiffs' lost profits. *Id.* at 16. Finally, Harvey opines that Costello should have "adjust[ed] the alleged *lost profits* to a present value using a risk adjusted

5

Case 3:20-cv-00137-TRM-DCP   Document 303   Filed 03/14/22   Page 5 of 19   PageID #: 9148

discount rate[,]" arguing that such calculation takes into account "the uncertainty (i.e. risk) associated with the alleged lost profits." *Id.* at 17 (emphasis added).

In the fourth section, entitled "Failure to Use an Appropriate Lost Profits Methodology," Harvey opines Costello did not use the correct method in computing Plaintiffs' lost profits—the "Before-and-After Method." (*Id.* at 18). Again, Costello did not offer an opinion as to Plaintiffs' lost profits; he instead conducted an analysis of Defendants' unjust enrichment in the form of Defendants' actual profits. (Exhibit A at pp. 18-19).

### III.   STANDARD OF LAW

Federal Rule of Evidence 702 governs the admissibility of testimony by expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588–95 (1993) (providing list of nonexclusive factors for a court to consider). "[T]he Rule 702 inquiry [is] 'a flexible one.'" *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 150 (1999) (internal citations omitted). "*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test'[,]" rather "the gatekeeping inquiry must be 'tied to the facts' of a particular 'case.'" *Id.* (quoting *Daubert*, 509 U.S. at 591–93).

The Sixth Circuit has identified three requirements for admissibility under Rule 702: (1) "the witness must be qualified by knowledge, skill, experience, training, or education"; (2) "the testimony must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue"; and (3) "the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).

As to the second factor, relevance, courts must first determine whether the expert testimony is relevant under Rule 401. *Daubert*, 509 U.S. at 587 (citing Fed. R. Evid. 401). Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. If relevant, the expert testimony also must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). In addition to Rule 401, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id*. at 591–92.

Expert testimony that expresses a legal conclusion is not helpful to the trier of fact and, thus, inadmissible. *Apponi v. Sunshine Biscuits, Inc.*, 908 F.2d 1210, 1218 (6th Cir. 1987). "An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case." *U.S. v.* Melcher, 672 Fed. App'x 547, 552 (6th Cir. 2016). Under Rule 704(a), an expert's testimony may embrace the ultimate issue so long as the testimony does not "invade the province of the court." *Berry v. City of Detroit*, 25 F.3d 1342, 1354-55 (6th Cir.1994) (citing *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). That is, "[w]hen the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issues or that give the jury all the information from which it can draw inferences as to the ultimate issue." *Id.* Courts look to "whether the terms used

by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *U.S. v. Nixon*, 694 F.3d 623, 631 (6th Cir. 2012).

The third requirement, reliability, looks at whether the testimony is based on sufficient facts or data, whether the testimony is the product of reliable principles and methods, and whether the principles and methods used were reliably applied. *In re Scrap Metal*, 527 F.3d at 529 (citing Fed. R. Evid. 702). Under *Daubert*, courts consider four factors for reliability: "Is the technique testable? Has it been subjected to peer review? What is the error rate and are there standards for lowering it? Is the technique generally accepted in the relevant scientific community?" *U.S. v. Gissanter*, 990 F.3d 457, 463 (6th Cir. 2021). Ultimately, an expert opinion must be premised upon "'good grounds,' based on what is known." *In re Scrap Metal*, 527 F.3d at 529. (quoting *Daubert*, 509 U.S. at 595).

Moreover, "a judge assessing a proffer of expert scientific testimony under Rule 702 should also be mindful of other applicable rules," including Rule 403. *Daubert*, 509 U.S. at 595 (citing Rule 403, among other examples). "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. *See, e.g., United States v. Semrau*, 693 F.3d 510, 516 (6th Cir. 2012).

In response to a motion challenging its expert's opinion, the party proffering the expert has the burden to show by a preponderance of the evidence that the expert and her opinion meet the qualification, reliability, and relevance standards of Federal Rule of Evidence 702. See *Daubert*, 509 U.S. at 592; *Decker v. GE Healthcare Inc.,* 770 F.3d 378, 391 (6th Cir. 2014).

8

## IV. ARGUMENT

The Harvey report should be stricken in whole and Harvey's testimony excluded. Sections one and two of Harvey report contain opinions on irrelevant factual disputes, legal theories, and unreliable opinions. Sections three and four are entirely based on a criticism of a lost profits methodology not found in the Costello Report.

