# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

| | | |
|---|---|---|
| KNOX TRAILERS, INC., and POST TRAILER REPAIRS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:20-CV-137-TRM-DCP |
| JEFF CLARK, et al., | ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel the Discovery Responses of Defendants Amy Clark, Jeff Clark, and Paul Henegar ("Motion to Compel") [Doc. 204]. The Motion is ripe for adjudication. Accordingly, for the reasons explained below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion [**Doc. 204**].

Plaintiffs' Motion alleges many deficiencies with respect to the discovery responses of Defendants Jeff Clark, Amy Clark, and Paul Henegar (collectively, "Defendants").[1] Plaintiffs primarily assert that Defendants have not sufficiently responded to their interrogatories and

---

[1] The Court notes that the parties could have attempted to resolve many of these issues without seeking court intervention. Plaintiffs served these discovery requests in May 2020, and Defendants responded in July 2020. Over a year later, on November 2, 2021, Plaintiffs' counsel sent a letter explaining all the alleged deficiencies, threatened motions and sanctions, and provided Defendants a two-week deadline to comply. [Doc. 204-4]. In response, Defendants agreed to supplement a few discovery requests. [Doc. 204-5]. These letters do not constitute a meaningful meet and confer, and the Court is confident that had the parties engaged in substantive discussions regarding the relevant issues, they could have agreed to appropriate parameters on the requested discovery.

requests for production. As stated in the Court's previous Memorandum and Order, Federal Rule

of Civil Procedure 26 governs discovery. Specifically, Rule 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Courts have explained that the "scope of discovery under the Federal Rules of Civil

Procedure is traditionally quite broad." *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D.

240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir.

1998)). Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties

must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims."

*Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1

(E.D. Ky. Apr. 14, 2016). "[T]he [C]ourt retains the final discretion to determine whether a

discovery request is broad or oppressive." *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d

288, 305 (6th Cir. 2007)). Further, Rule 26(b)(2)(C)(i) provides as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

With respect to requests for production, Rule 34(b)(2)(E) states that a party "must produce

documents as they are kept in the usual course of business or must organize and label them to

correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Further, "a[n] objection

must state whether any responsive materials are being withheld on the basis of that objection."

Fed. R. Civ. P. 34(b)(2)(C).

The Court will address the issues in the order in which they appear in the parties' briefs, unless otherwise noted.[2]

### 1. Supplementation

Plaintiffs state that the Defendants agreed to supplement their responses to two interrogatories: (1) the identity of persons with knowledge, and (2) the identity of those Defendants who kept Plaintiffs' customer information after they no longer worked for Plaintiffs. Plaintiffs argue that Defendants have yet to supplement despite their agreement to do so. *See* [Doc. 204-5]. Defendants respond that to the extent the information exists, they will supplement as they previously agreed.

In light of Defendants' agreement to supplement, if they have not already done so, the Court **ORDERS** Jeff Clark and Amy Clark to supplement their responses to Interrogatory Nos. 2 and 21 and Paul Henegar to supplement his responses to Interrogatory Nos. 2 and 24 **within fourteen (14) days** of this Memorandum and Order.

### 2. Communications

Plaintiffs state that they requested four categories of communications: (1) communications between co-Defendants, (2) communications with Plaintiffs' customers, (3) communications with the customers of Titan Trailer Repairs & Sales Inc. ("Titan Trailer"), and (4) communications regarding the business dealings of Titan Trailer. Plaintiffs state that in response, Amy Clark produced six (6) pages of communications, while Jeff Clark and Paul Henegar produced no communications. Plaintiffs state that other than boilerplate objections, Defendants' only other objection is that some of the requested communications occurred after they were no longer

---

[2] For ease of reference, the Court will refer to Plaintiffs' Request for Production of Documents as "RFP."

employed by Plaintiffs (*i.e.*, March 9, 2020). Plaintiffs state that Defendants' tortious conduct did not end on March 9, 2020, making later communications relevant. Further, Plaintiffs state that Defendants have failed to explain why they have not produced documents before March 9, 2020. Defendants respond that the requested communications are not discoverable because they are irrelevant, overly broad, and not proportional to the needs of the case.

The parties also filed supplemental briefs [Docs. 250, 257] that the Court has considered. In Plaintiffs' supplemental brief, they assert that no defendant has produced a single communication between Billy Maples and Jeff Clark Billy Maples and Paul Henegar; or Billy Maples and Roy Bailey. Plaintiffs assert that for the time at depositions, some Defendants claimed that the communications were subject to a joint defense doctrine. Plaintiffs request that the Court compel Defendants to produce post-March 2020 communications.

