UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KNOX TRAILERS, INC., and POST TRAILER REPAIRS., INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:20-CV-137-TRM-DCP ) |
| JEFF CLARK, et al., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Notice of Filing Regarding Requested Attorneys' Fees Ordered Per Doc. 252 ("Notice") [Doc. 285]. Plaintiffs request a total fee award of $104,832.09, which includes $97,243.75 in attorney's fees and $7,588.34 in expenses [Doc. 287]. Defendants Billy Maples and Titan Trailers Repairs ("Defendants") object to the requested amount [Doc. 393]. Plaintiffs have replied [Doc. 396]. For the reasons explained below, the Court will reduce the requested amount.

**I.   ANALYSIS**

By way of background, on February 18, 2022, the undersigned found that Plaintiffs were entitled to an award of attorney's fees as a discovery sanction [Doc. 252]. Specifically, the Court awarded attorney's fees associated with the preliminary injunction, including the hearing, and the motion for sanctions [*Id.* at 21]. On July 11, 2022, the Chief District Judge entered a Memorandum

and Order ("July 11 Order") [Doc. 422] agreeing with the undersigned's assessment of attorney's fees, thus leaving the only remaining question of the amount.

In making this determination, courts often employ the "lodestar method," which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). The reasonableness of the hours and the rate is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.* at 415–16. The most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 416 (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

As mentioned above, Plaintiffs have requested a total fee award of $104,832.09, which includes $97,243.75 in attorney's fees and $7,588.34 in expenses [Doc. 287 p. 11]. In support of their request, Plaintiffs submitted a spreadsheet titled, "Plaintiffs' Attorneys' Fees and Expenses Associated with Document 252" ("Spreadsheet") [*Id.* at 1]. Defendants argue that Plaintiffs have presented insufficient proof to support their fee request and that the Spreadsheet is full of entries for non-compensable time and indications of overbilling.[1] The Court will address these objections separately.

---

[1] Defendants also requested that the Court postpone ruling on any amount of attorney's fees until the Chief District Judge ruled on the objections. As mentioned above, the Chief District Judge entered his ruling on July 11, 2022 [Doc. 422].

2

## A. Proof

Defendants argue that Plaintiffs have not met their burden of proof with respect to their requested fees. Specifically, Defendants raise issues with the Spreadsheet and the hourly rates that Plaintiffs seek.

### 1. Spreadsheet

Defendants raise the following issues concerning the Spreadsheet submitted by Plaintiffs: it is not sworn to; it contains edited descriptions; the descriptions are generic; and it contains no invoices. Defendants submit that the Spreadsheet would not satisfy the reliability requirements of Rule 1006 of the Federal Rules of Evidence.

Plaintiffs argue that they have satisfied their burden of proving entitlement to the requested fees. Plaintiffs acknowledge that they did not submit a high-level summary of their billing records, but instead, they submitted entries pertaining to the work expended. Plaintiffs contend that the Court can see the work performed, by whom, at what rate, and for how long. Plaintiffs assert that this is all that is required for a lodestar analysis.

The Court has reviewed the Spreadsheet and finds it provides an adequate basis for the undersigned to determine the appropriate lodestar amount. *Compare U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (finding the district court's reliance on a summary that lists the number of hours [plaintiffs'] attorneys worked on various stages of the case, the hourly rate charged for each attorney, and a total amount incurred was not appropriate). The Spreadsheet provides the date that counsel performed the work; the assigned category (i.e., motion for preliminary injunction, reply to the motion for preliminary injunction, hearing on the

3

preliminary injunction, motion for sanctions, and response/reply to the motion for sanctions);[2] the description of the work performed; the timekeeper; the time incurred; the rate; and the total amount charged. *See Anderson v. Wilson,* 357 F. Supp. 2d 991, 999 (E.D. Ky. 2005) (holding that the plaintiffs had satisfied their burden to provide sufficiently detailed billing records where counsel provided the court with "itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on Plaintiffs' case").[3]

Defendants assert that Plaintiffs provided no proof pursuant to the lodestar analysis above. But given the limited sanctions involved (i.e., attorney's fees with respect to the preliminary injunction and the motion for sanctions), the Court finds the Spreadsheet leaves the undersigned well equipped to assess the reasonableness of the attorney's fees requested.

    **2.**     **Rates**

Defendants emphasize that Plaintiffs used seven timekeepers and argue that Plaintiffs have failed to show why using several timekeepers was reasonable. The Court has reviewed the Spreadsheet, and it appears Plaintiffs utilized four attorney and three paralegals, but the Court sees nothing inherently wrong with the number of individuals working on a case, so long as the hours incurred are reasonable and not duplicative. *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) ("Once the prevailing party provides such a record, however, 'conclusory allegations that the award was excessive and that counsel employed poor billing judgment do

---

[2]     Plaintiffs included a key on their Spreadsheet to explain the correlation between the number of the Assigned Category and the work performed as follows: (1) motion for preliminary injunction; (2) response/reply to the motion for preliminary injunction; (3) preliminary injunction hearing; (4) motion for sanctions; and (5) response/reply to the motion for sanctions [Doc. 287 p. 2].

[3]     Defendants also argue that several of the entries are vague, [*see* Doc. 393 p. 6], which the Court will address below.

4

not suffice to establish that there was error, particularly in light of the statements of the district court [explaining the award] and our standard of review.'") (quoting *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991)).

Defendants also argue that Plaintiffs have not supported the hourly rates charged. Defendants argue that three partners are charging the same rate of $325 per hour, which is a "rate that some attorneys in the Knoxville area are able to command, but not many" [Doc. 393 p. 7]. Defendants submit that Attorney Carter has only been practicing for nine years and that his bio states that he has "extensive involvement in the Juvenile court as a Guardian Ad Litem" [Doc. 393 p. 8 (other citation omitted)]. Defendants state that such work is paid at $50 per hour, but now Attorney Carter seeks seven times that amount as his hourly rate. Defendants argue that the other two partners, Attorneys Olinzock and Breeding have practiced longer, 12 and 17 years respectively, but their hourly rate of $325 is also not supported. Defendants submit that Attorney Duggan, who used a rate of $275 per hour, has been licensed to practice law since 2016. Defendants assert that it is too late for Plaintiffs to include such information in a reply brief [Doc. 393 p. 9 (citing *Darnell v. Woodbourne Invs., LLC*, No. 2:17-cv-103-MCLC, 2018 WL 4039287, at *3 (E.D. Tenn. Aug. 23, 2018)].

Plaintiffs respond that their attorneys' hourly rates are well within the average for this market, citing to a Knoxville Bar Association survey [Doc. 396 p. 4 (citation omitted)]. Plaintiffs state that "it is telling" that defense counsel "failed to bring in any evidence of his own billing rates, those of his co-counsel, or those of . . . Defendants' prior counsel, presumably because those rates are higher than Plaintiffs' rates" [*Id.*]. Further, Plaintiffs state that the agreed-upon hourly rate for the mediator was $465, undercutting any argument that $325 is not reasonable.

5

In determining the appropriate hourly rate to apply, the district court must consider the prevailing market rate in the relevant community, which for fee purposes, is the legal community within the Court's territorial jurisdiction or venue. *Brooks v. Invista*, No. 1:05-cv-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citing *Adcock-Ladd v. Sec'y of the Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)). The appropriate or reasonable hourly rate "may not, however, exceed the amount necessary to cause competent legal counsel to perform the work required." *Id*. (citing *Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986), *abrogated on other grounds by*, *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)).

As mentioned above, four attorneys have billed in this case. Attorney Duggan's rate is $275 per hour, and he was licensed in 2016. Attorney Carter's rate is $325, and he graduated LMU Duncan School of Law in 2013. Attorney Olinzock's rate is $325, and he has practiced for twelve years, and Attorney Breeding, who has practiced seventeen years, bills at $325 per hour.

As an initial matter, "neither party submitted supporting declarations of third-party attorneys to detail the reasonableness of the requested hourly rate, a common practice before this Court." *Vanderhoef v. Dixon*, No. 3:16-CV-508-TAV-DCP, 2020 WL 6864543, at *6 (E.D. Tenn. May 4, 2020), *report and recommendation adopted*, No. 3:16-CV-00508-TAV-DCP, 2020 WL 4673464 (E.D. Tenn. Aug. 12, 2020). Even so, it is Plaintiffs' burden to show the requested hourly rates are reasonable. The Court declines to consider the Knoxville Bar Association's survey as Plaintiffs submitted this in a reply brief. *Darnell*, 2018 WL 4039287, at *3 (the court "will not consider issues or evidence raised for the first time in [a] reply") (quoting *Int'l-Matex Tank Terminals-Ill. v. Chem. Bank*, 2009 WL 1651291, *2 (W.D. Mich. June 11, 2009)).[4] Plaintiffs

---

[4] Even if the Court were to consider the Knoxville Bar Association's survey, the undersigned finds it unhelpful because it does not provide any details other than the range of experience and hourly rates charged. It does not provide the Court with details regarding the type of law that the

assert that defense counsel did not submit his hourly rates as evidence, but it is not Defendants' burden to establish reasonableness, and Plaintiffs' comparison to the mediator's fee is not helpful.[5]

In any event, the undersigned is quite familiar with the prevailing rate for attorneys within the Eastern District of Tennessee. *Crozin v. Crown Appraisal Grp., Inc.*, No. 2:10-CV-581, 2012 WL 1186520, at *4 (S.D. Ohio Apr. 6, 2012) ("Arguably, this failure by Defendants was not fatal to their ability to establish a reasonable hourly rate in the prevailing market, as a district court may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment about the reasonable rate."). A district court may look to "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Pro. & Cas. Ins.*, 436 F. App'x 496, 499 (6th Cir. 2011). Given that Plaintiffs did not provide any details regarding their counsels' professional experience, the Court awards the following rates: (1) Attorney Duggan, who received his law license in 2016, $250 per hour; (2) Attorney Carter, who has nine years of experience, $275 per hour; (3) Attorney Olinzock, who has twelve years' experience, $300 per hour; and (4) Attorney Breeding, who has seventeen years of experience, $325 per hour.

---

attorneys are practicing. Further, the survey does not support the rates Plaintiffs' attorneys are requesting. For instance, Attorney Carter's rate is $325 per hour, but the survey states that attorneys with 6–10 years of experience charge more than $251 per hour and some charge more than $276 per hour. It does not state that such attorneys are charging $325 per hour.

[5] Plaintiffs state that Defendants should be precluded from questioning the reasonableness of their counsels' hourly rates because they did not address this issue in the meet and confer process. The Court declines to get involved in the parties' meet and confer process, and as explained above, it is Plaintiffs' burden to establish reasonableness of the rates to the Court. Plaintiffs also contend that Defendants' attacks on their qualifications are belied by the filings in this case and the success Plaintiffs have experienced and assert that if the Court should require affidavits, "counsel is happy to provide such" [Doc. 396 p. 4 n.2]. But, as the party requesting fees, Plaintiffs should have included such information in their opening brief. *See* E.D. Tenn. L.R. 7.1 ("No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be field without prior approval of the Court.").

7

Case 3:20-cv-00137-TRM-DCP   Document 461   Filed 09/21/22   Page 7 of 20   PageID #: 13844

The Court has based these rates on its own experience with determining the appropriate amount of attorney's fees and the passage of time since the below cases were decided. *See Knisley v. Johnson*, No. 3:21-cv-420 [Doc. 24] (E.D. Tenn. Aug. 10, 2022) (in an unjust enrichment case, the court awarded an attorney with fourteen years of experience $300 per hour given that he provided no details regarding his professional experience); *ERMC v. Millertown*, 3:19-cv-407 & 408 [Doc. 75] (E.D. Tenn. Aug. 1, 2022) (attorney who practiced for seven years charged $228.26, $260.60, and $298.90 from 2019 to 2021 in a breach of contract case); *Equal Employment Opportunity Commission v. Dolgencorp, LLC*, No. 3:14-CV-441-TAV-HBG, 2017 WL 9517513, at *5 (E.D. Tenn. Aug. 7, 2017), (recommending $350.00 per hour for a litigator with twenty-four years of experience and $250.00 per hour for an attorney who graduated law school in 2006), *report and recommendation adopted sub nom. Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), *aff'd*, 899 F.3d 428 (6th Cir. 2018); *Jones v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 311-CV-00531-PLR-HBG, 2016 WL 4691294, at *1 (E.D. Tenn. Aug. 8, 2016), *report and recommendation adopted by*, 2016 WL 4690398 (E.D. Tenn. Sept. 7, 2016) (awarding $345.00 per hour in a civil rights case where the attorney had thirty-eight years of experience); *Almanza v. Barr*, No. 3:15-CV-389-TAV-HBG, 2019 WL 13159729, at *9 (E.D. Tenn. Aug. 5, 2019) (recommending an attorney who graduated law school in 2006 but had been practicing employment law for eight years be awarded $260.00 per hour); *Vaughn v. Parkwest Med. Ctr.*, No. 3:15-CV-228 [Doc. 117] (E.D. Tenn. Feb. 15, 2019), *report and recommendation adopted by*, 2019 WL 1290877, at *1 (E.D. Tenn. Mar. 20, 2019) (awarding $290 per hour for worked performed 2014 through 2018 for an attorney who had practiced approximately twelve years). Defendants assert that the Court should deny the application in full, but the Court declines Defendants' invitation. While Plaintiffs' attorneys did

not submit proof of their professional background to support the requested rates, the Court has vast experience in fee requests and can rely on its knowledge in finding reasonable hourly rates.

### B. Time Incurred

Defendants argue that Plaintiffs' summary is full of entries for non-compensable time and indications of overbilling, outlining eight specific areas. Defendants assert that Plaintiffs' requested amount is excessive, especially in light of the damages in this case. Defendants argue that if the Court declines to deny the request entirely, the Court should make a 50% across-the-board reduction to Plaintiffs' time.

For instance, Defendants state that Plaintiffs' 324 hours of work on two motions is unreasonably high in an uncomplicated case about competing trailer repair businesses. Defendants state that the requested amount is more than the "head start" damages Plaintiffs are seeking. Defendants compare this case to other cases involving discovery sanctions and submit that the Court should reduce the requested amount [Doc. 393 p. 11 (citing *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 448 (6th Cir. 2020) and *PepsiCo v. Central Investment Corp.*, 216 F.R.D. 418, 421 (S.D. Ohio 2002)].

Plaintiffs respond that Defendants' comparison to their "head start" damages is misleading because the "head start" damages are not the full scope of Plaintiffs' requested damages in this case. Plaintiffs state that even so, their expert valued the "head start" at $75,000 to $100,000, and their unjust enrichment claim is $1,500,000. Plaintiffs state that they also seek exemplary damages and fees under the Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act, meaning their fee award request is less than 10% of their damages. Plaintiffs state that a "10% fee award is reasonable in a mega fund case, suggesting that it is imminently reasonable in a case of this size" [Doc. 396 p. 5].

9

In *EMW Women's Surgical Center*, the sanctioned party argued that it was excessive for a party to bill 23.5 hours for the time on its sanctions motion and 20 hours for the reply in support of it. 978 F.3d 418, 448 (6th Cir. 2020), *abrogated on other grounds, by Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). The court noted that the "figures do seem high." *Id*. The court found, however, that "the district court determined them to be reasonable after considering the content and quality of the filings in detail." *Id*. (internal citation omitted). The Court concluded that the sanctioned party presented "no argument why the time was excessive beyond italicizing the numbers involved and asserting that they are too high." *Id*.

Similarly, the Court finds Defendants' arguments do not consider the content and the quality of the filings in detail and simply assert that the time is excessive. The Court also notes that the motion for sanctions did not simply raise one issue involving discovery misconduct. Instead, the motion for sanctions raised Defendants' misleading statements since the inception of the case, which were only revealed during the hearing on the preliminary injunction. Further, while Defendants assert that Plaintiffs' requested amount is more than the "head start" damages (and although Plaintiffs disagree), "[t]his is not an application for fees by a civil rights litigant in which the Court must gauge the plaintiff's degree of success versus the relief sought." *PepsiCo*, 216 F.R.D. at 421. Thus, the Court will not make reductions to Plaintiffs' request based on these arguments.

Next, Defendants argue that Plaintiffs' attorneys overstated their time by billing predominantly in half-hour increments and quarter-hour increments. The Court has reviewed the Spreadsheet, and it does not appear that Plaintiffs' counsel utilized half-hour increments [*See* Doc. 396 p. 7] ("A reasonable conclusion is that some tenth-hour increments resulted in a whole hour. Here, the reasonable conclusion is that some quarter-hour entries ended at the half or whole hour

10

mark."). With respect to Defendants' objection to billing in quarter-hour increments, "Whether quarter-hour billing is reasonable is a matter within the discretion of the district court." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013). Instead of a per se rule finding that quarter hour increments are unreasonable, courts will impose reductions if the quarter-hour billing entries appear "suspect" and "fee enhancing." *King v. Whitmer*, No. CV 20-13134, 2021 WL 5711102, at *8 (E.D. Mich. Dec. 2, 2021) (other citations omitted); *see also D.S. by & through R.S. v. Knox Cnty., Tennessee*, No. 3:20-CV-240-CEA-DCP, 2022 WL 1284234, at *9 (E.D. Tenn. Feb. 3, 2022) (stating the same), *report and recommendation adopted as modified sub nom. D.S. by R.S. v. Knox Cnty., Tennessee*, No. 3:20-CV-240, 2022 WL 885851 (E.D. Tenn. Mar. 25, 2022). The Court has not identified any "suspect" billing entries upon review of the Spreadsheet; however, the Court will consider Defendants' objections to counsels' quarterly billing in conjunction with their arguments below.

Defendants assert that Plaintiffs' use of block billing makes it difficult to ensure the billing for tasks is reasonable. Defendants argue that not every task Plaintiffs include in their block billing entries in compensable, which likely resulted in swelling the hours up to 89 for the injunction. In addition, Defendants argue that the vague time entries have caused two issues. First, Defendants claim that the entries are vague and contain "unseen judgment calls" as to which noted time entries would be properly included within the "Assigned Category" [Doc. 393 p. 6]. Second, Defendants claim that "Plaintiffs' vague, sterile tasks descriptions make it impossible to determine whether entries are duplicative or whether the tasks were necessary" [*Id.* at 17].

Plaintiffs counter there is no problematic block billing entries and that Defendants have not cited to any. Plaintiffs state that instead, Defendants provide two examples of entries that are clearly encompassed within the Court's order [Doc. 252] in that the entries describe work related

11

to the preliminary injunction. [Doc. 396 p. 8 (citing Doc. 393 p. 14)]. Plaintiffs deny that their billing entries are vague and state that "given that briefs are hardly ever written all on the same day when they involve complex factual or legal issues, it should not be surprising that the narrative entries are identical" [*Id.* (other citation omitted)].

With respect to block-billing, "this court has held that so long as the description of the work performed is adequate, block-billing can be sufficient." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014). The Court has reviewed the Spreadsheet and does not find the use of block-billing to be problematic. Defendants cite, for example, the following entry that Attorney Olinzock documented on both March 5, 2021, and March 8, 2021: "Assisting expert in preparation of declaration, revising declaration of R. Hensley; revising draft for motion for preliminary injunction; phone call with R. Hensley and R. Elliot" [Doc. 393 p. 14]; *see also* [Doc. 287 p. 4]. Although this description is in the block-billing format, the Court finds it sufficient to determine what occurred and whether the time incurred is reasonable. Further, given the material submitted, the Court is not surprised that such work occurred over several days [*See* Docs. 84 & 85].

Defendants also argue that some of the time entries are vague [Doc. 393 pp. 6 & 17]. The Sixth Circuit Court of Appeals "has upheld an award of attorney fees and found billing records to be adequate where entries made by counsel 'were sufficient even if the description for each entry was not explicitly detailed." *Imwalle*, 515 F.3d at 553 (quoting *McCombs v. Meijer, Inc.,* 395 F.3d 346, 360 (6th Cir. 2005)). The Court simply needs sufficient information to determine whether the "hours charged were actually and reasonably expended in the prosecution of the litigation." *Imwalle*, 515 F.3d at 554.

The Court has reviewed the Spreadsheet, and the Court finds that a majority of the entries sufficiently describe the work performed in this case. For instance, Defendants provide the

following example of a vague time entry, which Attorney Carter noted on February 24, 2021: "Receipt and review of report from expert[;] telephone call with expert" [Doc. 393 p. 6]; *see also* [Doc. 287 p. 3]. Attorney Carter assigned this entry to the category, "Motion for Prelim. Inj." [Doc. 287 p. 3]. Defendants provide other examples, stating, "These entries are vague as to what work is being performed, a vagueness that some undisclosed person attempted to remedy by grouping these entries under an Assigned Category using her own judgment" [Doc. 393 p. 6]. But the Court does not find this entry to be vague and further finds it easy to conclude from the billing entry and the assigned category that Attorney Carter discussed the expert report with the expert in preparation of filing the motion for preliminary injunction. Similarly, Defendants point out Attorney Carter's May 21, 2021, "Telephone call with Client" entry [Doc. 287 p. 8], but the Court notes that this entry is under "hearing on prelim. inj" and occurred on the day of the hearing. While Defendants assert issues with Plaintiffs' counsels' grouping of entries within certain assigned categories, the Court finds it helpful in assessing the requested amount given that the undersigned ordered Defendants to only pay for certain tasks, as opposed to all tasks. *Compare Potter v. Blue Cross Blue Shield of Michigan*, 10 F. Supp. 3d 737, 764–65 (E.D. Mich. 2014) ("[T]he billing records contain numerous vague time entries throughout, generally referring to tasks, meetings or communications, such as "Meeting with GM," "emails," "Conference with Co–Counsel," "Consult with DH," "reviewed correspondence," "research," and "telephone call with JC," without any indication of the general subject matter of such communications or tasks, the number of communications or tasks, or any explanation to justify the time devoted to those tasks and communications."); *Kinder v. Northwestern Bank,* No. 1:10-cv-405, 2012 WL 2886688, at *5 (W.D. Mich. June 5, 2012) ("[V]ague time entries such as "telecon local counsel," "emails with

defense counsel," and "emails re settlement" are plainly insufficient.") (citing *Gratz v. Bollinger,* 353 F. Supp. 2d 929, 939 (E.D. Mich. 2005)).

Defendants, however, have identified a few vague entries as follows: (1) May 29, 2021, Attorney Carter billed 1.5 hours for "Update file; review and revise latest pleading re: sanctions; and (2) on September 3, 2021, Attorney Carter billed 1.25 for "Review sanctions responses; work file." [Doc. 287 pp. 8 & 10]. The Court agrees that "update file" and "work file" are vague, and the Court will deduct two hours from Attorney Carter's time to account for these vague billing entries. *Fox v. Vice*, 563 U.S. 826, 838 (2011) (explaining that courts "may use estimates in calculating and allocating an attorney's time").

In addition, Defendants argue that Plaintiffs should not recover fees (5 hours at $275 per hour) for their motion for expert to testify via Zoom because they withdrew it. Plaintiffs have not replied to this argument. "[W]hen a party fails to respond to an argument, that argument is generally deemed to be unopposed and the proposition conceded." *AK v. Behav. Health Sys., Inc.*, 382 F. Supp. 3d 772, 774 (M.D. Tenn. 2019). Even so, the Court agrees with Defendants that Plaintiffs' award should not include these fees given that Plaintiffs withdrew their motion. Accordingly, the Court finds a deduction of $1,375.00 from the fee request to be appropriate.

Defendants assert that Plaintiffs also seek reimbursement of $7,588.34 in expenses, but the Court only awarded attorney's fees. Defendants argue that seeking these expenses is contrary to what the Court ordered. In addition, Defendants argue that Plaintiffs did not provide any proof other than the Spreadsheet to justify this request. Defendants state that at the very least, Plaintiffs should have provided receipts or invoices.

Plaintiffs state that the Court contemplated awarding expenses [Doc. 396 p. 8 (citing Doc. 252 p. 20 ("Rule 37(c)(1) provides that the Court may order a party to pay reasonable expenses,

14

Case 3:20-cv-00137-TRM-DCP   Document 461   Filed 09/21/22   Page 14 of 20   PageID #: 13851

including attorney's fees, caused by a failure to supplement discovery responses in accordance with Rule 26(e).")]. Plaintiffs state that the only non-attorney's fee expense requested relates to the retention of their SouthWare expert, Robert Elliott ("Elliott"). Plaintiffs submit, "The rationale for awarding fees associated with the injunctive relief request is the exact same for awarding the expenses associated with retaining Elliott, who provided sworn and live testimony in support of the injunction request" [Doc. 396 pp. 8–9]. Plaintiffs state that they have not included any expenses related to Elliott that that were not specifically related to the injunction or sanctions.

Rule 37(c)(1) provides that in addition to, or instead of, the Court "may award payment of the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(c)(1). The Court observes, however, that in Plaintiffs' motion for sanctions, they requested the Court to "award Plaintiffs their reasonable attorneys' fees" [Doc. 125 p. 4]. Plaintiffs briefed their request for attorney's fees in their memorandum of law [Doc. 126 pp. 25 & 126] ("Mr. Maples, Titan Trailer, and their counsel should be required to pay Plaintiffs' reasonable attorneys' fees. . . Additionally, Plaintiffs should be awarded their reasonable attorneys' fees caused by such conduct."). In addition, Plaintiffs briefed this issue in their reply brief [Doc. 143 p. 11] ("Finally, attorneys' fees are appropriate.").

The Court's Order states, "The Court hereby awards Plaintiffs their attorney's fees associated with preparing for the preliminary injunction hearing, litigating their motion and related filings, and attending the hearing" [Doc. 252 p. 21 (internal citation omitted)]. Chief District Judge McDonough's July 11 Order states, "The Court fully agrees with Magistrate Judge Poplin's assessment of attorney's fees and overrules Defendants' objections to the same" [Doc. 422 p. 15]. Neither Plaintiffs' filings, nor the Court's orders, provided for the payment of expenses. While Rule 37(c)(1) allows the Court to award expenses, Plaintiffs simply did not request expenses, and

15

Case 3:20-cv-00137-TRM-DCP   Document 461   Filed 09/21/22   Page 15 of 20   PageID #: 13852

the Court did not so order. The Court finds it unfair to do so at this juncture. Accordingly, the Court will not award $7,588.34 in expenses.

Next, Defendants submit that Plaintiffs seek reimbursement for fees incurred and related to Attorney Lawhorn's individual filing. Defendants submit that Plaintiffs seek $11,456.25 for work on replies in support of their motion for sanctions, but they failed to clearly delineate between the work on a reply to Defendants' opposition and the reply to Attorney Lawhorn and his firm's opposition. Defendants assert that they should not bear the costs for Plaintiffs addressing Mr. Lawhorn and his firm's briefing because Attorney Lawhorn and his firm made the decision to file an opposition, not Defendants. They argue that they have no control over their prior counsel's decision. Further, Defendants point out that Attorney Lawhorn succeeded in his argument, and the Court did not sanction him.

Plaintiffs respond, "A careful review, however, shows that only 21.25 hours, at the very maximum, were expended on working on the reply to prior counsel's response, or less than $6,000.00 (not $11,456.25)" [Doc. 396 p. 9]. Plaintiffs argue that they should be awarded these fees because they all relate to and stem from Defendants' conduct. Further, Plaintiffs assert that while the Court did not sanction Attorney Lawhorn, it also did not absolve him of all responsibility. Plaintiffs state that instead, the Court found Attorney Lawhorn's actions did not fit the parameters of 28 U.S.C. § 1927.

The Court agrees that Defendants should not bear the costs of drafting and filing a reply to Attorney Lawhorn's response. While related, the issue of whether Attorney Lawhorn should be liable was different from Defendants' liability. Because Plaintiffs did not provide the Court with an exact amount, the Court will deduct $6,000 from their fee request. *Fox*, 563 U.S. at 838 ("But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential

16

goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.")

Defendants assert that the Court should disallow fees for tasks that Plaintiffs overstaffed because such overstaffing is unreasonable and raised costs unnecessarily. Defendants assert that Plaintiffs overstaffed the injunction hearing with three partner-level attorneys and submit that Attorney Breeding's presence was unnecessary. Defendants state that Attorney Breeding had only a limited role in drafting the motion for preliminary injunction and reply and that she only billed to review and revise the memorandum and reply. Defendants state that she did not examine any witnesses and her time entries constitute $3,087.50, approximately a third of the total charged for the hearing. Defendants state that the staffing decisions on drafting filings and preparing for the injunction hearing make the attorney's fees Plaintiffs claim to have incurred on those tasks unreasonable as well. For instance, Defendants state that Plaintiffs staffed work on their motion for preliminary injunction and reply with three partner-level attorneys and one associate, billing a total of 102.5 hours, in addition to two paralegals, who billed 90.75 hours. Further, Defendants state that, with respect to the motion for sanctions and reply, Plaintiffs used three partners, one associate, and one paralegal. Defendants state that 29 out of the 35 entries for these filings involved reviewing, editing, or revising.

Plaintiffs respond that Attorney Breeding, given her considerable trial and legal experience, attended and assisted in preparing for the injunction hearing through oversight, review, and guidance. Plaintiffs state that had Defendants proffered Amy Clark as a witness at the injunction hearing, Attorney Breeding would have played a larger role. Plaintiffs state that they were not aware of which witnesses Defendants would call, and therefore, they had to be prepared for

multiple witnesses to testify. Plaintiffs accuse Defendants of taking a reductionist review of the fee request. Plaintiffs state that Defendants fault Attorney Breeding for having a limited role in drafting but then claim overstaffing. Plaintiffs argue that Defendants' argument should be rejected because they appropriately parceled out the work. Plaintiffs state, for example, while drafting the motion for preliminary injunction, the associate on the briefing performed approximately half of the hours worked, which is the right balance of delegation.

The Supreme Court has acknowledged the following:

> Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Courts have also "reduced fees where the requested fee reflected duplication of services, excessive time for simple or routine tasks, the use of too many attorneys, excessive conferencing, unnecessary consultant work, or in the performance of clerical tasks by legal professionals." *Potter*, 10 F. Supp. 3d at 768 (quoting *Fharmacy Records v. Nassar*, 729 F. Supp. 2d 865, 884–85 (E.D. Mich. 2010)).

The Court does not find Attorney Breeding's time duplicative. As Plaintiffs represent, Attorney Breeding would have played a larger role at the preliminary injunction hearing had certain witnesses been called to testify. Thus, Attorney Breeding had an obligation to prepare for the hearing. The Court has reviewed the remaining entries to determine whether Plaintiffs have overstaffed the case or whether their attorneys have performed duplicative work. The Court observes that Attorney Olinzock and Attorney Carter entered a majority of the entries. Attorney Breeding entered only approximately thirteen entries, which are consistent with Plaintiffs'

18

representation that she provided general oversight. But, in reviewing the assigned tasks, the Court does not find them to be duplicative, and it appears that Plaintiffs' counsel appropriately delegated the work. For instance, with respect to assigned category number 1, Attorney Duggan spent the most time drafting the motion for preliminary injunction [Doc. 287 pp. 2–4]; Attorney Carter billed a few hours for reviewing and editing but mainly billed for preparing the evidence in support thereof and client correspondence; and Attorney Olinzock spent his time in this category working with the expert. With respect to the reply brief, all the attorneys worked on the reply, but the total time incurred on the reply brief was only 13.5 hours [*Id*. at 5]. The Court notes a similar delegation of work with respect to the remaining categories [*Id*. at 5–11]. Thus, the Court declines to make reductions on this basis.

## II. CONCLUSION

Accordingly, for the reasons stated above, the Court **ORDERS** the following:

(1) Attorney Duggan's hourly rate shall be $250 per hour.

(2) Attorney Carter's hourly rate shall be $275 per hour.

(3) Attorney Olinzock's hourly rate shall be $300 per hour.

(4) Attorney Breeding's hourly rate shall be $325 per hour.

(5) Two hours shall be deducted from Attorney Carter's time to account for vague entries.

(6) Defendants shall not be liable for the expenses in the amount of $7,588.34.

(7) The amount of $1,375.00 shall be deducted to account for the withdrawn motion.

(8) The amount of $6,000.00 shall be deducted to account for the work on replying to Attorney Lawhorn's response.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge