UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| KNOX TRAILERS, INC., and POST TRAILER REPAIRS, INC., | ) ) ) | Case No. 3:20-cv-137 |
| --- | --- | --- |
| *Plaintiffs*, | ) ) | Judge Travis R. McDonough |
| v. | ) ) | Magistrate Judge Debra C. Poplin |
| BILLY MAPLES, individually and d/b/a TITAN TRAILERS REPAIRS & SALES, LLC, AMANDA MAPLES, and TITAN TRAILER REPAIRS & SALES, LLC, | ) ) ) ) ) ) | |
| *Defendants*. | ) | |

**ORDER**

Before the Court is Defendants' motion for contempt (Doc. 577). For the following reasons, the Court will **DENY** Defendants' motion. However, the Court will **ORDER** that Plaintiffs return the overpayment specified in the Court's February 14, 2023 order (Doc. 573, at 17), an amount totaling $14,337.50, to Defendants by **May 26, 2023**. If Plaintiffs fail to do so, the Court intends to impose a **daily penalty of $250**, beginning on **May 27, 2023**.

I.  BACKGROUND

During this litigation, the Court sanctioned Defendants Billy Maples and Titan Trailers Repairs & Sales, LLC for discovery-related conduct and awarded Plaintiffs Knox Trailers, Inc. and Post Trailer Repairs, Inc. attorney's fees associated with obtaining a preliminary injunction, including the hearing on the motion, and the accompanying motion for sanctions. (Doc. 252, at 21.) Plaintiffs requested $104,832.09 in attorney's fees and expenses. (Doc. 287.) Magistrate Judge Debra C. Poplin reduced this amount without calculating a specific amount of attorney's

fees.[1] (Doc. 461, at 19–20.) Defendants objected, arguing, even after the reductions, the amount was still excessive. (Doc. 501.) The Court overruled this objected and adopted Magistrate Judge Poplin's report and recommendation. (Doc. 557.) In doing so, the Court calculated that Plaintiffs were entitled to $95,318.75 in attorney's fees—a calculation the Court now acknowledges was erroneous. (*Id.* at 7.)

Following judgment in this case, on December 22, 2022, Defendants filed a notice that they satisfied the judgment in this case through hand-delivering Plaintiffs two checks: one for $95,318.75, satisfying the amount calculated by the Court in its order on attorney's fees in conjunction with the sanctions; and another for $74,958.04, satisfying the judgment order (Doc. 561). (*See* Docs. 562, 562-1.) On January 3, 2023, Defendants moved to correct the calculation in the Court's order on attorney's fees in conjunction with the sanctions, arguing that the calculations did not reflect the reductions applied by Magistrate Judge Poplin's report and recommendation, even though the Court adopted her report and recommendation. (Doc. 566, at 1.) Also, on January 3, 2023, Plaintiffs deposited the check for $95,318.75. (Doc. 577-1, at 1.)

---

[1] Magistrate Judge Poplin ordered eight items:

> (1) Attorney Duggan's hourly rate shall be $250 per hour.
> (2) Attorney Carter's hourly rate shall be $275 per hour.
> (3) Attorney Olinzock's hourly rate shall be $300 per hour.
> (4) Attorney Breeding's hourly rate shall be $325 per hour.
> (5) Two hours shall be deducted from Attorney Carter's time to account for vague entries.
> (6) Defendants shall not be liable for the expenses in the amount of $7,588.34.
> (7) The amount of $1,375.00 shall be deducted to account for the withdrawn motion.
> (8) The amount of $6,000.00 shall be deducted to account for the work on replying to Attorney Lawhorn's response.

(Doc. 461, at 19–20.)

On February 14, 2023, the Court granted Defendants' motion to correct the calculation, amended its prior order, and awarded Plaintiffs $80,981.25. (Doc. 573, at 17.) The Court ordered that "Plaintiffs shall return any overpayment," an amount totaling $14,337.50. According to Defendants, their counsel emailed Plaintiffs' counsel on February 16, 2023, asking when they could expect the return of the overpayment. (Doc. 577-2, at 3–4.) Plaintiffs did not respond. Defendants followed up on their email on February 22, 2023. (*Id.* at 3.) Plaintiffs responded on February 24, 2023, stating that they were "evaluating the next steps in this matter" and after doing so, could "properly answer your request." (*Id.* at 2.) Also on February 24, 2023, Plaintiffs deposited the second check worth $74,958.04. (Doc. 577-1, at 2.) Defendants again asked when they could expect the payment on March 9, 2023. (*Id.*) Plaintiffs again did not respond.

On March 14, 2023, Plaintiffs filed a notice of appeal of the final judgment. (Doc. 575.) The Sixth Circuit Court of Appeals selected this appeal for its mediation program, which Plaintiffs portray as "unsuccessful," but Plaintiffs also state that the mediator is still communicating with the parties regarding settlement. (Doc. 578, at 2.) On April 3, 2023, Defendants again emailed Plaintiffs' counsel and stated "[p]lease pay by Thursday of this week or we will move for contempt and seek all fees we incur for doing so." (*Id.* at 1.) Plaintiffs replied, "[w]e will mail out a check next week." (*Id.*) But Plaintiff did not send a check, and Defendants filed the present motion (Doc. 577). The motion is now ripe for the Court's review.

II. **STANDARD OF REVIEW**

Unlike criminal contempt, civil contempt "seeks only to coerce" the non-complying party "to do what a court had previously order [it] to do." *Turner v. Rogers*, 564 U.S. 431, 441–42 (2011) (cleaned up) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

3

Sanctions imposed under civil contempt are "designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). A court may hold a litigant in contempt if the other party demonstrates "by clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (alteration in original) (quoting *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

"Contempt cannot be based on 'a decree too vague to be understood', but is instead reserved for those who 'fully understand[]' the meaning of a court order and yet 'choose[] to ignore its mandate.'" *Gascho v. Glob. Fitness Holdings*, 875 F.3d 795, 801 (6th Cir. 2017) (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). Therefore, a court must "construe any ambiguity in favor of the party charged with contempt" in deciding whether an order is "definite and specific." *Id.* (citing *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996)). This is because "it would be unfair for courts to hold a party in contempt unless that party was disobeying a clear and unequivocal court command." *Id.*

### III. ANALYSIS

Defendants argue that the Court should hold Plaintiffs in contempt because the Court's February 14, 2023, order was sufficiently definite and specific, and Plaintiffs failed to comply with that order. (Doc. 577, at 3.) Defendants also request attorney's fees associated with seeking this relief. (*Id.* at 1.) Plaintiffs do not dispute that they have failed to return the Court-

4

ordered payment. Rather, they argue that: (1) there is an active appeal and settlement discussions, which render returning the overpayment "nonsensical"; and (2) the February 14, 2023, order did not include a specific date, so they did not violate "a definite and specific" order. (Doc. 578, at 1–4.)

First, Plaintiffs argue that, because their appeal of the Court's order is pending, and the parties are engaged in settlement negotiations—even though Plaintiffs admit that "mediation was unsuccessful"—ordering Plaintiffs to return fees is "nonsensical." (*Id.* at 2.) But not only is Plaintiffs returning the overpayment sensible; it is required. *See* Gascho, 875 F.3d at 801 ("[P]arties must comply with court orders even while appeals are pending.") (citation omitted). Even if the appeals court overturns the order and Plaintiffs "recover any alleged 'overpayment[,]'" Plaintiffs cannot use a pending appeal to defer payment.[2] (Doc. 578, at 2); *see id.*; *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

Plaintiffs' second argument—that the Court's February 14, 2023, order was not "definite and specific" with respect to timing—provides a stronger argument. The Court's order did not impose a deadline to return the overpayment. However, Defendants argue that, absent a specific deadline, the order imposed a "reasonable time" for Plaintiffs to comply and that failure to comply within three months is unreasonable. (Doc. 577, at 3.) But Defendants do not cite any law to support applying this timeframe, and, further, such a timeframe is indefinite, nonspecific,

---

[2] It is also worth noting that, from the Court's review of the appellate docket, Plaintiffs do not include the order requiring them to return overpayment in their "statement of parties and issues" for appeal. (*See* Doc. 19 in Case No. 23-5218) (6th Cir. Mar. 31, 2023). Should this order become at issue and the Sixth Circuit rules that the Court abused its discretion in correcting the amount of attorney's fees, the Court will require that Defendants repay Plaintiffs.

5
Case 3:20-cv-00137-TRM-DCP   Document 580   Filed 05/15/23   Page 5 of 7   PageID #: 24280

and inherently ambiguous. And, because a court must construe any ambiguity in favor of the party charged with contempt before holding the party in contempt, the Court cannot find that Plaintiffs failed to comply with a definite and specific deadline.

Put bluntly, Plaintiffs' behavior is far from appropriate. As Defendants rightly focus on, Plaintiffs knew of their duty to return the funds, but instead of doing so, "evaluat[ed] the next steps in this matter" rather than fulfilling that duty. On several occasions, Plaintiffs ignored Defendants' inquiries regarding when the payment would come. Plaintiffs even informed Defendants "[w]e will mail out a check next week" and never did. However, the inquiry is not whether Plaintiffs acted in a professional matter, ignored requests from Defendants, or whether their conduct was intentional; the inquiry is whether the Plaintiffs ignored a definite and specific court order. And, because the order did not provide a definite and specific deadline, Plaintiffs escape contempt for now.

Accordingly, the Court will deny Defendants' motion and does not award attorney's fees related to this motion. However, because a pending appeal does not pause the Court order, the Court will now impose a clear and unequivocal deadline. Plaintiffs are to return the overpayments by **May 26th, 2023**.

### IV. CONCLUSION

The Court hereby **ORDERS** that Plaintiffs shall return overpayment, in the amount of $14,337.50, by **May 26, 2023**. If Plaintiffs fail to do so, the Court will hold them in contempt and take all further appropriate action, including the imposition of penalties in the amount of **$250 per day**, starting on **May 27, 2023**, for every day they are late in paying Defendants.

SO ORDERED.

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**

**UNITED STATES DISTRICT JUDGE**