### A. Section One of the Harvey Report Should Be Stricken Because It Is Not Relevant or Reliable.

The first section of Harvey's report should be stricken because Harvey's opinion of Plaintiffs' business practices is not relevant or reliable and is unduly prejudicial. In criticizing Costello's report, Harvey offers four improper opinions and/or factual allegations: (1) Plaintiffs did not have signed employment agreements with its employees, (2) Plaintiffs did not have their employees sign non-competition or non-solicitation agreements, (3) Defendants had consent from the former owners for certain financial transactions, and (4) Plaintiffs entered into a consulting agreement that is paid on a contingency fee model. (Exhibit B at p. 6). Ultimately, Harvey opines that Costello's failure to consider these four facts undermines Costello's opinions. (*Id.*).

### a. Harvey is Not Qualified to Offer Certain Opinions in Section One.

As a certified public accountant, Harvey is not qualified to offer an opinion on the credibility of Paradigm or the alleged negligence of Plaintiffs. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528–29. Harvey criticizes Costello for not considering Paradigm is paid on a contingency fee basis: "Mr. Costello fails to mention the magnitude of any potentially overreaching and unsupported accusations made by Paradigm." (Exhibit B at pp. 7). Harvey is an accountant, not a polygraph examiner. If Harvey wants to state the facts about which Paradigm has overreached or not supported, he *might* be qualified to so state, but he cannot opine on Paradigm's credibility.

9

Likewise, Harvey is not qualified to opine that "Plaintiffs and Mr. Fultz were negligent in not obtaining the correct forms and not having documents in place to set the stage for future operating expectations, to open up communications with its employees, or to provide for a smooth and clear ownership transition." (*Id.*). As an accountant offering criticisms of another accountant's model and amount of monetary damages, it is unclear why Harvey offers this opinion. It is plain, however, that Harvey is not qualified to weigh in on Plaintiffs and Mr. Fultz's alleged negligence or how they could have run the businesses better as it relates to employee relations.

### b. Harvey's Opinions in Section One are Not Relevant and are Unduly Prejudicial.

None of the four contentions in section one are relevant. *Daubert*, 509 U.S. at 587 (citing Fed. R. Evid. 401). In making these contentions, Harvey is not offering "scientific, technical, or other specialized knowledge[.]" Fed. R. Civ. P. 702(a). While Defendants may cross-examine Costello and/or Plaintiffs about, for example, the lack of employment agreements or non-competition agreements, Harvey may not offer expert testimony that does nothing more than point out what is obvious within Costello's report. *See Daubert*, 509 U.S. at 591 (testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue") (quoting Fed. R. Evid. 702). Likewise, it does not help the trier of fact to hear Harvey opine on the credibility of Paradigm when that is more properly the subject for cross-examination of Paradigm or Plaintiffs. Similarly, if Defendants had consent from the prior owner of Plaintiffs to steal from Plaintiffs, a layperson can testify about those subjects. *See Grover v. BMW of N. Am., LLC*, No. 1:19-cv-12, 2022 WL 205249, at *6 (N.D. Ohio Jan. 24, 2022) (opinions were not helpful to the factfinder where they "simply represent[ed] his own 'expert gloss' on information from which the factfinder [was] capable of drawing their own conclusions without the need for technical assistance").

Moreover, Harvey's ultimate conclusion that Plaintiffs were "negligent" is an impressible legal conclusion. *See* Fed. R. Civ. P. 704(a); *Berry v. City of Detroit*, 25 F.3d 1342, 1354-55 (6th Cir.1994). Such testimony fails the relevance prong of Rule 702 because it is not helpful to the trier of fact. *Apponi*, 908 F.2d at 1218. Stating that Plaintiffs were negligent is a legal conclusion and should be excluded. "The terms 'negligent' and 'negligence' have a distinct and specialized meaning in the law different from that present in the common vernacular" and opinions on such matters should be excluded under Rules 702 and 704. *Vanderpool v. Edmondson*, No. 1:01-cv-147, 2005 WL 5164857, at *7 (E.D. Tenn. Mar. 23, 2005); *see also Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir. 1994) (expert's testimony that a defendant was "negligent" and his actions "not warranted under the circumstances" and "totally improper" were inadmissible; "we would soon breed a whole new category of 'liability experts' whose function would be to tell the jury what result to reach—which is exactly what the expert did here.").

"In addition to the prohibition on testimony that is nothing more than a legal conclusion, 'an expert cannot simply opine on the credibility of witnesses and the weight of the evidence[.]'" *Crabbs v. Pitts*, No. 2:16-cv-0387, 2018 WL 5262397, at *7 (S.D. Ohio Oct. 23, 2018). Harvey purports to assess the credibility of Paradigm and concludes that Paradigm must have fabricated or exaggerated facts out of self-interest. (Exhibit B at p. 6-7). This is not the subject of expert testimony and should be excluded. *Crabbs*, 2018 WL 526397, at *7 (excluding testimony that weighed credibility; "The deputies involved did not fabricate or conceal evidence in this case."). Cross-examination *might* be proper on this topic, but it is not a topic on which Harvey may opine.

Finally, Harvey's opinions are unduly prejudicial. *See* Fed. R. Evid. 403. While some of the factual statements—*e.g.*, that Plaintiffs' expert did not consider non-competition agreements that do not exist—may be relevant under Rule 401, this testimony is prejudicial coming from an

expert. The only logical reason for including these non-expert opinions within the report is to persuade the jury by *ipse dixit*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"). While these facts may come out through the ordinary course of lay testimony at trial, a jury could be misled into believing that they are dispositive. This is doubly problematic because the law does not require employment agreements or non-competition or non-solicitation agreements for Plaintiffs to succeed on their claims. *See Daubert* ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses."). In other words, Harvey's opinions have very little probative value, but they carry great risk of undue prejudice. As such, they should also be excluded under Rule 403.

### c. Harvey's Opinions in Section One are Not Reliable.

Harvey's opinions about Plaintiffs' business practices are not reliable. Harvey does not provide any basis for his opinion as to what agreements Plaintiffs should have entered. Nor does Harvey cite any materials in his report indicating he had any understanding of Plaintiffs' business that allowed him to assert such broad opinions. (Exhibit B. at p. 20). In other words, there is nothing in Harvey's report to indicate that his testimony is based on sufficient facts or data, is the product of reliable principles and methods, and a reliable application of those principles and methods to the facts or data. *See In re Scrap Metal*, 527 F.3d at 529 (citing Fed. R. Evid. 702).

### B. Section Two of Harvey's Report Should Be Stricken Because It Is Not Relevant or Reliable and Is Unduly Prejudicial.

In section two, Harvey opines that Costello "fails to provide sufficient support when calculating compensatory damages." (*Id.* at p. 8). He reaches that opinion based on five other

inadmissible opinions: (1) "Costello neglects to ascertain applicable specific agreements, contracts, or policies that the Defendants breached in connection with their duties," which Plaintiffs addressed *supra* Sec. A; (2) "it is my understanding that the prior owners of KT and PTR were fully aware and approved of certain financial transactions taking place"; (3) Plaintiffs, who are both corporations, are not entitled to damages that predate Plaintiffs' current owner, Steve Fultz, acquiring 100% of the stock in Plaintiffs; (4) the categories of improper credit card expenditures are not supported; and (5) a business's officers, rather than its employees, must certify its records to the IRS.

### a. Harvey is Not Qualified to Offer Certain Opinions in Section Two.

Harvey, a certified public accountant, is not qualified to offer an opinion on the legal effect of Plaintiffs' change in ownership. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 528–29. Harvey challenges Costello's calculation of impermissible credit card benefits by alleging that it extends too far back in time: "one would expect Mr. Fultz's claim to any alleged damages (if any exist) to be limited to the starting date of his ownership since only the prior owners were affected by these prior transactions." (Exhibit B at p. 10). Harvey has no demonstrated education, training, or experience regarding the effect of Plaintiffs' change in ownership. (*Id.* at pp. 2, 21-25). As such, Harvey should be excluded from offering any opinions regarding the change in ownership, "Mr. Fultz's claim to any alleged damages[,]" or any other opinion on page 10 of the report.

### b. Harvey's Opinions in Section Two are Not Relevant and are Unduly Prejudicial.

Harvey's opinions in section two are not relevant. *Daubert*, 509 U.S. at 587 (citing Fed. R. Evid. 401). Harvey opines that "it is [his] understanding that the prior owners of KT and PTR were fully aware and approved of certain financial transactions taking place[.]" (Exhibit B at p. 9). As a result, Harvey faults Costello for not providing any support to show that Defendants violated

company policies when taking improper benefits. (*Id.*). Harvey again fails to understand Costello's report. While Costello discusses the impropriety of the benefits certain Defendants received, he states them as assumptions on which his opinions are based. (*See* Exhibit A at pp. 7-10). Whether or not Defendants had permission is irrelevant to the experts' testimony. Either Plaintiffs can prove the predicate, in which case the value of the improper benefits is relevant, or Plaintiffs cannot, in which case the value of the improper benefits is irrelevant. Harvey's opinion regarding Defendants' permission (thus his overall opinion in section two) is not helpful to the trier of fact and should be excluded. Fed. R. Civ. P. 702(a); *see also Grover*, 2022 WL 205249, at *6.

Harvey's opinion regarding the ownership of Plaintiffs is an impermissible legal conclusion. *See* Fed. R. Civ. P. 702(a), 704(a); *Berry*, 25 F.3d at 1354-55; *Apponi*, 908 F.2d at 1218. Harvey criticizes Costello for adding compensatory damages from "several years of activity that date prior to Mr. Fultz's acquisition" of Plaintiffs. (Exhibit B at p. 10). Harvey concludes that prior to Fultz's purchase of Plaintiffs "only the prior owners were affected by these prior transactions[.]" (*Id.*). Harvey is opining on the legal effect of the transfer of ownership and Plaintiffs' standing, both of which are legal conclusions. *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 191 (S.D.N.Y. 2006). In *Celebrity Cruises*, the Court excluded nearly identical opinions as impermissible legal conclusions. *Id.* The expert discussed the change in ownership, that "[a]ny loss in enterprise value caused by the incident was not realized until these entities sold their interest to RCCL," and "that any award for lost enterprise value in this case would be a windfall to RCCL as the current owner of Celebrity." *Id.* "This determination is, in effect, an

opinion about Celebrity's legal standing, and as such is beyond the province of a financial expert" and "a legal conclusion[.]" *Id.* Harvey's legal conclusion on standing should be excluded.[1]

### c. Harvey's Opinions in Section Two are Not Reliable.

Harvey's opinions about Plaintiffs' business practices are not reliable. As discussed above, Costello did not opine on certain predicate issues regarding whether Defendants had permission to receive the alleged improper benefits, and his testimony on that issue will only be relevant should Plaintiffs prove those predicate issues. Nonetheless, Harvey criticizes Costello for not weighing in on these predicate issues—"Mr. Costello has not determined with *reasonable* certainty these alleged damages exist especially considering the Plaintiffs have the burden of proof."[2] (Exhibit B at p. 11). It is neither experts' obligation to opine on such predicate issues. Thus, Harvey's opinions in section two are not based on sufficient facts or data, are the product of reliable principles and methods, and not a reliable application of those principles and methods to the facts or data. *See In re Scrap Metal*, 527 F.3d at 529 (citing Fed. R. Evid. 702).

### C. Sections Three and Four of the Harvey Report Should Be Stricken Because They Are Not Relevant or Reliable and are Unduly Prejudicial.

Sections three and four of the Harvey report should be stricken because they are not relevant or reliable and are otherwise prejudicial. These sections are entirely focused on criticizing Costello's methodology in applying a lost profits analysis, but Costello offered an unjust enrichment analysis based on Defendants' ill-gotten gains.

---

[1] The opinions discussed within Sec. B(b) are irrelevant and unduly prejudicial. The analysis is the same as the opinions discussed supra Sec. A(b) and should also be excluded under Rule 403.

[2] This is also an impermissible legal conclusion. *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 125503, at *2 (E.D. Tex. Jan. 9, 2016) ("The Court—not Dr. Beckmann or any other expert—will instruct the jury on issues of law including the burdens of proof.").

### a. Costello's Damages Opinion as to Defendants' Misappropriation of Plaintiffs' Trade Secrets is Premised On His Analysis of Defendants' Unjust Enrichment, Not Plaintiffs' Lost Profits.

Both the DTSA and TUTSA provide that trade secrets damages include compensatory damages, such as a Plaintiffs' lost profits, _and_ Defendants' unjust enrichment. *See* Tenn. Code Ann. § 47-25-1704(a) ("[A] complainant is entitled to recover damages for misappropriation. . . Damages can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss"); 18 U.S. Code § 1836(b)(3)(B)(i)(II) "[A] court may award damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss."). Both compensatory damages and unjust enrichment damages are available because "[d]amages in trade secrets cases are difficult to calculate, because the offending company has mixed the profits and savings from increased quality and quantity of products, as well as savings from reduced research costs of research and production, with its own natural profits." *NexPay, Inc. v. Comdata Network, Inc.*, No. 3:14-CV-01749, 2017 WL 4467476, at *3 (M.D. Tenn. Oct. 6, 2017) (citing *Avery Dennison* Corp., 45 Fed.Appx. at 485). Thus, "[w]hen the misappropriated trade secret is used to field competing products, the best measure of damages is the plaintiff's lost profits _or_ the defendant's illicit gains." *Id.* (emphasis added).

Harvey misapprehends both the law and the Costello report, wrongly criticizing Costello for his methodology in performing a lost profits calculation. (*See* Exhibit B at pp. 13-18). In accordance with the DTSA, TUTSA, and precedent, Costello offered an opinion as to Plaintiffs' damages based upon Defendants' unjust enrichment—not Plaintiffs' lost profits (which Plaintiffs would also be entitled to under the law to the extent they do not overlap with the unjust enrichment damages). (Exhibit A at pp. 11-23); *see* Tenn. Code Ann. § 47-25-1704(a); 18 U.S.C. § 1839(b)(3)(B); *Hamilton–Ryker Group, LLC v. Keymon*, No. W2008–00936–COA–R3–CV, 2010

WL 323057, at *1 (Tenn. Ct. App. Jan. 28, 2010) ("under the Trade Secrets Act, the damages recoverable for the misappropriation of a trade secret 'can include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss'") (quoting the TUTSA). As the District Court in *NexPay, Inc. v. Comdata Network, Inc.* explained, "the relevant measure of damages under the unjust enrichment provision of the Tennessee statute is a profit percentage of the gross amount [the defendant] obtained from clients 'by virtue of' a misappropriated [the alleged trade secret]." No. 3:14-CV-01749, 2017 WL 4467476, at *4 (M.D. Tenn. Oct. 6, 2017). This is *exactly* the methodology employed by Costello to support his opinion as to Defendants' unjust enrichment from their use of Plaintiffs' trade secrets. (Exhibit B at pp. 11-23).

### b. Harvey's Opinion in Sections Three and Four Are Not Relevant and Are Unduly Prejudicial

Harvey's opinions in sections three and four are not relevant under Rule 401 because Harvey's opinion is limited to criticizing a methodology not found in the Costello report or otherwise offered by Costello. *See* Fed. R. Evid. 401 ([e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action). Such opinions are also not relevant under Rule 702 because criticisms of a nonexistent methodology and opinion will not "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702). As the Court in *Daubert* explained, "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* at 591 (citations omitted). Harvey's criticism of a lost profits methodology that was not undertaken do not relate to any issues in the case and is thus not helpful.

Moreover, Harvey's opinions in sections three and four are unduly prejudicial under Rule 403 because they will only confuse the issues and mislead the jury. Simply put, opinions premised entirely on criticizing another expert for purported issues in a methodology they never employed, to the extent it has any evidentiary value, is the definition of confusing. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595. In other words, Harvey's opinions in sections three and four have very little probative value, but they carry great risk of undue prejudice. As such, they should also be excluded under Rule 403.

### c. Harvey's Opinion in Sections Three and Four Are Not Reliable

Harvey's opinions in section three and four are not reliable because they are premised entirely on a misunderstanding of Costello's methodology and of the law that expressly allows for unjust enrichment damages in trade secrets cases. To be reliable, an expert opinion must "rest[] upon a reliable foundation, as opposed to, say, unsupported speculation." *Daubert* at 529–30.

### CONCLUSION

Plaintiffs respectfully request that this Court strike Michael T. Harvey's expert rebuttal report in full, and exclude his opinion testimony in full or, in the alternative, strike inadmissible portions of the report and limit his testimony consistent with the stricken portions

Dated: March 14, 2022                      Respectfully submitted,

                              /s/ Jimmy G. Carter, Jr.
                              Shelley S. Breeding, BPR# 024330
                              Matthew Olinzock, BPR# 037948
                              Jimmy G. Carter, Jr., BPR # 032026
                              Adam R. Duggan, BPR# 035121
                              800 S. Gay Street Suite 1200
                              Knoxville, Tennessee 37929
                              Phone (865) 670-8535
                              *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

                              /s/ Jimmy G. Carter, Jr.
                              Jimmy G. Carter, Jr., BPR # 032026