Defendants respond that they have never claimed that there were no communications between Defendants after March 2020. Defendants state that instead, they have asserted, and continue to assert here, that these conversations are not discoverable because they are irrelevant, overly broad, and not proportional to the needs of the case. Defendants further assert that they are protected by the attorney-client privilege, and they incorporate Billy Maples and Titan Trailer's response to the supplemental brief.

The discovery at issue provides as follows:

> **RFP No. 1 (All Defendants):** Please produce any correspondence exchanged by and between you and the other listed Defendants relating to Titan Trailer[].

> **RFP No. 2 (All Defendants):** Please produce any and all correspondence exchanged between you and current or former customers of Plaintiffs' relating to Titan Trailer[].

>**RFP No. 3 (All Defendants):** Please produce any and all correspondence exchanged between you and all Titan Trailer['s] customers.
>
>**RFP No. 4 (All Defendants):** Please produce any and all documentation regarding Titan Trailer[']s business dealings. (Plaintiffs have agreed to limit this discovery request to communications with customers, documents that reference Plaintiffs, and documents related to Titan Trailer's software or customer relationship software, to the extent with the possession, custody, or control of the Defendants). [Doc. 204 at 4].
>
>**RFP Nos. 10 and 12 (Amy Clark and Paul Henegar respectively):** Please produce your personal email records from the past four (4) years for any emails to or from any employees or owners of Plaintiffs, employees, or owners of Titan Trailer[']s, and any and all customers of Plaintiffs or Defendants.

As the Court has previously explained, the Court disagrees with Defendants' general objection that communications after March 2020 are irrelevant. The Court has reviewed the discovery requests, however, and finds that several of them are overly broad. For instance, with respect to RFP No. 3 (all Defendants) and RFP Nos. 10 and 12 (Amy Clark and Paul Henegar, respectively), they are not limited in subject matter or temporal scope. With respect to RFP Nos. 1 and 2, they are somewhat limited to correspondence relating to Titan Trailer, but the Court finds this limitation is not enough. Correspondence that simply relates to Titan Trailer does not make such correspondence relevant to the issues in this case.

With respect to RFP No. 4, it is not entirely clear what "business dealings" means. Plaintiffs, however, have limited this request. The Court finds Plaintiffs' limitations acceptable, except communications with customers as Plaintiffs do not limit communications with customers to a particular subject matter. Accordingly, the Court **ORDERS** Defendants to supplement their response **within fourteen (14) days** of this Memorandum and Order to RFP No. 4 and provide any business records that reference Plaintiffs and documents related to Titan Trailer's software or

customer relationship software that they may possess. If they do not have any documents, they shall so state.

### 3. Financial Account Information

Plaintiffs have requested several documents related to Defendants' financial accounts, including (1) tax returns, which includes attachments, schedules, W-2s, and so forth, and (2) personal bank statements from the last four (4) years. Plaintiffs state that these documents will show when Defendants began their tortious conduct. Specifically, Plaintiffs state that the bank statements will show when Defendants began being paid as Titan Trailer employees, which is important because it indicates the date that they started breaching their fiduciary duties. Plaintiffs state that the requested financial account information is also necessary for punitive damages. Finally, Plaintiffs state that Paul Henegar was engaged in a side business, and he has refused to answer how much money he made from this business.

Defendants assert that the requested financial information is irrelevant and not proportional to the needs of the case. Defendants state that they have already responded to interrogatories relating to when they began working for Titan Trailer, and Plaintiffs have not demonstrated any reason to dispute the veracity of Defendants' responses. Defendants argue that Plaintiffs have not alleged compensation by Titan Trailer as support for their breach of fiduciary duty allegations against Defendants, and therefore, financial information is not relevant. Further, Defendants claim that Plaintiffs have not demonstrated that they will be entitled to punitive damages from Defendants. Defendants urge the Court to require a prima facie showing of punitive damages before requiring disclosures in this case given that Defendants are only marginal players in this lawsuit. Defendants argue that even if the Court determines that the information is relevant and proportional to the needs of this case, Plaintiffs' request is overboard, because for purposes of punitive damages, only current net worth is relevant.

6

Finally, with respect to Paul Henegar's side business, Defendants state that Paul Henegar has already stated that it is unknown how much money he received directly from Plaintiffs' customers. Defendants add that the discovery Plaintiffs seek is not likely to reveal such information. Defendants further state that a party's income tax returns are not normally discoverable unless the requesting party has exhausted other alternatives for obtaining the information. Defendants argue that while Plaintiffs claim that they need Paul Henegar's financial information to determine the amount he made from his side business, Plaintiffs have already produced invoices and estimates related to the side business, which Plaintiffs used to calculate damages.

Plaintiffs reply that Defendants breached their duties long before Titan Trailer formally employed them. Plaintiffs state that, for example, Amy Clark assisted Billy Maples in securing customers and employee benefits for Titan Trailer employees before she was formally employed. Plaintiffs state that Defendants have refused to produce communications, employment documents, and now financial information. Plaintiffs assert that the Court has not required a prima facie showing for punitive damages. Plaintiffs argue that if they successfully prove entitlement to punitive damages, the trial on the actual amount would have to be delayed because the account information was not provided.

Specifically, the discovery at issue states: (1) Please produce your tax returns for the last four (4) years, including any and all attachments, schedules, W-2s, K-ls, etc; and (2) Please produce any and all of your personal bank statements from the last four (4) years. With respect to the personal bank statements, the Court considered a similar request served on Amanda Maples. As stated in the Court's previous Memorandum and Order, it is unclear why Plaintiffs need banks statements from 2016 to 2020. Accordingly, the Court finds that Defendants **SHALL** produce

their bank statements from September 2019 (*i.e.*, six months before Titan Trailer began operating) to April 2020 (*i.e.*, the month after they left Plaintiffs' employment). The Court finds the remaining bank statements not relevant or proportional to the needs of this case. Further, the Court does not find the previous bank statements relevant to punitive damages given that the scope of discovery as it relates to punitive damages is limited to a defendant's current financial condition. *Westbrook v. Charlie Sciara & Son Produce Co.*, No. 07-2657 MA/P, 2008 WL 839745, at *3 (W.D. Tenn. Mar. 27, 2008) ("[T]he scope of discovery should be limited to the defendant's current financial condition and net worth.") *aff'd,* No. 07-2657, 2008 WL 11417501 (W.D. Tenn. Dec. 9, 2008). With respect to the tax returns for the last four years, the Court finds them irrelevant for similar reasons.

With respect to Paul Henegar, however, Plaintiffs state that he engaged in a side business during his employment with Plaintiffs, which diverted revenue away from Plaintiffs. Plaintiffs have inquired as to how much money Paul Henegar made from this side business, and Paul Henegar has responded, "unknown." *See* [Doc. 204-3 at 8] (response to Interrogatory No. 19). In light of this allegation and Paul Henegar not being able to respond to the interrogatory, the Court finds that his tax returns for the last four (4) years are relevant and proportional to the needs of this case, and the Court **ORDERS** Paul Henegar to respond to RFP No. 9 within **fourteen (14) days** of this Memorandum and Order.

### 4. Amy Clark's Phone Records

Plaintiffs request that Amy Clark produce her personal cell phone records for the last four (4) years. Plaintiffs state that instead of producing documents, Amy Clark made boilerplate objections, which is tantamount to filing no objections at all. Plaintiffs state that these call logs and communications would provide crucial information regarding her involvement in the conspiracy to steal Plaintiffs' information and trade secrets and to unfairly compete. Further,

8

Plaintiffs state that these logs and communications would reveal whether Amy Clark contacted Plaintiffs' customers after Plaintiffs no longer employed her and whether she employed improper means or motives. Plaintiffs assert that these communications could be the subject of a tortious interference claim.

Defendants claim that Plaintiffs' discovery request served on Amy Clark amounts to a fishing expedition. Defendants assert that Amy Clark's personal cell phone records are irrelevant to the claims against her. Defendants state that while Plaintiffs argue that Amy Clark contacted Plaintiffs' customers, Plaintiffs have affirmatively stated that they are not claiming Amy Clark unlawful solicited Plaintiffs' customers while she was still in their employ. Defendants assert that Plaintiffs' hope that they will find relevant evidence constitutes a fishing expedition. Further, Defendants state that Amy Clark has already produced correspondence between her and the other Defendants and has already stated that she does not have any communications with Plaintiffs' clients or Titan Trailer's clients. Finally, Defendants assert that the request for personal cell phone records from the last four (4) years is overly broad and not proportional to the needs of the case.

Plaintiffs maintain that Amy Clark's personal cell phone records will show when she began harming Plaintiffs and the extent of the harm. Plaintiffs state that the few communications that exist show that Billy Maples and Amy Clark repeatedly referenced quitting their jobs with Knox Trailers, Inc. ("Knox Trailers"), starting at Titan Trailer, and taking Knox Trailers' customers to Titan Trailer. Plaintiffs state that despite these communications, Billy Maples refused to acknowledge in his deposition that he was referring to Titan Trailer, that he asked Amy Clark to leave Knox Trailers with him, and that he and Amy Clark had asked customers to leave Knox Trailers as well. Plaintiffs state that a complete examination of Amy Clark's phone logs and communications is necessary to uncover her tortious activity. Plaintiffs state that notwithstanding

Amy Clark's argument that Plaintiffs do not seek to hold her liable for tortious interference, Plaintiffs do claim that she assisted Billy Maples in his formation of Titan Trailer, which supports a claim for breach of fiduciary duty. Plaintiffs believe that Amy Clark's phone records will recover information that also sheds light on Billy Maples's tortious conduct. Plaintiffs maintain that the records are relevant and proportional to the needs of the case and states that Defendants have not shown otherwise.

Specifically, the discovery request at issue and the response thereto state as follows:

> **RFP No. 9:** Please produce your personal cell phone records from the last four (4) years.

> **Response:** Defendant objects to this Request because it is overly broad, unduly burdensome and seeks information that is neither relevant nor proportional to the needs of the case and is intended solely for the purpose of harassment and oppression**.**

The Court agrees that boilerplate objections are generally unacceptable. *See Neale v. Coloplast Corp.*, No. 118CV00274TRMSKL, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 2, 2020) ("The court strongly condemns the practice of asserting boilerplate objections to every discovery request.") (quoting *Carfagno v. Jackson Nat'l Life Ins. Co.*, 2001 WL 34059032 at *4 (W.D. Mich. Feb. 13, 2001)). The discovery request here, however, appears overly broad on its face. Although not entirely clear from the discovery request, it appears from Plaintiffs' motion that they seek call logs and communications from Amy Clark's personal cell phone without any limitations as to the subject matter. *Burrell v. Duhon*, No. 518CV00141TBRLLK, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019) ("A discovery request for otherwise relevant documents may be too broad or otherwise overly burdensome when it applies to a generally broad category or group of documents or a broad range of information."). Accordingly, the Court finds RFP No. 9 overly broad and not proportional to the needs of the case, and the Court declines to order Amy Clark to supplement her response.

## 5.    Documents Relating to Employment

Plaintiffs assert that Defendants have refused to produce documentation regarding their employment at Titan Trailer. Plaintiffs state that they originally requested production of "any and all documentation regarding their employment at Titan Trailer[]." [Doc. 204 at 6]. Plaintiffs assert that after Defendants objected, Plaintiffs clarified that they are only seeking the following documents: employee contracts, initial hiring paperwork, pay stubs, member draws, bonus plans, and the employee handbook. Plaintiffs state Defendants claim that these documents are Titan Trailer's records, but Defendants' contention is misplaced. Plaintiffs assert that if Defendants maintained copies of these documents, the copies belong to Defendants and must be produced.

Defendants state that they should not be compelled to produce these documents because it would be more convenient for Plaintiffs to obtain them from Titan Trailer, citing to Rule 26(b)(2)(C)(i). Defendants state that given that Titan Trailer is a party to this lawsuit, Plaintiffs could readily seek this information from Titan Trailer.

Plaintiffs reply that their request for documents is not burdensome for these Defendants to produce. Plaintiffs that they have requested such documents from Titan Trailer, and Titan Trailer has failed to produce them.

As mentioned above, Defendants cite to Rule 26(b)(C)(i), arguing that it is more convenient for Plaintiffs to obtain these records from Titan Trailer. Rule 26(b)(C)(i) provides as follows:

> (C) When required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

Generally, it is more convenient for the employer to retrieve such documents. In this case, however, it appears Defendants currently work for Titan Trailer, and they only submit conclusory

arguments that it is more convenient for Titan Trailer to produce such documents. Accordingly, the Court **ORDERS** Defendants to supplement their responses to RFP No. 6, as modified, **within fourteen (14) days** of this Memorandum and Order.

### 6. Defendants' Responses to Discovery

Plaintiffs state that they served Defendants with interrogatories to narrow the issues and shorten many scheduled depositions. Plaintiffs state that Defendants' responses are so vague and incomplete as to be useless, requiring follow-up questions and prolongation of depositions and discovery. Plaintiffs provide a list of interrogatories along with the responses that they allege are not complete. Defendants state that they adequately responded to each interrogatory to the extent required by the Federal Rules. The parties have addressed Defendants' responses separately, and the Court will follow suit. The Court will begin with Amy Clark's responses.

### (i) Amy Clark

Plaintiffs argue that Amy Clark did not respond to five (5) interrogatories. The Court will address the parties' arguments as to each interrogatory as follows.

> **Interrogatory No. 15:** Please state how long you knew of the plans of Titan Trailer[] becoming a business.
>
> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, Defendant learned that Billy Maples was considering opening his own business in late January/early February 2020.

Plaintiffs state that Amy Clark has given different dates when she first became aware that Titan Trailer would open. Plaintiffs state that they want a clear answer of when she first learned about Titan Trailer.

Defendants respond that Plaintiffs do not explain which interrogatory response they find contradictory to Amy Clark's response to Interrogatory No. 15, but Defendants believe Plaintiffs

12

are referring to Interrogatory No. 6. Defendants state that it is reasonable for Amy Clark to have answered these interrogatories differently.

In the present matter, Plaintiffs do not explain what response is contradictory to Amy Clark's response to Interrogatory No. 15. Defendants state that they believe Plaintiffs are referring to Interrogatory No. 6. Specifically, Interrogatory No. 6 requests and Amy Clark responded as follows:

> **Interrogatory No. 6**: Please describe, in detail, how you learned about Titan Trailer[]Repairs & Sales, LLC ("Titan Trailer[]"), and the approximate date that you first heard about Titan Trailer[].
>
> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, Defendant first learned about Titan Trailer[]at some point in February 2020 from Billy Maples.

The Court will not order supplementation of these interrogatory responses. Interrogatory No. 15 asks when Amy Clark knew of the plans of Titan Trailer becoming a business, while Interrogatory No. 6 asks when Amy Clark learned of Train Trailer. To the former interrogatory, Amy Clark responds late January/early February 2020 and to the latter, she states February 2020. The Court finds that Amy Clark had sufficiently responded.

The next dispute relates to Amy Clark's response to Interrogatory No. 19, as follows:

> **Interrogatory No. 19:** Please state how the Plaintiffs', while you were within their employ, maintained business records. This response should include, but is not limited to, your knowledge and your use of any and all software programs, database programs or systems, formulas (generic and custom), CSM applications, etc.
>
> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, the records maintained by Defendant on behalf of Knox Trailers were kept in filing cabinets and on software programs. Knox Trailer's employees also used e-mail as a way to conduct business. Old files were maintained in the upstairs of the office.

Plaintiffs state that Amy Clark's response is overly vague and simplistic. Defendants argue that Amy Clark responded to the interrogatory.

The Court finds Amy Clark's response to this interrogatory is deficient in that she did not provide her knowledge and use of software programs. Accordingly, the Court **ORDERS** Amy Clark to supplement her response **within fourteen (14) days** of the Memorandum and Order.

The next dispute relates to Amy Clark's response to Interrogatory No. 20, as follows:

> **Interrogatory No. 20**. Please state how Defendants, while you were within their employ or have personally witnessed either verbally or visually, maintained business records. This response should include, but is not limited to, your knowledge and your use of any and all software programs, database programs or systems, formulas (generic and custom), CSM applications, etc.
>
> **Response**: Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, see Defendant's Response to Interrogatory No. 19.

Plaintiffs argue that Interrogatory No. 19 refers to when Amy Clark was employed by Plaintiffs, but this interrogatory refers to when she was employed by Defendants. Defendants assert that Amy Clark sufficiently responded and that it is unclear how learning the minute details of how Titan Trailer maintained its records is necessary for Plaintiffs to target future discovery requests.

The Court finds that Amy Clark has not sufficiently responded to this interrogatory. Rule 33(b)(3) requests a party to answer each interrogatory "separately and fully." Fed. R. Civ. P. 33(b)(3). It is improper to respond to an interrogatory by referring to an answer to another interrogatory. *Advantage Industrial Sys., LLC v. Aleris Rolled Prod., Inc.* No. 418CV00113JHMHBB, 2020 WL 4432415, at *12 (W.D. Ky. July 31, 2020) ("Because Rule 33(b)(3) requires a party to answer each interrogatory "separately and fully," it is technically

14

improper and unresponsive for AIS to answer Interrogatory No. 6 by referring to its answer to Interrogatory No. 2."). Given the allegations in this case, including Plaintiffs' allegation that Defendants took Plaintiffs' property, the Court finds this information relevant and proportional to the needs of this case. Accordingly, the Court **ORDERS** Amy Clark to supplement her response to Interrogatory No. 20 **within fourteen (14) days** of the Memorandum and Order.

Further, the parties dispute Amy Clark's response to Interrogatory No. 23, as follows:

> **Interrogatory No. 23**. Please state with complete detail and specificity, your knowledge of the procedure that you used to reimburse an employee (Manager or otherwise) for expenses.

> **Response**: Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, those employees that incurred expenses on behalf of Knox Trailers were provided company credit cards. For any employee that incurred expenses on behalf of the company that did not have a company credit card, Defendant would retrieve a receipt from the subject employee and reimburse them with a check or cash for smaller amounts.

Plaintiffs argue that Amy Clark's response fails to state whether she sought permission or authorization before issuing a reimbursement and from whom. Defendants do not respond to this argument. In any event, the Court find the requested information relevant and proportional to the needs of this case. Accordingly, the Court **ORDERS** Amy Clark to supplement her response to Interrogatory No. 23 to explain whether she sought permission or authorization before issuing reimbursements, and if so, from whom **within fourteen (14) days** of this Memorandum and Order.

Further, the parties dispute Amy Clark's response to Interrogatory No. 24, as follows:

> **Interrogatory No. 24:** Please state with complete detail and specificity, your knowledge of the cost for the company health care plan for both employee and company.

> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor

15

> proportional to the needs of the case. Subject to and without waiving said objection, during the time that Defendant worked for Knox Trailers, Knox Trailers would pay 50% of an employee's health insurance premium. Upon information and belief, Knox Trailers would pay a higher percentage of certain employees' health insurance premium.

Plaintiffs argue that Amy Clark has some reason for stating that Knox Trailers paid a higher percentage of certain employees' health insurance premiums or she is lying. Plaintiffs argue that if Amy Clark has some basis, she should be required to answer how she came to believe this, who received these additional benefits, and why. Plaintiffs argue that as the primary administrative employee for Plaintiffs, she should know the answers to these questions. Defendants respond that Amy Clark has fully answered the interrogatory and that Plaintiffs are essentially asking Amy Clark to do further research, which is not required under the Rules. Further, Defendants state that such information is in Plaintiffs' control.

The Amended Complaint in this case alleges that Amy Clark, along with others, directly participated in a scheme to defraud Plaintiffs by causing them to pay inflated health insurance premiums to certain employees. [Doc. 67 at ¶ 57]. Given this allegation, the Court finds Amy Clark's knowledge about the employees' health insurance relevant and proportional to the needs of this case. Accordingly, the Court **ORDERS** Amy Clark to supplement her response to explain (1) the basis for her statement that Knox Trailers paid a higher percentage of certain employees' health insurance premiums and how she came to believe this, and (2) who received this additional benefit and why. The Court **ORDERS** Amy Clark to supplement her response **within fourteen (14) days** of this Memorandum and Order.

### (ii) Jeff Clark

Plaintiffs state that Jeff Clark did not provide sufficient responses to three (3) interrogatories. The Court will address the interrogatories and responses thereto in order.

16

**Interrogatory No. 19.** Please state how the you [sic] maintained business records and reports, for either Plaintiff, including but not limited to, information on customers, how customers made purchases, how parts were serviced, and where the parts came from. This response should include, but is not limited to, your knowledge and your use of any and all software programs, database programs or systems, formulas (generic and custom), CSM applications, etc.

**Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, Defendant's role was to call on potential customers for the sale of parts and potential service work. Defendant's work was primarily performed on a cell phone through the use of e-mail, text messaging, and phone calls.

Plaintiffs argue that Jeff Clark was a primary contact for many of Plaintiffs' customers for years, and no one else would know how he communicated with those customers. Plaintiffs state that Jeff Clark must describe how he communicated with customers and where those communications are stored. Defendants state that Jeff Clark responds how he communicated with customers and where those communications were stored.

The Court finds that Jeff Clark generally responded to this interrogatory, but he was not specific as to what e-email, telephone phone, or cell phone he used. Accordingly, the Court **ORDERS** Jeff Clark to supplement this discovery request to provide what specific email address he used to communicate with customers and what specific telephone or cell phone he used (*i.e.,* personal or Plaintiffs' cell phone or telephone).

The next dispute relates to Jeff Clark's response to Interrogatory No. 20 as follows:

**Interrogatory No. 20:** Please state how Defendants, while you were within their employ or have personally witnessed either verbally or visually, maintained business records. This response should include, but is not limited to, your knowledge and your use of any and all software programs, database programs or systems, formulas (generic and custom), CSM applications, etc.

> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, Defendant would send parts orders to his team and his team would handle the paperwork.

Plaintiffs argue that it is not clear if Jeff Clark has answered accordingly. Plaintiffs state that Jeff Clark does not state how he sent parts orders, where the documents were kept, and who was responsible for the orders. Defendants respond that Jeff Clark makes it clear that he is not aware of how Titan Trailer maintains its business records because he is not the one who handles the paperwork for orders. Accordingly, the Court **ORDERS** Jeff Clark to supplement his response to this interrogatory to explain (1) how he sent parts orders, (2) where documents are kept, if he is aware, and if he is not, he shall so state, and (3) who is responsible for the orders.

**(iii)    Paul Henegar**

Plaintiffs argue that there are six (6) interrogatories that Paul Henegar should supplement. First, the parties dispute whether Paul Henegar has sufficiently responded to Interrogatory No. 7 as follows:

> **Interrogatory No. 7:** Please describe, in detail, your role with Titan Trailer[] and state the amount of time that you have had that role.
>
> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, Defendant is employed as the Equipment Sales Manager for Knox Trailers. Defendant's job duties included the sales of equipment and outside services sales.

Plaintiffs state that the interrogatory requests Paul Henegar's job title and duties at Titan Trailer, but he responded for Plaintiff Knox Trailers. Defendants argue that Paul Henegar was describing his position and job duties at Titan Trailer. Accordingly, given the scrivener's error, the Court **ORDERS** Paul Henegar to correct his response **within fourteen (14) days** of the

Memorandum and Order. In his response, Paul Henegar shall also state the amount of time in that role.

Next, the parties dispute Paul Henegar's response to Interrogatory No. 8, which provides as follows:

> **Interrogatory No. 8:** Please state if you were solicited to work for or at Titan Trailer[] while you were still employed by Plaintiffs.
>
> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, no.

Plaintiffs state that in other responses, Paul Henegar stated that he first learned about Titan Trailer in February 2020, a month before it was opened for business and that other discovery indicates that he was solicited to work at Titan Trailer. Plaintiffs request that Paul Henegar be compelled to tell the truth. Defendants respond that Paul Henegar is not required to reconcile superficial discrepancies in his discovery responses when it is reasonable to provide different responses. In addition, Defendants state that Plaintiffs do not explain what other responses are contradictory to the response above.

The Court will not order Paul Henegar to supplement his response to Interrogatory No. 8. Paul Henegar's response that he first learned about Titan Trailer in February 2020 is not contradictory to his denial that he was solicited to work for Titan Trailer. Further, Plaintiffs do not explain the other responses that are contradictory to Paul Henegar's response to Interrogatory No. 8. Accordingly, the Court will not order Paul Henegar to supplement this interrogatory.

Next, the parties dispute Paul Henegar's response to Interrogatory No. 19 as follows:

> **Interrogatory No. 19:** Please state how much money you received over the past five (5) years, in any form, directly from any customer of either of the Plaintiffs, that you kept for yourself.

**Response**: Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, unknown.

Plaintiffs argue that Paul Henegar can easily determine this information by looking at his bank records and/income tax filings records and that Paul Henagar should be compelled to make a diligent inquiry into his financial information and to supplement accordingly. Defendants respond that if a party cannot respond to an interrogatory, the party should answer accordingly, and that Paul Henegar has responded fully and truthfully. Further, Defendants argue that this interrogatory is burdensome and not proportional to the needs of the case. Defendants state that to compel Paul Henegar to search through his financial records to determine such an answer, even if possible, would be an intensive exercise to the point that this information is not readily accessible. Defendants state that Paul Henegar is a minor actor, and Plaintiffs have produced invoices and estimates that they believe form the basis of their damages as it relates to Paul Henegar and Billy Maples's side business.

The Court does not find it to be too burdensome for Paul Henegar to review his financial records to determine whether he can appropriately respond. Accordingly, the Court **ORDERS** Paul Henegar to review his financial information and provide a response to this interrogatory **within fourteen (14) days** of this Memorandum and Order. If he is still unable to the amount, he **SHALL** so state and list the documents he reviewed in an attempt to obtain a response.

Next, the parties dispute Paul Henegar's response to Interrogatory No. 20 as follows:

**Interrogatory No. 20:** Please state with specificity the procedure of receiving funds from customers of either of the Plaintiffs in exchange for selling used equipment such as box vans, lifts gates, or other used parts.

**Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor

proportional to the needs of the case. Subject to and without waiving said objection, see Response to Interrogatory No. 18.

Plaintiffs state that this interrogatory asks about the procedures in receiving funds for disposing of used equipment. Plaintiffs claim that Paul Henegar's reference to Interrogatory 18 is not sufficient. Defendants state that Paul Henegar's response to Interrogatory No. 20 is appropriate and that he is permitted to reference responses to other interrogatories.

The Court has previously explained that Rule 33(b)(3) requires that each interrogatory be responded to "separately and fully." Fed. R. Civ. P. 33(b)(3); *Advantage Industrial Sys, LLC,* 2020 WL 4432415, at *12. Further, the Court notes that Interrogatory 20 asks about the procedure of receiving funds from Plaintiffs' customers in exchange of selling used equipment, while Interrogatory No. 18 requests the same as it relates to disposing of used equipment. While Paul Henegar's response may be the same, the Court **ORDERS** him to supplement his response to Interrogatory No. 20 separately and fully as required by Rule 33.

Further, the parties dispute Paul Henegar's response to Interrogatory 23 as follows:

> **Interrogatory No. 23**: Please state how Defendants, while you were within their employ or have personally witnessed either verbally or visually, maintained business records. This response should include, but is not limited to, your knowledge and your use of any and all software programs, database programs or systems, formulas (generic and custom), CSM applications, etc.

> **Response:** Defendant objects to this interrogatory because it is overly broad and seeks information that is neither relevant nor proportional to the needs of the case. Subject to and without waiving said objection, see Response to Interrogatory No. 22.

Plaintiffs state that Interrogatory No. 22 asks about Paul Henegar's recordkeeping while employed by Plaintiffs, but Interrogatory No. 23 asks about Paul Henegar's recordkeeping while employed by Titan Trailer. Defendants respond that Paul Henegar's response to Interrogatory No. 23 makes clear that Titan Trailer maintains business records in the same manner that he maintained

21

business records while employed by Plaintiffs. Defendants state that Paul Henegar's response is adequate.

For similar reasons as above, the Court agrees with Plaintiffs. *Advantage Industrial Sys., LLC,* 2020 WL 4432415, at *12. Accordingly, the Court **ORDERS** Paul Henegar to supplement his response to Interrogatory No. 23 **within fourteen (14) days** of this Memorandum and Order.

Finally, the parties dispute Paul Henegar's response to Interrogatory No. 24 as follows:

> **Interrogatory No. 24:** Please state the name of any Defendant(s) who kept customer information belonging to the Plaintiffs after they no longer worked for Plaintiffs.
>
> **Response:** Defendant has no knowledge of any Defendant, including herself, who kept customer information belonging to Knox Trailers after leaving their employment.

Plaintiffs state that Paul Henegar refers to himself as "herself" and that the response is plainly copied from Amy Clark's response. In addition, Plaintiffs state that the response is directly contradictory to the information provided to Plaintiffs by Defendants as set forth in Plaintiffs' expert report. Plaintiffs request that Paul Henegar be ordered to provide a truthful response. Defendants state that Paul Henegar adequately responded.

Here, Plaintiffs do not explain what other information Paul Henegar's response is directly contradictory to other than citing generally to their expert's declaration. Thus, the Court will not order supplementation on this ground. The Court notes, however, that there does appear to be a scrivener's error in Paul Henegar's response. In addition, as explained in section 1 of this Memorandum and Order, Paul Henegar agreed to supplement his response to this interrogatory. *See* [Doc. 204-5 at 2].[3] Accordingly, the Court orders Paul Henegar to supplement his response

---

[3] The scrivener's error is also in defense counsel's letter dated November 23, 2021, to Plaintiffs' counsel. [Doc. 204-5 at 2] ("Paul Henegar Interrogatory No. 24. Mr. Henegar agrees to supplement her response to the extent additional information exists).

to Interrogatory No. 24 **within fourteen (14) days** of this Memorandum and Order in order to correct the scrivener's error.

## III.      CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Compel the Discovery Responses of Defendants Amy Clark, Jeff Clark, and Paul Henegar [**Doc. 204**].

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge